**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | |
|---|---|
| NIMA GHARAVI, an individual, and RIGHT CALL OFFICIALS, INC., an Illinois corporation, | |
| Plaintiffs, | Case No. 1:24-cv-1969 |
| v. | |
| FLOSPORTS, INC., a Texas corporation, CHRISTIAN PYLES, an individual, JESSICA PRESLEY, an individual, MATSCOUTS, LLC, a Pennsylvania corporation, WILLIE SAYLOR, an individual, ALLYSON SCHWAB, an individual, PATRICK MINEO, an individual, JON KOZAK, an individual, SKRAMBLE WRESTLING GEAR LLC, a New Jersey limited liability company, STEPHEN KOLANKOWSKI, an individual, and JOHN DOES 1-25. | |
| Defendants. | |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiffs, NIMA GHARAVI ("Mr. Gharavi") and RIGHT CALL OFFICIALS, INC. ("Right Call Officials, Inc.") (collectively, "Plaintiffs"), by counsel, SWANSON, MARTIN & BELL, LLP, for their Verified Complaint against Defendants, FLOSPORTS, INC., CHRISTIAN PYLES, JESSICA PRESLEY, MATSCOUTS, LLC, WILLIE SAYLOR, ALLYSON SCHWAB, PATRICK MINEO, JON KOZAK, SKRAMBLE WRESTLING GEAR LLC, STEPHEN KOLANKOWSKI, and JOHN DOES 1-25 (collectively "Defendants"), state as follows:

## PARTIES

1.      Plaintiff Nima Gharavi is a citizen of the State of Illinois and a resident of Chicago, Illinois. Mr. Gharavi is a registered wrestling official with the National Collegiate Athletic

Association ("NCAA"), the Illinois High School Association ("IHSA"), the Illinois Elementary School Association ("IESA"), USA Wrestling ("USAW"), and other wrestling organizations. Mr. Gharavi has officiated wrestling matches all over the United States, including in the State of Illinois. Mr. Gharavi also has an established a YouTube channel, managed by his company, Plaintiff, Right Call Officials, Inc., an Illinois corporation, under the handle "Midwest Wrestle," in which he posts his edited videos of wrestling matches from all over the United States.

2.          Upon information and belief, Defendant, FloSports, Inc. ("FloSports"), is a Texas corporation with a principal place of business located at 979 Springdale Road, Suite 120, Austin, Texas 78702. Upon information and belief, FloSports records and broadcasts live sporting events, including those which take place in Illinois.

3.          Upon information and belief, Defendant, Christian Pyles ("Mr. Pyles"), is citizen of the State of Texas and a resident of Pflugerville, Texas. Upon information and belief, Mr. Pyles is the Content Director at FloSports. Upon information and belief, Mr. Pyles registered and authors posts on the social media platform X (formerly Twitter) under the handle "@CPyles8," which are accessed by users across the United States.

4.          Upon information and belief, Defendant, Jessica Presley ("Ms. Presley"), is a citizen of the State of Ohio and a resident of Madison, Ohio. Upon information and belief, Ms. Presley registered and authors posts on the social media platform X (formerly Twitter) under the handle "@JesssBlogs," which are accessed by users across the United States.

5.          Upon information and belief, Defendant, MatScouts, LLC ("MatScouts"), is a Pennsylvania corporation with a principal place of business located at 2989 Old Nazareth Road, Easton, Pennsylvania 18045. Upon information and belief, MatScouts is a wrestling media company that posts videos of wrestling matches and commentary accessible by users across the

United States.

6.    Upon information and belief, Defendant, Willie Saylor ("Mr. Saylor"), is citizen of the State of Idaho. Upon information and belief, Mr. Saylor registered and authors posts on the social media platform X (formerly Twitter) under the handle "@MatScouts1," which are accessed by users across the United States.

7.    Upon information and belief, Defendant, Allyson Schwab ("Ms. Schwab"), is a citizen of the State of Iowa and resident of Cedar Falls, Iowa. Upon information and belief, Ms. Schwab registered and authors posts on the social media platform X (formerly Twitter) under the handle "@AllysonSchwab," which are accessed by users across the United States.

8.    Upon information and belief, Defendant, Patrick Mineo ("Mr. Mineo"), is a citizen of the State of Pennsylvania and a resident of Northampton, Pennsylvania. Upon information and belief, Mr. Mineo registered and authors posts on the social media platform Facebook under the username "PatMineo22" and is an administrator for the Facebook Group called "The Wrestling Room" which is accessed by users across the United States.

9.    Upon information and belief, Defendant, Jon Kozak ("Mr. Kozak"), is a citizen of the State of Texas and a resident of Hutto, Texas. Upon information and belief, Mr. Kozak is the Ranker at FloSports. Upon information and belief, Mr. Kozak registered and authors posts on the social media platform InterMatWrestle.com under the username "Jon_Kozak," which is accessed by users across the United States.

10.    Upon information and belief, Defendant, Skramble Wrestling Gear LLC ("Skramble"), is a New Jersey limited liability company with a principal place of business located at 42 Outwater Lane, Apt 1R, Garfield, NJ 07026. Upon information and belief, Skramble is a wrestling clothing company with a large social media following accessible by users across the

United States.

11.     Upon information and belief, Defendant, Stephen Kolankowski ("Mr. Kolankowski"), is citizen of the State of New Jersey. Upon information and belief, Mr. Kolankowski registered and authors posts on Skramble's social media platforms, including Instagram under the handle "@skramblewrestling," which are accessed by users across the United States.

12.     JOHN DOES 1-25 are as yet anonymous internet users on platforms including, but not limited to, X (formerly Twitter), Facebook, Reddit, Instagram, and InterMatWrestle.com who contributed to Defendants' wrongful actions and who Plaintiffs expect will be identified and named after written discovery in this matter is complete.

## JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

14.     Personal jurisdiction exists over Defendants because, upon information and belief, all of Defendants' actions constituting the causes of actions below were the result of purposeful actions directed at Plaintiffs, who are located in the Northern District of Illinois.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because, upon information and belief, a substantial part of the events giving rise to the claims asserted in this Complaint occurred in the Northern District of Illinois.

## NATURE OF THE CASE

16.     This lawsuit emanates from Defendants' publishing of malicious and false statements about Mr. Gharavi to third parties, which have resulted in great financial damage and

4

danger of physical harm to Mr. Gharavi.

17.     As a result of Defendants' conduct, Mr. Gharavi has incurred damages in excess of $75,000.

## FACTUAL ALLEGATIONS

*Plaintiffs' Background and Work*

18.     Mr. Gharavi is an individual with a longstanding passion for the sport of wrestling.

19.     Mr. Gharavi, individually and through his company Right Call Officials, Inc., has been a wrestling official through the NCAA, IHSA, IESA, USAW and other wrestling organizations for many years, and has officiated hundreds of wrestling matches across the United States.

20.     Mr. Gharavi is the only officer and employee of Right Call Officials, Inc. d/b/a Midwest Wrestle.

21.     In addition to his officiating duties, Mr. Gharavi attends local and regional wrestling matches hosted by high schools, colleges, and universities across the United States.

22.     Mr. Gharavi video records the wrestling matches he attends. The original—and a continuing—purpose of this work has been to build and grow a database of clips to be used for continuous improvement of wrestling officiating through in-person and online training clinics, as well as through the modification of rules, and the issuance of Case Book updates based upon these clips.

23.     After a number of years collecting clips originally seen only by officials, Mr. Gharavi established a YouTube channel under the handle "Midwest Wrestle" where he posts his edited videos to his Midwest Wrestle YouTube account to share his passion for the sport and so that friends and family of the athletes have a way to view and share the matches.

24.     To maximize his viewership and provide higher-quality videos to attendees and fans of the sport, Mr. Gharavi utilizes a high-quality video camera and has spent an immeasurable amount of time editing the matches he recorded.

25.     Mr. Gharavi has been working in the wrestling community for seven years. Midwest Wrestle has over 130,000 followers on YouTube.

***Third-Party Interference with Plaintiffs' Videos***

26.     Especially in light of the fact that many of the subjects of Mr. Gharavi's videos and fans of his account are minors, Mr. Gharavi spends several hours each day reviewing comments on the videos he posts to his Midwest Wrestle YouTube account, which includes translating comments in foreign languages to ensure offensive and inappropriate commentary are identified and removed and the offending accounts are blocked, and to otherwise ensure a positive and safe space for his viewers and the athletes contained within the videos.

27.     Mr. Gharavi has identified a number of websites that have embedded the Midwest Wrestle YouTube videos or otherwise re-posted his videos (the "Third-Party Websites").

28.     On or about June 5, 2023, Mr. Gharavi conducted an analysis of the top twenty-five most viewed videos on the Midwest Wrestle YouTube account and determined that Third-Party Websites, innocent or otherwise, make up less than 1% of the total viewership of his videos.

29.     Some of the Third-Party Websites include standard sources such as the NCAA and local wrestling clubs.

30.     Other Third-Party Websites, to Mr. Gharavi's great dismay, contain pornographic materials and other immoral and offensive content.

31.     Mr. Gharavi is in no way affiliated with any of these pornographic and offensive external websites and has never consented to his videos being posted on these Third-Party

6

Websites. Rather, the issue of wrestling match videos being re-posted to pornographic websites is unfortunate but common in the wrestling industry.

32.     In fact, Mr. Gharavi regularly submits takedown requests pursuant to the Digital Millennium Copyright Act ("DMCA") to offensive Third-Party Websites requesting they cease use or distribution of his videos.

33.     Mr. Gharavi strives to protect his video content and the athletes depicted within as much as he can.

34.     Mr. Gharavi has never posted his wrestling videos to pornographic websites nor encouraged anyone to post his videos to pornographic websites.

***Mr. Saylor and MatScouts Targeting of Plaintiffs***

35.     MatScouts and Mr. Saylor began intentionally and unjustifiably targeting Mr. Gharavi and Midwest Wrestle in the spring of 2023, when Mr. Saylor messaged Mr. Gharavi, accusing Mr. Gharavi of purposefully uploading his Midwest Wrestle YouTube videos to pornographic websites (*See* May 24, 2023 Saylor Direct Messages, attached as **Exhibit A**)

36.     Mr. Gharavi responded to Mr. Saylor vehemently denying his accusations.

37.     In June 1, 2023, despite the complete lack of evidence supporting his statements, MatScouts and Mr. Saylor released a podcast episode from MatScouts' page on the video-sharing platform Rokfin.com titled "TFW: Ferrari Commit, Bad Stories, and JR Trials" during which Mr. Saylor made statements identifying or otherwise referencing Mr. Gharavi, including, but not limited to accusing Mr. Gharavi of purposefully and "consistently" linking and embedding his Midwest Wrestle YouTube videos on pornographic websites ("MatScouts Podcast").

***FloSports and Mr. Pyles' Targeting of Plaintiffs***

38.     FloSports and Mr. Pyles began intentionally and unjustifiably targeting Mr.

Gharavi and Midwest Wrestle in the spring of 2023, when Connor Jaschen, acting as a representative of FloSports, knowingly submitted false DMCA takedown notices for twenty of Mr. Gharavi's YouTube videos. After nearly three weeks, Mr. Gharavi successfully defended each DMCA takedown notice submitted by FloSports. However, Mr. Gharavi was banned from posting any new content during that time. Additionally, it took Mr. Gharavi roughly four months to restore the viewership and revenue he was generating prior to FloSports' actions against him.

39.     Internal emails of FloSports dating as early as May 25, 2023 (the "May 25, 2023 Email Thread") show Mr. Pyles, acting as a representative of FloSports, calling Mr. Gharavi a "guaranteed predator who shoots videos of [high school] events and posts them on porn sites." (*See* May 25, 2023 Email thread with FloSports, attached as **Exhibit B**)

40.     In the May 25, 2023 Email Thread, Mr. Pyles also stated that Mr. Gharavi "enables the embed function for this purpose" in reference to the allegation that Mr. Gharavi intentionally posts his videos to pornographic websites.

41.     In the May 25, 2023 Email Thread, Defendants FloSports and Mr. Pyles accuse Mr. Gharavi of shooting the videos "for a deviant purpose," and Defendants stated their intention to contact numerous wrestling authorities, sports organizations, and other "wrestling leadership" to alert them to Mr. Gharavi's "sinister" conduct.

42.     During the DMCA takedown inquiry period, on June 2, 2023 FloSports sent Mr. Gharavi a letter (the "June 2, 2023 Letter") expressing its concern that Mr. Gharavi had filmed and posted videos of wrestling matches for which FloSports claims to have exclusive recording rights. (*See* June 2, 2023 Cease and Desist Letter, attached as **Exhibit C**)

43.     Within the June 2, 2023 Letter, FloSports raised concerns that Mr. Gharavi's videos "are being widely shared on pornographic web sites around the world," and further accused

Mr. Gharavi of fabricating his videos' popularity by intentionally exploiting his videos containing "youth wrestlers."

44.     On July 10, 2023, FloSports' outside counsel, Karen Burgess of Burgess Law PC ("Ms. Burgess"), stated in an email to Mr. Gharavi's prior counsel that "[Mr. Gharavi] has chosen to monetize this distribution of child pornography." (*See* July 10, 2023 Karen Burgess Email, attached as **Exhibit D**)

45.     On July 13, 2023, Mr. Gharavi responded to FloSports and Ms. Burgess (the "July 13, 2023 Response") vehemently denying these accusations and reiterating his commitment to ensuring his videos are taken off pornographic or offensive websites. (*See* July 13, 2023 Response, attached as **Exhibit E**)

46.     Following the July 13, 2023 Response, Defendants FloSports and Mr. Pyles knew, or reasonably should have known, that their allegations of Mr. Gharavi's misconduct were false.

47.     Upon information and belief, Defendants FloSports and Mr. Pyles have had every intention of widely disseminating to the wrestling community that Mr. Gharavi is an immoral and dangerous character. Upon information and belief, Defendants FloSports and Mr. Pyles published false statements regarding Mr. Gharavi's character to members of the wrestling community.

48.     Upon information and belief, Defendants FloSports and Mr. Pyles, or representatives of Defendants, knowingly forwarded false information about Mr. Gharavi and his alleged immoral character to wrestling coaches attending events where Mr. Gharavi was also in attendance.

***Social Media Attacks on Plaintiffs***

49.     Upon information and belief, from approximately December 30, 2023 through January 3, 2024, Ms. Schwab published and re-posted public social media posts identifying or

otherwise referencing Mr. Gharavi and/or Midwest Wrestle, including, but not limited to:

    a. Accusing Mr. Gharavi of posting his Midwest Wrestle YouTube videos with an inappropriate intent; and

    b. Insinuating Mr. Gharavi's Midwest Wrestle YouTube videos only garnered the number of views they did by using sexually suggestive and/or exploitive clips. (*See* Schwab Social Media Posts, attached as **Exhibit F**)

("Ms. Schwab's Social Media Posts").

50. Upon information and belief, on December 30, 2023, Mr. Pyles, acting individually and as a representative of FloSports, published public social media posts identifying or otherwise referencing Mr. Gharavi and/or Midwest Wrestle, including, but not limited to:

    a. Identifying Mr. Gharavi as an official within the wrestling industry;

    b. Stating that FloSports has done everything in its power to eliminate Mr. Gharavi from their shared industry;

    c. Characterizing Mr. Gharavi as "true evil";

    d. Painting Mr. Gharavi's motives in recording and posting his videos as coming from a person "with twisted desires";

    e. Calling Mr. Gharavi a "parasite" and confirming that FloSports has taken steps to alert the public that Mr. Gharavi poses a danger to the community;

    f. Confirming that FloSports published statements about Mr. Gharavi's alleged immoral and dangerous conduct to "various authorities and wrestling leadership";

    g. Accusing Mr. Gharavi of intentionally allowing pornographic websites to embed his videos into their own website; and

      h.   Accusing Mr. Gharavi of intentionally profiting from pornographic websites embedding his videos. (*See* FloSports/Pyles Social Media Posts, attached as **Exhibit G**)

("Mr. Pyles' Social Media Posts").

51.      Upon information and belief, on January 1, 2024, Mr. Kozak, acting individually and as a representative of FloSports, published public social media posts identifying or otherwise referencing Mr. Gharavi and/or Midwest Wrestle, including, but not limited to:

      a.   Stating that Mr. Gharavi's YouTube videos are embedded on pornographic websites; and

      b.   Admitting that FloSports knowingly issued false DMCA takedown requests against Mr. Gharavi in retaliation against Mr. Gharavi for his allegedly inappropriate behavior. (*See* FloSports/Pyles Social Media Posts, attached as **Exhibit H**)

("Mr. Kozak's Social Media Posts").

52.      Upon information and belief, on December 30, 2023 and December 31, 2023, Mr. Saylor, acting individually and as an agent of MatScouts, posted defamatory and inflammatory accusations against Mr. Gharavi and/or Midwest Wrestle, including, but not limited to:

      a.   Identifying Mr. Gharavi as the (previously unnamed) subject of Mr. Pyles' Social Media Posts;

      b.   Referencing Mr. Gharavi as an "evil" wrestling official "with twisted desires"; and

      c.   Accusing Mr. Gharavi of being removed from a wrestling event because of his inappropriate conduct. (*See* Saylor Social Media Posts, attached as **Exhibit I**)

("Mr. Saylor's Social Media Posts").

53.     Upon information and belief, on January 1, 2024, Mr. Mineo posted defamatory and inflammatory accusations against Mr. Gharavi and/or Midwest Wrestle, including, but not limited to:

        a.   Calling Mr. Gharavi and his YouTube videos "very wicked";

        b.   Accusing Mr. Gharavi of using "provocative thumbnails" and "suggestive angles" to increase views on his YouTube videos; and

        c.   Encouraging others to take action to prevent Mr. Gharavi from being "allowed" next to children. (*See* Mineo Social Media Posts, attached as **Exhibit J**)

("Mr. Mineo's Social Media Posts").

54.     Upon information and belief, Ms. Presley made a series of defamatory, inflammatory, and doxing posts aimed at, and identifying Mr. Gharavi and/or Midwest Wrestle, including, but not limited to:

        a.   Ms. Presley called Mr. Gharavi a "pedophile" and encouraged the wrestling community to band together to "stop" Mr. Gharavi; and

        b.   Ms. Presley authored and published a post containing Mr. Gharavi's home address on December 31, 2023. (*See* Presley Social Media Posts, attached as **Exhibit K**)

("Ms. Presley's Social Media Posts")

55.     Upon information and belief, Skramble and Mr. Kolankowski made a series of defamatory, inflammatory, and doxing posts aimed at, and identifying Mr. Gharavi and/or Midwest Wrestle, including, but not limited to:

a. Re-posting screenshots of social media posts accusing Mr. Gharavi of intentionally allowing pornographic websites to embed his videos into their own website in an attempt to increase viewership; and

b. Publishing a post captioned "Absolutely Disgusting Stuff from @MidwestWrestle" containing Mr. Gharavi's full name, geographic location, headshot, and email address on January 1, 2024. (*See* Skramble Social Media Posts, attached as **Exhibit L**)

("Skramble's Social Media Posts")

 (MatScouts Podcast, Mr. Pyles' Social Media Posts, Mr. Saylor's Social Media Posts, Ms. Schwab's Social Media Posts, Mr. Mineo's Social Media Posts, Mr. Kozak's Social Media Posts, Ms. Presley's Social Media Posts, and Skramble's Social Media Posts are hereinafter referred to as the "Social Media Posts").

56. Mr. Gharavi is not a pedophile, does not engage in immoral or dangerous conduct, does not pose a danger to the wrestling community, and has never intentionally allowed or encouraged pornographic websites to embed his videos into their own website.

57. Mr. Kozak, Mr. Pyles, and FloSports knew or should have known the defamatory statements made in the Social Media Posts were false.

58. Mr. Saylor confronted Mr. Gharavi to inquire if the defamatory statements made in the Social Media Posts were true before posting them and was told they were false.

59. Neither Ms. Schwab, nor Mr. Mineo, nor Mr. Presley, nor Mr. Kolankowski ever confronted Mr. Gharavi to inquire if the defamatory statements made in the Social Media Posts were true before posting them.

60. Defendants knew or should have known of Mr. Gharavi's reputation in the

wrestling community and that Mr. Gharavi enters into business relationships with third-parties based on his successful Midwest Wrestle YouTube channel.

***Damage to Plaintiffs***

61.     Defendants John Does 1-25 have publicly expressed outrage, disgust, hatred, and have made threats of physical violence towards Mr. Gharavi in response to the statements made in Defendants' Social Media Posts.

62.     Wrestling coaches and/or employees of the organizations hosting wrestling events in which Mr. Gharavi attended have requested Mr. Gharavi and/or Midwest Wrestle to cease filming and/or leave the premises in response to the statements made in Defendants' Social Media Posts.

63.     Mr. Gharavi and/or Midwest Wrestle's contracts with organizations including, but not limited to, IESA, IHSA, and NCAA, have been cancelled in response to the statements made in Defendants' Social Media Posts.

64.     Following the posting of Mr. Gharavi's personal information in the Social Media Posts, on January 2, 2024, Mr. Gharavi was the subject of an attempted break-in at his home, at the address published by Ms. Presley.

65.     Following the break-in at his home, Mr. Gharavi fled the state for his own safety.

66.     Mr. Gharavi is now in fear for his life and his physical safety because of the inflammatory accusations made against him in the Social Media Posts.

67.     Mr. Gharavi has suffered and continues to suffer loss of his reputation because of the inflammatory accusations made against him in the Social Media Posts.

68.     Upon information or belief, Defendants conducted no reasonable investigation into their claims that Mr. Gharavi and/or Midwest Wrestle posts videos to pornographic websites.

69.     Upon information or belief, Defendants have no evidence that Mr. Gharavi and/or Midwest Wrestle posts videos to pornographic websites.

70.     Upon information or belief, Defendants have no evidence that Mr. Gharavi and/or Midwest Wrestle created or knowingly distributed child pornography.

71.     The Social Media Posts and other statements made by Defendants were not privileged and were published by Defendants with malice, hatred and ill will toward Mr. Gharavi and/or Midwest Wrestle and a desire to injure him, for which Plaintiffs seek punitive damages.

72.     As a result of Defendants' unlawful conduct, Mr. Gharavi (and Midwest Wrestle by proxy) has suffered severe injury to his character and reputation in his peer community and professional community, as well as diminished his future prospects for recording, endorsement, and sponsorship opportunities.

73.     As a result of Defendants' unlawful conduct, Mr. Gharavi (and Midwest Wrestle by proxy) has been asked to leave events, cease filming events, and/or had his press credentials revoked during events, which has subjected him to ridicule and embarrassment.

74.     As a result of Defendants' unlawful conduct, Mr. Gharavi is in danger of physical harm.

75.     As a result of Defendants' unlawful conduct, Mr. Gharavi has been exposed to public hatred, contempt, ridicule, harassment, and/or threats of physical harm causing severe and extreme injury to Mr. Gharavi's emotional, physical, and social wellbeing both now and in the future, and is in danger of physical harm.

## COUNT I:
## Defamation Per Se
### *(Against All Defendants)*

76.     Plaintiffs restate and incorporate by reference the allegations contained in the

15

Paragraphs 1-75 as if fully stated herein.

77.     Defendants, without privilege or permission, published false statements about Mr. Gharavi to members of the wresting community and in the Social Media Posts.

78.     Defendants made these statements with knowledge of their falsity or in reckless disregard as to whether such statements were true or false and to intentionally injure Mr. Gharavi without just cause or excuse.

79.     Defendants acted with actual malice when they made the statements about Mr. Gharavi and encouraged others to repeat the statements.

80.     Defendants' statements impute the inability of Mr. Gharavi to perform or a want of integrity in the discharge of his duties as a wrestling official and video producer, and prejudice Mr. Gharavi in his profession or business and malign him in his business.

81.     Defendants' statements accuse and/or impute that Mr. Gharavi has committed criminal offenses, including, but not limited to, dissemination of child pornography, nonconsensual dissemination of pornographic images, creation of pornography, and/or contribution to the creation of child pornography, and/or encouragement of the creation of nonconsensual pornography.

82.     Defendants' statements caused Mr. Gharavi damage to his reputation in that other professionals in the wrestling industry, the online community at large, as well as current and potential consumers of Mr. Gharavi's YouTube channel, were told that Mr. Gharavi is a sexual predator and/or engages in pedophilia or other lewd behavior.

83.     As a result of Defendants' unlawful conduct, Mr. Gharavi has suffered severe injury to his character and reputation in his peer community and professional community, as well as diminished his future prospects for recording, endorsement, and sponsorship opportunities,

including, but not limited to, being asked to leave events, cease filming events, had his press credentials revoked during events, and/or contracts cancelled.

WHEREFORE, Plaintiffs, NIMA GHARAVI and RIGHT CALL OFFICIALS, INC., respectfully request the Court:

1) Enter judgment in their favor and against Defendants in an amount to be determined at trial, but estimated to be well in excess of $75,000;

2) Award Plaintiffs punitive damages;

3) Award Plaintiffs attorneys' fees and statutory pre-judgment interest; and

4) Any other further relief it deems just and appropriate.

### COUNT II: *In the Alternative to Count I*
### Defamation Per Quod
### *(Against All Defendants)*

84.    Plaintiffs restate and incorporate by reference the allegations contained in the Paragraphs 1-75 as if fully stated herein.

85.    Defendants, without privilege or permission, published false statements about Plaintiffs to members of the wresting community and in the Social Media Posts.

86.    Defendants made these statements with knowledge of their falsity or in reckless disregard as to whether such statements were true or false and to intentionally injure Plaintiffs without just cause or excuse.

87.    Defendants acted with actual malice when they made the statements about Mr. Gharavi and/or Midwest Wrestle and encouraged others to repeat the statements.

88.    Defendants' statements caused Plaintiffs actual and provable reputational harm in that other professionals in the wrestling industry, the online community at large, as well as current and potential consumers of Mr. Gharavi's YouTube channel, who were told that Mr. Gharavi is a

17

sexual predator and/or engages in pedophilia or other lewd behavior.

89.     As a result of Defendants' unlawful conduct, Plaintiffs have suffered severe character and reputational injury in their peer and professional communities, as well as diminished future prospects for recording, endorsement, and sponsorship opportunities, including, but not limited to, being asked to leave events, cease filming events, had press credentials revoked during events, and/or contracts cancelled.

WHEREFORE, Plaintiffs, NIMA GHARAVI and RIGHT CALL OFFICIALS, INC., respectfully request the Court:

1) Enter judgment in their favor and against Defendants in an amount to be determined at trial, but estimated to be well in excess of $75,000;

2) Award Plaintiffs punitive damages;

3) Award Plaintiffs attorneys' fees and statutory pre-judgment interest; and

4) Any other further relief it deems just and appropriate.

### COUNT III:
### Invasion of Privacy by False Light
### *(Against All Defendants)*

90.     Plaintiffs restate and incorporate by reference the allegations contained in the Paragraphs 1-75 as if fully stated herein.

91.     Defendants' publication of the statements made in the Social Media Posts, and their encouragement of others to disseminate its statements, placed misleading information about Mr. Gharavi before the public, creating an assertion that Mr. Gharavi had been involved in vile and serial criminal and sexual conduct when he had not.

92.     Defendants published the statements made about Mr. Gharavi in the Social Media Posts with knowledge that they were false or with reckless disregard of their falsity, and with the

intention to place Mr. Gharavi in a false light, and with knowledge of the false light in which Mr. Gharavi would be placed.

93.     Defendant's Social Media Posts accusing Mr. Gharavi of vile and serial criminal and sexual conduct, stating or implying likelihood of future harm to others, are highly offensive and injurious to Mr. Gharavi's past, current, and future character, reputation, and stature in the community, and by their nature, would be highly offensive to any reasonable person.

94.     Defendants acted with actual malice when they made the statements about Mr. Gharavi and encouraged others to repeat the statements.

95.     Defendants published their statements with reckless disregard to Mr. Gharavi's reputation, physical safety, and with reckless disregard for the falsity of their statements.

96.     As a result of Defendants' unlawful conduct, Mr. Gharavi has suffered great financial harm, embarrassment, extreme emotional distress, and harm to Mr. Gharavi's professional reputation.

WHEREFORE, Plaintiffs, NIMA GHARAVI and RIGHT CALL OFFICIALS, INC., respectfully request the Court:

1)  Enter judgment in their favor and against Defendants in an amount to be determined at trial, but estimated to be well in excess of $75,000;

2)  Award Plaintiffs punitive damages;

3)  Award Plaintiffs attorneys' fees and statutory pre-judgment interest; and

4)  Any other further relief it deems just and appropriate.

## COUNT IV:
### Intentional Infliction of Emotional Distress
### *(Against All Defendants)*

97.     Plaintiffs restate and incorporate by reference the allegations contained in the

Paragraphs 1-75 as if fully stated herein.

98.     Defendants' conduct of publishing false statements in the Social Media Posts that Mr. Gharavi is actively posting or encouraging others to post his videos to pornographic websites is extreme and outrageous, goes beyond the bounds of common decency, and is offensive to any reasonable person.

99.     Defendants intended to cause Mr. Gharavi emotional distress and/or knew that there was a high probability that their conduct would cause such emotional distress.

100.    Mr. Gharavi has experienced fear for his physical safety and his life upon receiving threats from the general public and having his identity and other personally identifiable information published by Defendants in the Social Media Posts.

101.    As a result of Defendants' conduct, Mr. Gharavi has experienced extreme emotional distress, anxiety, mental anguish, embarrassment and humiliation.

WHEREFORE, Plaintiffs, NIMA GHARAVI and RIGHT CALL OFFICIALS, INC., respectfully request the Court:

1)  Enter judgment in their favor and against Defendants in an amount to be determined at trial, but estimated to be well in excess of $75,000;

2)  Award Plaintiffs statutory pre-judgment interest; and

3)  Any other further relief it deems just and appropriate.

## COUNT V:
### Tortious Interference with Business Relationships
### *(Against All Defendants)*

102.    Plaintiffs restate and incorporate by reference the allegations contained in the Paragraphs 1-75 as if fully stated herein.

103.    Mr. Gharavi and Midwest Wrestle had reasonable expectations of entering into or

continuing valid business relationships through the Midwest Wrestle YouTube channel.

104. Mr. Gharavi and Midwest Wrestle had reasonable expectations of entering into or continuing valid business relationships as a wrestling official at events across the United States.

105. Defendants knew of Plaintiffs' expectancies.

106. Defendants intentionally and unjustifiably interfered to prevent Plaintiffs' expectancies from being fulfilled.

107. Plaintiffs suffered damages as a result of Defendants' interference.

108. Defendants' tortious interference was intentional and done in bad faith or, at a minimum, with reckless indifference to Plaintiffs' rights.

WHEREFORE, Plaintiffs, NIMA GHARAVI and RIGHT CALL OFFICIALS, INC., respectfully request the Court:

1) Enjoin Defendants from publishing false statements about Plaintiffs;

2) Enter judgment in their favor and against Defendants in an amount to be determined at trial, but estimated to be well in excess of $75,000;

3) Award Plaintiffs punitive damages;

4) Award Plaintiffs attorneys' fees and statutory pre-judgment interest; and

5) Any other further relief it deems just and appropriate.

## COUNT VI:
**Violation of the Uniform Deceptive Trade Practices Act (815 ILCS § 510/1 *et seq.*)**
***(Against Defendant FLOSPORTS, INC.)***

109. Plaintiffs restate and incorporate by reference the allegations contained in the Paragraphs 1-75 as if fully stated herein.

110. Plaintiffs and Defendant FloSports, Inc. both post videos of wrestling matches to YouTube.

111. Upon information and belief, FloSports took steps to falsely alert the public that Plaintiffs pose a danger to the community and had published statements about Plaintiffs' alleged immoral and dangerous conduct to various authorities and wrestling leadership.

112. FloSports used deceptive representations of Plaintiffs' character in connection with its own business practices.

113. FloSports has misrepresented to consumers that Mr. Plaintiffs' goods and services have immoral characteristics and/or Plaintiffs' uses their goods and services in immoral and offensive ways; disparaged Plaintiffs, Plaintiffs' goods and services, and/or Plaintiffs' business by publishing false or misleading representation of fact; and published its statements knowing and/or hoping they would harm Plaintiffs' business, or with reckless disregard for the falsity of said statements.

114. FloSports knew or should have known its statements were false.

115. FloSports' statements have caused great harm to Plaintiffs' business and reputation.

116. FloSports acted willfully in its engagement in deceptive trade practices.

WHEREFORE, Plaintiffs, NIMA GHARAVI and RIGHT CALL OFFICIALS, INC., respectfully request the Court:

1) Enjoin Defendant FLOSPORTS, INC. from disclosing or continuing to disclose Mr. Gharavi's personally identifiable information or sensitive personal information;

2) Award Plaintiffs attorneys' fees and statutory pre-judgment interest; and

3) Any other further relief it deems just and appropriate.

**COUNT VII:**
**Misrepresentation Under 17 USC § 512(f)**
*(Against Defendant FLOSPORTS, INC.)*

117.    Plaintiffs restate and incorporate by reference the allegations contained in the Paragraphs 1-75 as if fully stated herein.

118.    Midwest Wrestle did not infringe on any copyright owned or administered by Defendant FloSports, Inc.

119.    On information and belief, Defendant FloSports, Inc. knew or should have known that Midwest Wrestle did not infringe on any of Defendant FloSports, Inc.'s copyrights on the day(s) they submitted DMCA notices against Midwest Wrestle's YouTube videos.

120.    Accordingly, Defendant FloSports, Inc. violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that Midwest Wrestle infringed on Defendant FloSports, Inc.'s copyrights.

121.    As a direct and proximate result of Defendant FloSports, Inc.'s actions, Midwest Wrestle has been injured substantially and irreparably, including, but is not limited to, the financial and personal expenses associated with responding to the DMCA complaints and harm to Midwest Wrestle's free speech rights under the First Amendment.

WHEREFORE, Plaintiffs, NIMA GHARAVI and RIGHT CALL OFFICIALS, INC., respectfully request the Court:

1) Enter judgment in their favor and against Defendant FLOSPORTS, INC. in an amount to be determined at trial, but estimated to be well in excess of $75,000;

2) Award Plaintiffs attorneys' fees and statutory pre-judgment interest; and

3) Any other further relief it deems just and appropriate.

**COUNT VIII:**
**Unjust Enrichment**
***(Against Defendant FLOSPORTS, INC.)***

122.    Plaintiffs restate and incorporate by reference the allegations contained in the Paragraphs 1-75 as if fully stated herein.

123.    FloSports received a benefit from Plaintiffs by way of redirection of Plaintiffs' good and honorable reputation and Plaintiffs' goodwill within the wrestling community.

124.    FloSports' business has financially benefitted from its publication of false and defamatory statements about Plaintiffs and their moral character.

125.    FloSports has unjustly retained the benefits flowing from its publication of false and defamatory statements about Plaintiffs and their moral character.

126.    FloSports' retention of these benefits is detrimental to Plaintiffs.

127.    FloSports' retention of these benefits violates the fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiffs, NIMA GHARAVI and RIGHT CALL OFFICIALS, INC., respectfully requests the Court:

1)  Enter judgment in their favor and against Defendants in an amount to be determined at trial, but estimated to be well in excess of $75,000;

2)  Award Plaintiffs attorneys' fees and statutory pre-judgment interest; and

3)  Any other further relief it deems just and appropriate.

**COUNT IX:**
**Violation of the Illinois Civil Liability for Doxing Act (740 ILCS § 195/1 *et seq.*)**
***(Against Defendants MATSCOUTS, LLC, WILLIE SAYLOR, JESSICA PRESLEY,***
***SKRAMBLE WRESTLING GEAR LLC, and STEPHEN KOLANKOWSKI)***

128.    Plaintiffs restate and incorporate by reference the allegations contained in the Paragraphs 1-75 as if fully stated herein.

24

129. Defendants MatScouts and Mr. Saylor published Mr. Gharavi's personally identifiable information in the statements made in the Social Media Posts, including, but not limited to: Mr. Gharavi's identity and name.

130. Defendant Ms. Presley, published Mr. Gharavi's personally identifiable information in the statements made in the Social Media Posts, including, but not limited to: Mr. Gharavi's identity, name, and home address.

131. Defendants Skramble, and Mr. Kolankowski published Mr. Gharavi's personally identifiable information in the statements made in the Social Media Posts, including, but not limited to: Mr. Gharavi's identity, name, photograph, and email address.

132. Mr. Gharavi did not consent to having his identity published in connection with MatScouts', Mr. Saylor's, Ms. Presley's, Skramble's, or Mr. Kolankowski's statements.

133. MatScouts, Mr. Saylor, Ms. Presley, Skramble, and Mr. Kolankowski intentionally published Mr. Gharavi's identity and Mr. Gharavi's personally identifiable information with that intent that it be used to harm or harass Mr. Gharavi.

134. MatScouts, Mr. Saylor, Ms. Presley, Skramble, and Mr. Kolankowski published Mr. Gharavi's identity and/or personally identifiable information with knowledge or reckless disregard that Mr. Gharavi would be reasonably likely to suffer death, bodily injury, or stalking.

135. As a result of MatScouts', Mr. Saylor's, Ms. Presley's, Skramble's, or Mr. Kolankowski's published statements, Mr. Gharavi has been subject to stalking, harassment, and threats of bodily injury or physical harm.

136. As a result of Mr. MatScouts', Mr. Saylor's, Ms. Presley's, Skramble's, or Mr. Kolankowski's published statements, Mr. Gharavi has suffered substantial life disruption, economic injury, emotional distress, and/or fear serious bodily injury or death to his person and

other members of his family.

137.    MatScouts, Mr. Saylor, Ms. Presley, Skramble, and Mr. Kolankowski encouraged others, directly or indirectly, to violate the Illinois Civil Liability for Doxing Act.

138.    MatScouts, Mr. Saylor, Ms. Presley, Skramble, and Mr. Kolankowski knowingly benefited, financially and/or otherwise, from publishing their statements and identifying Mr. Gharavi in connection with their statements.

WHEREFORE, Plaintiffs, NIMA GHARAVI and RIGHT CALL OFFICIALS, INC., respectfully request the Court:

1)    Enjoin Defendants MatScouts, Mr. Saylor, Ms. Presley, Skramble, and Mr. Kolankowski from disclosing or continuing to disclose Mr. Gharavi's personally identifiable information or sensitive personal information;

2)    Enter judgment in their favor and against Defendants MatScouts, Mr. Saylor, Ms. Presley, Skramble, and Mr. Kolankowski in an amount to be determined at trial, but estimated to be well in excess of $75,000;

3)    Award Plaintiffs attorneys' fees and statutory pre-judgment interest; and

4)    Any other further relief it deems just and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all non-equitable claims.

Respectfully Submitted,

**NIMA GHARAVI and RIGHT CALL
OFFICIALS, INC.**

Dated:  March 8, 2024                    By:*/s/ Nicole O'Toole Peterson*
                                          Jeffrey S. Becker (ARDC #6282492)
                                          Nicole O'Toole Peterson (ARDC #6330227)
                                          Emily R.S. Mosnick (ARDC #6339422)
                                          SWANSON, MARTIN & BELL, LLP

330 N. Wabash Avenue, Suite 3300
Chicago, Illinois 60611
Phone: (312) 321-9100
jbecker@smbtrials.com
npeterson@smbtrials.com
emosnick@smbtrials.com

## **VERIFICATION**

The undersigned certifies under penalty of perjury under the laws of the United States of America, the Federal Rules of Civil Procedure and United States Code, that the foregoing factual statements set forth in this Verified Complaint are true and correct, except as to matters stated on information and belief, which the undersigned believes to be true.

Signature: _____*Nima Gharavi*_____
Nima Gharavi, individually and as a
representative of Right Call Officials, Inc.

Date: _____March 5, 2024_____