**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| NIMA GHARAVI, an individual, and RIGHT CALL OFFICIALS, INC., an Illinois corporation, | Case No. 2024-CV-1969 |
| Plaintiffs, | Hon. Steven C. Seeger |
| v. | |
| FLOSPORTS, INC., a Texas corporation, CHRISTIAN PYLES, an individual, JESSICA PRESLY, an individual, MATSCOUTS, LLC, a Pennsylvania corporation, WILLIE SAYLOR, an individual, ALLYSON SCHWAB, an individual, PATRICK MINEO, an individual, JON KOZAK, an individual, SKRAMBLE WRESTLING GEAR LLC, a New Jersey limited liability company, STEPHEN KOLANKOWSKI, an individual, and JOHN DOES 1-25. | |
| Defendants. | |

## DEFENDANTS FLOSPORTS, INC.'S, CHRYSTIAN PYLES' AND JONATHAN KOZAK'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULES 12(B)(2) AND (B)(6)

Rachel L. Schaller (ARDC No. 6306921)
rachel.schaller@blankrome.com
Daniel S. Saeedi (ARDC No. 6296493)
daniel.saeedi@blankrome.com
444 W. Lake St., Ste. 1650
Chicago, Illinois 60601
Telephone: (312) 776-2600

*Attorneys for Defendants FloSports, Inc.,
Christian Pyles and Jonathan Kozak*

## Table of Contents

I.    The Claims Against the FloSports Defendants Should Be Dismissed Pursuant to Rule 12(b)(2) Because This Court Lacks Personal Jurisdiction Over Them. ............................2

    **A.    Plaintiffs Rely on Incorrect Tests and Outdated Law For General Jurisdiction.** ................................................................................................2

            i.    Plaintiffs Ignore United States Supreme Court Precedent. .......................2

            ii.    Plaintiffs' Cases Regarding the Distribution of Products in Illinois are Inapplicable to FloSports' Business Activity.............................................3

            iii.    Plaintiffs' Website Cases Have Been Overruled and Are Inapplicable to Pyles' and Kozak's Social Media Activity....................................................4

            iv.    Pyles' and Kozak's Personal Social Media Activity Does Not Render Them "At Home" in Illinois.......................................................................5

    **B.    Plaintiffs' Response Cannot Cure their Failure to Allege any FloSports Defendant Purposefully Availed Themselves of Illinois Contacts, Giving Rise to Plaintiffs' Claims.** ........................................................................................7

            i.    FloSports' Streaming Services Are Not Purposefully Directed to Illinois and Do Not Give Rise to Plaintiffs' Claims. ..............................................7

            ii.    Revenue FloSports Allegedly Received by Driving Consumers Away from Plaintiffs Does Not Confer Specific Jurisdiction.............................9

            iii.    Plaintiffs' Claims Do Not Arise Out of Social Media Posts or Other Communications Directed To Illinois. ....................................................10

II.    Plaintiffs' Response Confirms The Amended Complaint Fails to Plead a Claim Upon Which Relief May be Granted. ..........................................................................12

    **A.    Plaintiffs Fail to Allege Defamation Per Se or Per Quod.** ................................12

            i.    Plaintiffs Fail To Allege FloSports Defamed Them to Wrestling or Legal Authorities. ................................................................................................12

            ii.    The YouTube Takedown Requests and Related Comments Cannot Be a Basis for Plaintiffs' Defamation Claims....................................................13

            iii.    Plaintiffs Cannot Summon Any Actionable Statements of Fact on Pyles' or Kozak's Social Media Posts.................................................................13

            iv.    Plaintiffs Defamation Per Se Arguments Do Not Save their Claims. ......16

            v.    Plaintiffs Fail to Allege Special Damages with Heightened Particularity as Required to State Defamation Per Quod..............................................18

    **B.    Plaintiffs Concede Their Invasion of Privacy by False Light Claim Must Be Dismissed if the Court dismisses their Defamation Claims.** ............................19

      **C.**     **Plaintiffs' IIED and Tortious Interference with Business Relationships Claims Fail Because They are Based Upon his Defamation Claims.**...............20

      **D.**     **Plaintiffs Fail to State A UDTPA Claim.**...............................................22

      **E.**     **Plaintiffs Fail to State A DMCA Misrepresentation Claim.**...........................23

      **F.**     **Plaintiffs Cannot Bring a Claim for Unjust Enrichment.**...............................24

**III.**    Conclusion ...................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACUITY v. Roadtec, Inc.*,
No. 13-CV-6529, 2013 WL 6632631 (N.D. Ill. Dec. 16, 2013).................................................5

*Adams v. Sussman & Hertzberg, Ltd.*,
684 N.E.2d 935 (1997)........................................................................................................13

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) .............................................................................................3, 7

*Alani Nutrition, LLC v. Ryse Up Sports Nutrition, LLC*,
No. 23 C 5196, 2024 WL 148969 (N.D. Ill. Jan. 12, 2024) .......................................... *passim*

*Am. Med. Ass'n v. 3Lions Publ'g, Inc.*,
No. 14 C 5280, 2015 WL 1399038 (N.D. Ill. Mar. 25, 2015) ................................................22

*Andrews v. At World Properties LLC*,
2023 IL App (1st) 122095...............................................................................................16, 20

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017)...............................................................................................................2

*BRABUS GmbH v. Individuals Identified on Schedule A Hereto*,
No. 20-CV-03720, 2022 WL 7501046 (N.D. Ill. Oct. 13, 2022) ............................................8

*Brinley Holdings Inc. v. RSH Aviation, Inc.*,
580 F. Supp. 3d 520 (N.D. Ill. 2022) ...................................................................................22

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)...........................................................................................................3, 4

*Coghlan v. Beck*,
2013 IL App (1st) 120891................................................................................................13, 16

*Curry v. Revolution Laboratories, LLC*,
949 F.3d 385 (7th Cir. 2020) ..............................................................................................8, 9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...............................................................................................................2

*Dubinsky v. United Airlines Master Exec. Council*,
303 Ill. App. 3d 317 (1st Dist. 1999) ...............................................................................13, 17

iv

*Engs Com. Fin. Co. v. Premiere Copier, Inc.*,
    2023 WL 3259780 (N.D. Ill. May 4, 2023) ....................................................................10

*Flores v. Aon Corp.*,
    2023 WL 6333957 (Ill. Ct. App. 2023) .......................................................................24

*Fox v. Crain Commc'ns Inc.*,
    2021 IL App (1st) 200153-U .................................................................................18, 20

*GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*,
    565 F.3d 1018 (7th Cir. 2009) .....................................................................................7

*George S. May Intern Co. v. Xcentric Ventures, LLC*,
    409 F. Supp. 2d 1052 (N.D. Ill. 2006) .........................................................................4

*Glob. Relief Found., Inc. v. New York Times Co.*,
    390 F.3d 973 (7th Cir. 2004) .....................................................................................16

*Goral v. Kulys*,
    2014 IL App (1st) 133236 ..........................................................................................13

*Hoffman v. Barnes*,
    No. 12 C 31, 2012 WL 1021837 (N.D. Ill. Mar. 26, 2012) ........................................11

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
    545 N.E.2d 672 (Ill. 1989) .........................................................................................21

*Illinois v. Hemi Group LLC*,
    622 F.3d 754, 2010 WL 3547647 (7th Cir. 2010) .........................................................5

*IMM Holdings, Ltd. v. HK Parts, Inc.*,
    2020 WL 5642942 (N.D. Ill. 2020) ..............................................................................8

*Jacobson v. CBS Broadcasting, Inc.*,
    2014 IL App (1st) 132480 ..........................................................................................20

*Jordan Miller & Assocs. v. Shlomi*,
    No. 20-cv-7478, 2021 WL 1923403 (N.D. Ill. May 13, 2021).......................................3

*Kipp v. Ski Enter. Corp. of Wisconsin*,
    783 F.3d 695 (7th Cir. 2015) .......................................................................................2

*Kuwik v. Starmark Star Marketing & Administration, Inc.*,
    156 Ill.2d 16 (1993) ..................................................................................................12

*L. Offs. Of David Freydin, P.C. v. Chamara*,
    24 F.4th 1122 (7th Cir. 2022)....................................................................................14

*Little v. JB Pritzker for Governor*,
    No. 18 C 6954, 2019 WL 1505408 (N.D. Ill. Apr. 5, 2019)....................................................17

*Love v. Simmons*,
    2024 WL 809107 (N.D. Ill. 2024) ...............................................................................19, 21, 24

*Majumdar v. Fair*,
    567 F. Supp. 3d 901 (N.D. Ill. 2021) ...............................................................................11, 12

*Masouridis v. Ocasek*,
    2019 IL App (1st) 181407-U .................................................................................................20

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991)..............................................................................................................16

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*,
    623 F.3d 440 (7th Cir. 2010) .................................................................................................7

*In re Mondelez Data Breach Litig.*,
    No. 23 C 3999, 2024 WL 2817489 (N.D. Ill. June 3, 2024) ...................................................24

*Moore v. People for the Ethical Treatment of Animals, Inc.*,
    932 N.E.2d 448 (Ill. App. Ct. 2010) .....................................................................................15

*Muzikowski v. Paramount Pictures Corp.*,
    322 F.3d 918 (7th Cir. 2003) .........................................................................................14, 19

*Nw. 1 Trucking Inc. v. Haro*,
    613 F. Supp. 3d at 1081 (N.D. Ill. 2020) ............................................................................7, 8

*O'Malley v. Adams*,
    227 N.E.3d 800 (Ill. App. Ct. 2023) .....................................................................................24

*Parker v. Bank of Marion*,
    695 N.E.2d 1370 (Ill. App. Ct. 1998) ...................................................................................16

*Publ'ns Int'l v. Burke/Triolo, Inc.*,
    121 F. Supp. 2d 1178 (N.D. Ill. 2000) ...................................................................................5

*Rivera v. Allstate Insurance Company*,
    140 F.Supp.3d 722 (N.D. Ill. 2015) ......................................................................................17

*Roser v. Jackson & Perkins Wholesale, Inc.*,
    No. 10 C 1894, 2010 WL 4823074 (N.D. Ill. Nov. 15, 2010)..................................................5

*Sava v. 21St Century Spirits, LLC*,
    No. 22 C 6083, 2024 WL 3161625 (N.D. Ill. June 25, 2024) ..................................................6

*Schoeps v. Sompo Holdings, Inc.*,
   No. 22 CV 7013, 2024 WL 2817361 (N.D. Ill. June 3, 2024)...................................................9

*Smith v. Loyola University Medical*,
   No. 23 CV 15828, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ...............................................24

*Solaia Technology, LLC v. Specialty Pub. Co*.,
   852 N.E.2d 825 (Ill. 2006) .....................................................................................................15

*Sunny Factory, LLC v. Chen*,
   No. 21 C 3648, 2022 WL 742429 (N.D. Ill. Mar. 11, 2022) ..................................................23

*Tamburo v. Dworkin*,
   601 F.3d 693 (7th Cir. 2010) ...............................................................................................4, 5

*Tekway, Inc. v. Agarwal*,
   No. 19-CV-6867, 2020 WL 5946973 (N.D. Ill. Oct. 7, 2020) ...............................................11

*Thomas v. Walmart Inc*.,
   No. 23 CV 5315, 2024 WL 1050179 (N.D. Ill. Mar. 11, 2024) ...............................................2

*Universal Gaming Grp. v. Taft Stettinius & Hollister LLP*,
   2017 IL App (1st) 150878-U ..................................................................................................13

*Voyles v. Sandia Mortg. Corp*.,
   751 N.E.2d 1126 (Ill. 2001) ..............................................................................................21, 22

*Walden v. Fiore*,
   571 U.S. 277 (2014).................................................................................................................7

*Williams v. Stuckly*,
   2023 IL App (1st) 230154-U ..................................................................................................12

*Zippo Mfg. Co. v. Zippo Dot Com, Inc*.,
   952 F.Supp. 1119 (W.D. Pa. 1997).....................................................................................4, 5

## Other Authorities

Fed. R. Civ. Proc. 12(b)(2) ..............................................................................................1, 2, 12

Fed. R. Civ. Proc. 12(b)(6) ..................................................................................................1, 12

Plaintiffs' Response cannot overcome the reality that the FloSports Defendants[1] are Texas citizens who—without ever identifying *Plaintiffs*—posted on social media from Texas, expressing opinions about youth wrestling videos filmed at wrestling matches nationwide and viewed across the world. Plaintiffs' strained attempt to sue numerous unrelated Defendants for their social media posts, including those who are not subject to personal jurisdiction here, should be rejected.

First, Plaintiffs rely on incorrect applications of law and outdated or overruled cases, bolstering dismissal pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Plaintiffs simply have no basis to hale the FloSports Defendants into this Court. Contrary to Plaintiffs' misguided submissions, under the applicable tests for general and specific personal jurisdiction, Plaintiffs cannot show any FloSports Defendant is "at home" in Illinois or purposefully availed themself of Illinois contacts, giving rise to Plaintiffs' claims.

Second, the Response confirms the claims directed at the FloSports' Defendants should be dismissed with prejudice pursuant to Rule 12(b)(6). Acknowledging their flawed theories, Plaintiffs seek to avoid dismissal by repeatedly mischaracterizing the FloSports Defendants' arguments and their own allegations. But even when viewed in a light most favorable to Plaintiffs, all the Amended Complaint shows is that various individuals separately made observations and formed opinions while discussing the safety of minors at youth wrestling matches across the country and how online video sharing platforms affect this issue. Plaintiffs' allegations regarding FloSports' takedown requests to YouTube and reports to authorities, and Pyles' or Kozak's social media posts fail to plead defamation *per se* and *per quod*, or the litany of other random claims in the Amended Complaint. The Amended Complaint should be dismissed, accordingly.

---

[1] The same defined terms in the FloSports Defendants' Motion to Dismiss (the "Motion") and Memorandum in Support apply herein: Plaintiffs Nima Gharavi ("Gharavi") and Right Call Officials, Inc. (collectively, "Plaintiffs"); Christian Pyles ("Pyles"), Jon Kozak ("Kozak"), and FloSports, Inc. ("FloSports," collectively, the "FloSports Defendants").

I.     **The Claims Against the FloSports Defendants Should Be Dismissed Pursuant to Rule 12(b)(2) Because This Court Lacks Personal Jurisdiction Over Them.**

The Court should reject Plaintiffs' short shrift attempt to assert this Court has personal jurisdiction over the FloSports Defendants. Plaintiffs make no attempt to address—let alone distinguish—any of the arguments or on-point cases discussed in the Motion. Instead, Plaintiffs rely on overruled case law regarding general jurisdiction, selectively quote inapplicable cases analyzing specific jurisdiction, and knock down strawman arguments FloSports Defendants never made. Response, at 5-11. Under the proper tests for general and specific jurisdiction, it is clear the FloSports Defendants have done nothing to subject themselves to the jurisdiction of this Court.

A.     **Plaintiffs Rely on Incorrect Tests and Outdated Law For General Jurisdiction.**

i.     **Plaintiffs Ignore United States Supreme Court Precedent.**

It is well-settled under *Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014), that outside of exceptional cases, a corporation is subject to general jurisdiction only in two places: its state of incorporation and its principal place of business. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017) (refusing to find BNSF "at home" in Montana despite having over 2,000 miles of railroad track and more than 2,000 employees there). Though Plaintiffs cite *Daimler* in the Response, they flout its holding by arguing that FloSports' operation of a nationwide business "without restriction" or limit to any "particular region or state" subjects it to general jurisdiction in every state where viewers can access its website, including Illinois. Response, at 9. Simply put, this is not the law. *BNSF*, 581 U.S. at 414, *citing Daimler*, 571 U.S. at 140 ("[a] corporation that operates in many places can scarcely be deemed at home in all of them.").

Imposing general jurisdiction on a corporation outside of where it is "at home" does not comport with due process. *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 698 (7th Cir. 2015); *see BNSF*, 581 U.S. at 414; *Thomas v. Walmart Inc.*, No. 23 CV 5315, 2024 WL 1050179,

at \*7 (N.D. Ill. Mar. 11, 2024) (applying *BSNF* to find Walmart was not "at home" in Illinois despite being the state's largest employer as "plaintiffs cite no evidence suggesting that the company's nationwide or global business operations are directed from Illinois"). Here, Plaintiffs do not allege any facts suggesting FloSports operates its nationwide business from Illinois. Instead, they make conclusory remarks about FloSports travelling nationwide to film events and rely upon overruled district court cases to assert that FloSports "should not be surprised when it is subjected to a lawsuit in this state." Response, at 9. Plaintiffs' Response also ignores they admitted facts foreclosing their general jurisdiction argument – namely, that FloSports, Inc. is a Delaware corporation with its headquarters and its principal place of business is in Texas. Am. Compl. ¶ 2. Similarly, Pyles and Kozak are domiciled in Texas. *Id*. ¶¶ 3, 9. Thus, none of the FloSports Defendants can be said to be "at home" in Illinois.

### ii. Plaintiffs' Cases Regarding the Distribution of Products in Illinois are Inapplicable to FloSports' Business Activity.

The cases Plaintiffs cite regarding the distribution of products in Illinois are inapplicable. Response, at 8-9, *citing Jordan Miller & Assocs. v. Shlomi*, No. 20-cv-7478, 2021 WL 1923403, at \*7 (N.D. Ill. May 13, 2021); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). In *Jordan Miller*, 2021 WL 1923403, the plaintiff alleged the defendant had continuous and systematic contacts with Illinois by contracting with distributors who sold to retailers with a significant Illinois presence like CVS, Target, Wal-Mart, and others. For purposes of establishing jurisdiction, FloSports' online streaming to anyone with an Internet connection worldwide is unlike the sale of products distributed to retailers located in Illinois via contractual agreements. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) (holding merely "[h]aving an 'interactive website' ... should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible.").

3

Likewise, *Burger King Corp.*, 471 U.S. at 462, does not apply. Here, general jurisdiction is not founded on Defendants' remote wire communications about continuous and systematic business activity actually occurring in Illinois. Plaintiffs concede FloSports travels across the country to film events and in no way targets Illinois or maintains a continuous and systematic presence in Illinois to film events any more or less than its contacts with other states outside of Texas. Plaintiffs' Exhibits attached to their Response do nothing to bolster their jurisdictional arguments and contrary to Plaintiffs' representation, does not mention Illinois at all. *See* Response, at 9.

At most, Plaintiffs allege FloSports does not prevent its streaming content from being accessed by Illinois residents or "limit [its] business or marketing endeavors to a particular region or state." Response, at 9. But this does not establish that FloSports is "at home" in Illinois. If this were the law, then any website operator would be subject to general jurisdiction in all fifty states. Plaintiffs have not and cannot establish general jurisdiction over any FloSports Defendant.

### iii. Plaintiffs' Website Cases Have Been Overruled and Are Inapplicable to Pyles' and Kozak's Social Media Activity.

Cases that Plaintiffs cite to show general jurisdiction over website operators have been overruled. Response, at 10 (citing *George S. May Intern Co. v. Xcentric Ventures, LLC*, 409 F. Supp. 2d 1052, 1059 (N.D. Ill. 2006); *Publ'ns Int'l v. Burke/Triolo, Inc*., 121 F. Supp. 2d 1178, 1182 (N.D. Ill. 2000)). The jurisdictional test applied in these cases was rejected by the Seventh Circuit in *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010). First, *George S. May Intern.*, 409 F.Supp. 2d at 1052, endorsed a "sliding scale" approach to specific jurisdiction based on Internet contact and is itself based on the decision *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F.Supp. 1119 (W.D. Pa. 1997), which the Seventh Circuit directly discredited. *See Dworkin*, 601 F.3d at 703 (declining to rely on the "sliding scale" approach proposed in *Zippo* and explaining that the Seventh Circuit would "hesitate to fashion a special jurisdictional test for Internet-based

cases."). This District also recognizes the Seventh Circuit's rejection of the "sliding scale" approach for internet activity. *Roser v. Jackson & Perkins Wholesale, Inc*., No. 10 C 1894, 2010 WL 4823074, at *3 (N.D. Ill. Nov. 15, 2010) (emphasizing *Dworkin* rejected the *Zippo* "sliding scale" approach, which was "unequivocally" rejected again in *Illinois v. Hemi Group LLC*, 622 F.3d 754, 2010 WL 3547647 (7th Cir. 2010)).

Similarly, this District has recognized that *Burke/Triolo*, 121 F.Supp.2d at 1178, is not good law. *See ACUITY v. Roadtec, Inc*., No. 13-CV-6529, 2013 WL 6632631, at *5 (N.D. Ill. Dec. 16, 2013) (holding *Burke/Triolo* was abrogated by *Dworkin*, 601 F.3d at 701 ("The maintenance of a public Internet website is not sufficient, without more, to establish general jurisdiction.") (cleaned up)). As such, the Court should reject Plaintiffs' reliance on outdated website operator cases.

### iv. Pyles' and Kozak's Personal Social Media Activity Does Not Render Them "At Home" in Illinois.

Even if these website operator cases applied, they are unlike the claims asserted against Pyles and Kozak based on public social media activity that can be viewed anywhere, including Illinois. Plaintiffs' characterization of Pyles' and Kozak's "online presence" in their Response is not supported by their allegations in Amended Complaint. Response, at 10-11. First, Plaintiffs make no assertion that individuals like Pyles and Kozak can prevent Illinois residents from reading their posts made from Texas. To the contrary, once a social media account is public, there is no control over the geographical demographic for one's posts. *Alani Nutrition, LLC v. Ryse Up Sports Nutrition, LLC*, No. 23 C 5196, 2024 WL 148969, at *3 (N.D. Ill. Jan. 12, 2024). Second, it is clear Plaintiffs' claims concern Pyles' and Kozak's personal social media accounts. *See e.g*., Am. Compl. at ¶ 51. Plaintiffs even admit Kozak does not have any official job duties relating to FloSports' social media content. *Id.* at ¶ 9. Simply having a personal social media account does not amount

to conducting business using the account, let alone conducting business in every state in which the social media post is accessible.

Plaintiffs' admission that Pyles' personal social media page on "X" contains a link to FloSports' official page does not change this analysis. Even if FloSports could hypothetically profit from Pyles driving users to FloSports' page, this says nothing of Pyles personally profiting from what he posts on his personal account. The same could be said of any employee who displays a link to their employer's account on their personal social media profile.

Plaintiffs make a last-ditch effort to subject Pyles and Kozak to general jurisdiction in Illinois by fabricating allegations that they are "social media influencers."[2] At the outset, these allegations are wholly absent from the Amended Complaint. Nowhere do Plaintiffs allege that Pyles and Kozak are professionally employed as social media influencers or have any sponsorships, campaigns or other arrangements by which they profit from posting on social media. Moreover, social media influencers do not even conduct business in the states where their posts can be accessed, nor are they subject to general jurisdiction there. A ruling that general personal jurisdiction exists over them "simply because [their] social media activity reaches Illinois residents would mean that every social media influencer is 'at home' in every state in which they have followers." *Ryse Up Sports Nutrition*, 2024 WL 148969, at *3. "Such a proposition would stretch the boundaries of personal jurisdiction far beyond constitutional limits." *Id*.

---

[2] "Social media influencers" are a growing profession in which brands pay influencers to promote their products. *See e.g.* "Influencer." Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/influencer. Accessed 10 Jul. 2024 ("[A] person who is able to generate interest in something (such as a consumer product) by posting about it on social media."). These individuals are not directly selling products or services to their followers through their social media account: they are simply promoting them to their followers, regardless of where the followers are located. *Sava v. 21St Century Spirits, LLC*, No. 22 C 6083, 2024 WL 3161625, at *1 (N.D. Ill. June 25, 2024). The follower still enters into a commercial relationship directly *with the brand* sponsoring the influencer.

**B.      Plaintiffs' Response Cannot Cure their Failure to Allege any FloSports Defendant Purposefully Availed Themselves of Illinois Contacts, Giving Rise to Plaintiffs' Claims.**

Plaintiffs assert the same incorrect basis for specific jurisdiction as their argument for general jurisdiction: Plaintiffs claim that the FloSports Defendants directed business activities towards and receive revenue from Illinois. But this is not the test for specific jurisdiction. To establish specific jurisdiction, Plaintiffs must allege the FloSports Defendants purposefully availed themselves of Illinois by intentionally creating contacts with Illinois and Plaintiffs' claims actually rise out of these very *same* activities in Illinois. *See Nw. 1 Trucking Inc. v. Haro*, 613 F. Supp. 3d at 1081, 1092 (N.D. Ill. 2020); *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010); *Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014); *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). It is clear Illinois has nothing to do with this case except it may be Gharavi's residence.[3]

**i.      FloSports' Streaming Services Are Not Purposefully Directed to Illinois and Do Not Give Rise to Plaintiffs' Claims.**

Only contacts that "bear on the substantive legal dispute between the parties or relate to the operative facts of the case" are relevant for specific jurisdiction. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024 (7th Cir. 2009). Claims for intentional torts focus "on whether the conduct underlying the claim[] was purposefully directed at the forum state." *See* Motion, at 8-9 (collecting cases showing that merely posting to an Internet forum does not constitute purposeful availment of the forum state where the subject of the post resides or does business). A recent decision by another judge in this District is instructive on both the issue of general and specific jurisdiction, which were similarly packaged. In *Ryse Up Sports Nutrition*,

---

[3] It is unclear whether Plaintiff is even a resident of Illinois based on his assertion in the Amended Complaint that he "fled the state" after a non-FloSports Defendant purportedly posted his personal information. Read another way, the allegation in Plaintiffs' Amended Complaint do not even specify he fled from his "Illinois" home.

2024 WL 148969, at *5, the court held that specific jurisdiction over a defendant did not exist based on an Instagram post of an allegedly infringing image "that had nothing to do with Illinois" as the plaintiff provided "no evidence to suggest the post was in any way directed to Illinois or specifically curated for an Illinois audience." *Id*. Notably, the court made this finding despite defendants sale of products to Illinois retailers with the intention of targeting Illinois consumers, including a recent partnership with the Chicago Bulls. *Id*. at *4-5.

Ignoring this well-accepted standard for specific jurisdiction, Plaintiffs do not allege any FloSports Defendant's conduct was purposefully directed to Illinois. Rather, they rely on inapplicable district court cases to argue FloSports' online streaming services in Illinois creates specific jurisdiction here. Response, at 6 (citing *Nw. 1 Trucking*, 613 F. Supp. 3d at 1093; *BRABUS GmbH v. Individuals Identified on Schedule A Hereto*, No. 20-CV-03720, 2022 WL 7501046 (N.D. Ill. Oct. 13, 2022)). But both of the cases on which Plaintiffs rely involved injuries that actually arose from the defendants' contacts, which it purposefully directed to *the forum*. In *Nw. 1 Trucking*, 613 F. Supp. 3d at 1093, the defendant (1) sold a product to the plaintiff, an Illinois buyer, (2) shipped the product to Illinois, (3) spoke to the plaintiff via his Illinois phone number, and (4) made promises to the plaintiff about how the defendant's product would perform in Illinois. That product became *the subject* of the litigation. Plaintiffs also overstate the holding in *BRABUS GmbH*, 2022 WL 7501046. There, the defendant was a "foreign counterfeiter[] who attempt[ed] to sell fake products" at-issue in the litigation in Illinois, and gave pricing specific to an Illinois buyer based on his Illinois zip code, and sent an invoice showing shipment to Illinois. *Id.* at *3.

The selective language Plaintiffs cite from *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 389 (7th Cir. 2020) and *IMM Holdings, Ltd. v. HK Parts, Inc.*, 2020 WL 5642942, at *4 (N.D. Ill. 2020) does nothing to bolster Plaintiffs' strained application of the test for specific

jurisdiction. Response, at 6. In those cases, the defendants' sale of products in Illinois bearing an infringing trademark gave rise to a trademark infringement claim. The defendants also purposefully directed the sale of products to Illinois by sending product to Illinois customers or contracting with distributors to sell to Illinois customers. But the exercise of personal jurisdiction "was not based *merely* on the fact that the defendant[] maintained [a] website[] that w[as] accessible in the forum state[]." *Schoeps v. Sompo Holdings, Inc.*, No. 22 CV 7013, 2024 WL 2817361, at *11 (N.D. Ill. June 3, 2024). For example, the defendant in *Curry* listed Illinois as a "ship to" option and sold product to hundreds of Illinois residents. *Id.*

Here, Plaintiffs have not established FloSports' streaming services were purposefully directed to Illinois or that their claims arise out of these services. Streaming sports content online, accessible worldwide by anyone with an Internet connection, is unlike the sale of goods in a particular forum state. Plaintiffs' repeated characterization of FloSports' business as the sale of "video products" does not change the fundamental nature of FloSports' business as an online provider of streaming services. Plaintiffs also do not allege what states FloSports' customers are generally or primarily located in, or whether customers are even required to create an account or disclose their address before using FloSports' streaming services. No allegations whatsoever show FloSports is aware of where its customers are located, let alone that it purposefully directs its streaming services to Illinois residents. FloSports' unconnected commercial activity does not demonstrate any FloSports Defendant purposefully availed themself of Illinois and does not give rise to Plaintiffs' claims.

### ii. Revenue FloSports Allegedly Received by Driving Consumers Away from Plaintiffs Does Not Confer Specific Jurisdiction.

In another fabricated interpretation of conclusions not alleged in the Amended Complaint, Plaintiffs argue their claims arise out of FloSports' online streaming because it derived revenue by

driving Illinois consumers from Plaintiffs' YouTube page to FloSports' streaming service when it disparaged Plaintiffs. (Response, at 6). This argument fails for several reasons: Plaintiffs do not allege FloSports gained any business, new followers or contracts as a result of the FloSports Defendants' alleged defamation, let alone Illinois followers. Plaintiffs do not allege FloSports purposefully reached into Illinois to convert even one of Plaintiffs' followers into a FloSports customer. For example, this case is unlike *Engs Com. Fin. Co. v. Premiere Copier, Inc*., 2023 WL 3259780, *6 (N.D. Ill. May 4, 2023), cited by Plaintiffs (Response, p. 6), where the plaintiffs claimed the defendants actually orchestrated a fraudulent scheme to obtain loans by sending request for funds to plaintiff in Illinois and obtaining those funds from the plaintiff in Illinois.

It is clear Plaintiffs have no facts upon which to assert their new theory, considering they do not seek to recover for business they allegedly lost to FloSports and do not allege any decrease in followers or "view counts" following the FloSports Defendants' statements. Rather, they seek damages for injury to their reputation and damage from being barred from events. These damages allegedly arise from the social media posts – not FloSports streaming sports content to Illinois residents (and anyone in the world with an Internet connection).

### iii. Plaintiffs' Claims Do Not Arise Out of Social Media Posts or Other Communications Directed To Illinois.

Plaintiffs cannot establish an Illinois connection with their claims, which arise out of (1) Pyles' and Kozak's social media posts and (2) FloSports' notification to YouTube that Plaintiffs' videos violate its exclusive streaming rights. First, the social media posts were created in Texas and were not aimed at any particular state. Plaintiffs fail to allege any FloSports Defendant knew Plaintiffs were located in Illinois. Plaintiffs even admit Gharavi "has officiated hundreds of wrestling matches across the United States" and attends wrestling matches "across the United States." Am. Compl. ¶¶ 19, 21-22. To the extent it is relevant, Plaintiffs do not allege that Pyles'

followers on X or visitors of InterMatWrestle.com are located primarily, or even substantially, in Illinois. Instead, the Response merely concludes without any basis that some of his followers are in Illinois. The only connection with Illinois is that Plaintiff Gharavi choses to live here, and thus he claims to have suffered an injury here. But that is insufficient to establish specific jurisdiction. *Tekway, Inc. v. Agarwal*, No. 19-CV-6867, 2020 WL 5946973, at *5 (N.D. Ill. Oct. 7, 2020); *see Hoffman v. Barnes*, No. 12 C 31, 2012 WL 1021837, at *1 (N.D. Ill. Mar. 26, 2012).

Second, the YouTube notification was sent from FloSports in Texas to YouTube in California. There was no interaction with Illinois at all. At most, Plaintiffs allege the FloSports Defendants were aware that Plaintiffs' YouTube page is called "Midwest Wrestle." This is insufficient to show that any FloSports Defendant knew the effects of their allegedly tortious conduct would be felt in Illinois specifically. Regional specific jurisdiction is not the standard. Conduct must be directed at a particular forum state, not a region of twelve states that makeup the "Midwest."[4] Moreover, YouTube took no action based on the notices in Illinois or elsewhere.

This case is a far cry from the allegations in *Majumdar v. Fair*, 567 F. Supp. 3d 901, 908 (N.D. Ill. 2021), which is the only personal jurisdiction case regarding social media that Plaintiffs cite. *See* Response, at 7-8. There, the social media post concerned a professor at the University of Chicago, making it obvious that the professor resided in Illinois. Even more compelling, the defendant specifically directed the comments to the University of Chicago community – also located in Illinois. Beyond the effects just being felt in Illinois, the defendant directed the effects of its comments to the forum state. The same cannot be said for allegedly defamatory remarks directed to "Midwest Wrestle" – a moniker that could refer to any or all of the 12 states in the

---

[4] The officially recognized "Midwest" region of the United Sates encompasses twelve states. According to the U.S. Bureau of Labor Statistics, the Midwest Region is comprised of 12 states: Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota and Wisconsin. *See* https://www.bls.gov/regions/midwest/midwest.htm.

Midwest Region. Moreover, unlike *Majumdar*, Plaintiffs make no effort to ascertain whether anyone who viewed Pyles' post was located in Illinois. While Plaintiffs allege Pyles' initial post had 300,000 views, public profiles on X like Pyles' are available worldwide, meaning the 300,000 views are from global X users. *See also Ryse Up Sports Nutrition*, 2024 WL 148969, at *3 (rejecting the plaintiff's argument that the individual defendant was subject to personal jurisdiction because she has millions of social media followers, which include Illinois residents.)

In sum, the Court should reject Plaintiffs' assertion that FloSports Defendants are subject to personal jurisdiction in all states where their website or social media posts are accessible and dismiss the claims asserted against the FloSports Defendants pursuant to Rule 12(b)(2) as Plaintiffs cannot show general or specific jurisdiction exists over any FloSports Defendant.

## II.     Plaintiffs' Response Confirms The Amended Complaint Fails to Plead a Claim Upon Which Relief May be Granted.

The Amended Complaint should also be dismissed pursuant to Rule 12(b)(6). Plaintiffs assert eight claims against the FloSports Defendants (Counts I – VIII) based solely on: (1) FloSports allegedly reporting of Plaintiffs to authorities; (2) FloSports requesting that YouTube remove certain of Plaintiffs' videos; and (3) Pyles' and Kozak's social media posts. Whether taken alone or in combination, none of these allegations state a claim upon which relief may be granted.

### A.     Plaintiffs Fail to Allege Defamation *Per Se* or *Per Quod*.

#### i.     Plaintiffs Fail To Allege FloSports Defamed Them to Wrestling or Legal Authorities.

Plaintiffs' allegations on information and belief that FloSports reported them to wrestling and legal authorities on unspecified dates and times fail to state a defamation claim. *See e.g., Williams v. Stuckly*, 2023 IL App (1st) 230154-U, ¶ 37 (dismissing defamation claim that failed to allege "which defendant published what" and was "silent as to the dates when any of the alleged publications were made."). Moreover, Plaintiffs do not dispute that under *Kuwik v. Starmark Star*

*Marketing & Administration, Inc*., 156 Ill.2d 16, 27 (1993), discussed in the Motion at 21, any reports FloSports made to legal or wrestling authorities are privileged and non-actionable.

Plaintiffs contend even if FloSports' reports were privileged, they were still defamed in Kozak's social media post where he affirms FloSports reported Gharavi to authorities. Kozak's post is vague and does not state the specific words used nor the gist of FloSports' reports to authorities. *See Adams v. Sussman & Hertzberg, Ltd*., 684 N.E.2d 935, 947 (1997) (statement that plaintiff "was being held by the police because a warrant had been issued for plaintiff's arrest…did not impute the commission of a crime."); *Goral v. Kulys*, 2014 IL App (1st) 133236, ¶ 41, *citing Dubinsky v. United Airlines Master Exec. Council*, 303 Ill. App. 3d 317, 321-22 (1st Dist. 1999) (statement that the defendant would leave whether a crime had been committed to law enforcement was not defamation *per se*). It also does not independently accuse Plaintiffs of committing a crime, but rather states what Plaintiffs contend is already true: FloSports reported Gharavi to authorities. Plaintiffs fail to plead any FloSports Defendant made a defamatory statement related to the reports.

### ii.    The YouTube Takedown Requests and Related Comments Cannot Be a Basis for Plaintiffs' Defamation Claims.

Plaintiffs' Response concedes the YouTube takedown requests are privileged and non-actionable as defamation by emphasizing they are not the basis for Plaintiffs' claims. Response, at 13. Further, Kozak's statement that FloSports submitted takedown requests against Plaintiffs is substantially true. *Compare* Am. Compl. ¶ 51(b), *with* Ex. C.; *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 45 (dismissing complaint where allegations demonstrated allegedly defamatory statement was substantially true); *Universal Gaming,* 2017 IL App (1st) 150878-U, ¶ 44 (same).

### iii.    Plaintiffs Cannot Summon Any Actionable Statements of Fact on Pyles' or Kozak's Social Media Posts.

Plaintiffs must, but fail to explain, any defamatory content in the social media posts. They claim the posts directly accuse Plaintiffs of intentional wrongdoing. Yet, they point to no actual

words or phrases about which they take offense, instead asserting the general "gist" of the posts are false statements about Plaintiffs' state of mind. The posts contain only vague statements of opinions or are substantially true. Because these statements must also be afforded their non-defamatory meaning, Plaintiffs cannot state a defamation claim relating to the social media posts.

### 1. The Social Media Posts Contain Opinions.

Theories surrounding Gharavi's motives in continuing to post videos on YouTube despite knowing they are embedded on pornographic sites are statement of opinion, not verifiable facts. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918 (7th Cir. 2003) (finding assertions that the plaintiff's motivation for coaching was pecuniary as opposed to philanthropic, if proven, were statements of opinion which did not amount to defamation *per se* under Illinois law).

In the Response, Plaintiffs only identify two phrases in Pyles' post that they claim are defamatory. First, Plaintiffs argue that Pyles accused Gharavi of having "twisted desires." This is plainly not the meaning of Pyles' statement. Under the innocent construction rule, it must be afforded its non-defamatory meaning that Pyles believes some of the individuals watching Plaintiffs' videos have twisted desires. *See* Motion at 16 (citing *Marketing & Administration, Inc.*, 156 Ill.2d 16, 27 (1993)). Mere conjecture about viewers' desires is not verifiable as fact. Second, Plaintiffs allege Pyles defamed him when he stated that Plaintiffs post "suggestive images" as thumbnails on their YouTube page. This is a classic statement of opinion, which cannot be proven true or false. "[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *L. Offs. Of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129–30 (7th Cir. 2022) (online reviews that plaintiff was a "disgrace to the US judicial system," "ha[d] no right to practice law," was "unethical and derogatory" and a "hypocrite, chauvinist and racist" could not be verified as true or false). Whether the thumbnails are suggestive or not is a

14

matter of subjective interpretation. Plaintiffs' own exhibit shows as much. *See* Am. Compl. Ex. H (showing discourse from users both agreeing and disagreeing that thumbnails were "suggestive.").

Plaintiffs' reliance on *Solaia Technology, LLC v. Specialty Pub. Co*., 852 N.E.2d 825, 840 (Ill. 2006) is misplaced. Response, at 11-12. *Solaia* involved questioning the validity of plaintiff's patent and whether it was indeed "worthless." 852 N.E.2d at 842. Within the context of the defendant's publication, the statement was reasonably understood to mean the defendant "not only places a value on the patent but bases this value on an informed reading of the patent by the industry veteran." *Id.* at 841. Plaintiffs here asks the Court to infer Pyles' defamatory meaning from after-the-fact comments responding to his posts. Unlike *Solaia*, after-the-fact statements by third-party commentators do not shed light on what Pyles or Kozak meant in their post. In particular, the comments to Pyles' posts show nothing more than confusion over the meaning of the posts or individuals visiting Plaintiffs' YouTube page and forming their own conclusions and theories.

### 2. Plaintiffs Admit the Allegedly Defamatory Statements Were Substantially True.

Even construing the allegations in a light most favorable to Plaintiffs, all that Plaintiffs allege is that Pyles and Kozak state: (1) Plaintiffs enable embeddings; (2) Plaintiffs are aware that when embeddings are enabled, their videos will become embedded in third-party pornography sites; and (3) Plaintiffs obtain profit from this arrangement through increased view counts. Plaintiffs' own filings confirm all three statements are substantially true. *See e.g., Moore v. People for the Ethical Treatment of Animals, Inc.*, 932 N.E.2d 448, 456 (Ill. App. Ct. 2010) (finding statement regarding the plaintiff's dog training techniques, which the defendant described as "extremely disturbing," was substantially true based on the plaintiff's own description of her technique). Plaintiffs allege it is a known problem in the industry. Amend. Compl. ¶ 31. Plaintiffs allege to their great dismay, some of their videos become embedded on these sites. *Id.* at ¶¶ 27, 30.

Plaintiffs repeatedly allege they profit based on the number of views they receive on their videos. *Id.* at ¶¶ 24-25, 72, 82-83, 88-89, 103, 113-115; Response, at 18 (describing YouTube channel "consumers"). Other than implying that Plaintiffs were aware of the consequences of their actions, none of Pyles' or Kozak's statements address Plaintiffs' specific state of mind or intent.

Plaintiffs' citation to *Glob. Relief Found., Inc. v. New York Times Co*., 390 F.3d 973 (7th Cir. 2004) does not help their claim, considering the court affirmed the grant of summary judgment for defendants based on truth of the reports. Here, "Plaintiffs[]essentially admitted the gist or sting of the hurtful utterance, of which they now complaint." *Andrews v. At World Properties LLC*, 2023 IL App (1st) 122095 ¶ 24, *citing Parker v. Bank of Marion*, 695 N.E.2d 1370 (Ill. App. Ct. 1998). Any reader seeing Plaintiffs admitting they continue to enable embeddings despite knowing pornographic websites repost their video could certainly infer their actions are intentional. *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496, 517 (1991) ("Put another way, the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced."). Like the First District Illinois Appellate Court found in *Andrews* and *Parker,* this court should dismiss Plaintiffs' defamation claims against the FloSports Defendants on the basis that they are substantially true. *See also Coghlan*, 2013 IL App (1st) 120891, ¶ 42, *citing Harrison v. Chicago Sun–Times, Inc.,* 341 Ill.App.3d 555, 563 (2003).

### iv. Plaintiffs Defamation *Per Se* Arguments Do Not Save their Claims.

Plaintiffs devote much of their Response to claiming the social media posts were defamation *per se*. Remarkably, they do not attempt to distinguish the extensive number of cases cited in FloSports' Motion, demonstrating Plaintiffs' complete failure to plead any of the categories on defamation *per se* under Illinois law.

16

First, Plaintiffs' Response incorrectly claims the FloSports Defendant did not cite any case foreclosing Plaintiffs' defamation *per se* claim because Pyles and Kozak never identified Plaintiffs in their posts. Response, at 18. Plaintiffs are wrong and seemingly overlooked FloSports Defendants' discussion of *Dubinsky*, 303 Ill. App. 3d 317. Plaintiffs make no attempt to distinguish *Dubinsky*, which rejected the plaintiff's attempt to assert a defamatory *per se* on the basis that the document had to be read in conjunction with another document, which would make his identity "totally clear to any reader." 303 Ill. App. 3d at 327. Additionally, Plaintiffs concede the social media posts do not identify Plaintiffs by name, Am. Compl. at ¶ 52(a), and the case on which they rely, *Rivera v. Allstate Insurance Company*, 140 F.Supp.3d 722, 729 (N.D. Ill. 2015), still requires enough identifying information within the defamatory statement, itself, that a reasonable person in the community could use to identify. Here, comments to Pyles' post show he did not provide sufficient identifying information, as comments ask who Pyles is talking about. *See* Am. Compl., Ex. G, p. 7.

Second, Plaintiffs assert they sufficiently plead *per se* claims imputing commission of a crime, damaging Plaintiffs' professional reputation. These assertions are incorrect. "[D]efamation of professional integrity must be directly associated with job skills or functions." *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2019 WL 1505408, at *8 (N.D. Ill. Apr. 5, 2019). None of the allegedly defamatory statements relate to the quality of Plaintiffs' goods or services. Plaintiffs emphasize how "high-quality" their videos are and no defendant challenged the quality of the videos or Gharavi's skills officiating. Amend. Compl. ¶ 24.

A "mere inference of illegal activity" is not enough; rather, to impute a criminal act, the "statement must be an express accusation of a specific indictable offense[.]" *Little*, 2019 WL 1505408, at *8 (holding the term "extortion" could refer to a criminal act or "a coercive frivolous

lawsuit which is an abuse of process civil offense and not an indictable criminal offense.") Plaintiffs' Response cites no statutory crime that FloSports accused Plaintiffs of committing. Notably, no FloSports Defendants stated Plaintiffs created pornography or distributed it. Plaintiffs' characterization in their brief do not make it so. Moreover, alleging that Gharavi intentionally allows pornographic websites to embed his videos into their own websites does not directly accuse Plaintiffs of committing a particular crime. Amend. Compl. ¶ 50(g). Indeed, the Exhibits Plaintiffs attached to the Amended Complaint confirm some commentors' interpretation that they did not. One user posted that they did not perceive criminal allegations here so civil actions should be considered, then suggested if no civil law is violated, people should consider lobbying to pass laws about sharing videos of minor. (Exh. H, at 17).[5]

### v. Plaintiffs Fail to Allege Special Damages with Heightened Particularity as Required to State Defamation *Per Quod*.

Notably, Plaintiffs devote little attention to saving their defamation *per quod* claim. Response, 18-19 (merely noting they alleged "enough specificity" for damages). For a *per quod* claim, special damages must be alleged as "[g]eneral allegations such as damage to one's health or reputation, economic loss [*i.e.*, loss of salary], and emotional distress are insufficient to state a cause of action for defamation *per quod*." *Fox v. Crain Commc'ns Inc.*, 2021 IL App (1st) 200153-U, ¶ 58. All the Response accomplishes is regurgitating the same vague allegations in the Amended Complaint. Plaintiffs do not identify a specific event or a describe with any particularity the types of contracts that were revoked or denied, or that the revoking party relied on a particular statement made by any FloSports Defendant as opposed to the other commentators.

---

[5] *See also* Ex. H at 65 ("The activities noted may not constitute a crime by the letter of the law but it's pretty shitty."); Ex. H, at 64 ("Maybe he's not breaking any laws but the fact that he not only hasn't taken down most of the video, but is posting 'new' ones (from some random Christmas tournament in 2021, wtf? to me proves he's a creep at best, probably worse.").

Additionally, Kozak's statement that FloSports attempted to get Plaintiffs' videos removed for copyright infringement is not defamatory *per se* and Plaintiffs fail to allege special damage arising from it. This comment does not impugn Plaintiffs' integrity or ability to perform their profession as a wrestling official. Nor does it accuse Plaintiffs of committing a crime as opposed to a civil violation. Further, contrary to Plaintiffs' assertion, Kozak did not "disseminate" the YouTube notices through his social media post, but merely referenced them. Moreover, Kozak's statement that FloSport can "actually prove" copyright infringement is a statement of opinion. Plaintiffs do not allege they lost view counts as a result of Kozak's copyright comment or were kicked out of events or denied business opportunities because of this comment. Plaintiffs have not and cannot plead special damages arising from Kozak's comment about copyright infringement.

**B.    Plaintiffs Concede Their Invasion of Privacy by False Light Claim Must Be Dismissed if the Court dismisses their Defamation Claims.**

Plaintiffs' only response to salvage their claim for invasion of privacy is that "Plaintiffs are obviously the subject of FloSports Defendants' statements, and therefore Plaintiffs' claim is sufficiently pled. See supra § IV(B)(2)." Doc. 41, at 24. At the outset, because the statements forming the basis of Plaintiffs' claims "can reasonable construed as referring to someone other than" Plaintiffs, "they are not 'of and concerning" Plaintiffs and cannot state a false light claim. *Muzikowski*, 322 F.3d at 927.

Notably, Plaintiffs make zero effort to provide a single case demonstrating they have sufficiently plead an invasion of privacy claim. They also make no effort to address, let alone distinguish the FloSports Defendants' citation to *Love v. Simmons*, 2024 WL 809107 at *6 (N.D. Ill. 2024), which holds a false light claim cannot survive when based on the same facts as a failed defamation *per se* claim. As such, Plaintiffs concede if their defamation claims fail so too do their

false light claim in Count III. Illinois courts agree. *See Fox*, 2021 IL App (1st) 200153-U, ¶ 72. The Court should likewise dismiss Count III for failure to state a claim.

### C. Plaintiffs' IIED and Tortious Interference with Business Relationships Claims Fail Because They are Based Upon his Defamation Claims.

Because Plaintiffs' defamation claims fail, their claims for intentional infliction of emotional distress ("IIED," Count IV) and tortious interference with business relationships (Count V) likewise fail. *Andrews*, 2023 IL App (1st) 122095 ¶ 36 (dismissing intentional interference with business expectancy claim on the basis that plaintiffs' defamation claim was dismissed), *citing Antonacci v. Seyfarth Shaw, LLP*, 2015 IL App (1st) 142372, ¶ 33 (same); *Jacobson v. CBS Broadcasting, Inc.*, 2014 IL App (1st) 132480, ¶ 54 (same). The alleged defamatory conduct by the FloSports Defendants likewise serves as the basis for Plaintiffs' IIED and tortious inference claims. Therefore, these claims must be dismissed for the same reasons addressed above with respect to Plaintiffs' failed defamation claims.

Moreover, Plaintiffs' IIED and tortious inference claims fail for independent reasons. As it pertains to Plaintiffs' IIED claim, Plaintiffs do not cite a single case demonstrating a social media post can constitute extreme and outrageous conduct. Plaintiffs say nothing about the applicable IIED cases cited in FloSports Defendants' Motion. First, Plaintiffs ignore well-established precedent that a plaintiff cannot prove an IIED claim based on defamatory statements "because such statements generally do not clear the high hurdle for extreme and outrageous conduct." Motion, at 24 (quoting *Fields v. Jackson*, 2017 WL 4150682, at *5 (N.D. Ill. 2017) (emphasizing that the Seventh Circuit has long recognized this proposition)).

Sufficiently alleging IIED a high bar. *See Masouridis v. Ocasek*, 2019 IL App (1st) 181407-U, ¶ 15 (finding it not extreme and outrageous to call plaintiff "deceitful" and "a whore," claim that plaintiff was seeking to "bleed Eileen's father of his money," was "mentally unstable" and

"lacked morals" and that plaintiff "was a piece of trash and a waste" and "was not fit to live."). The focus in an IIED claim has nothing to do with falsity, rather it is about the conduct, itself, which is why defamatory statements usually do not rise to the level of "extreme or outrageous *conduct*." For example, "broadcasting images of a person changing clothes in a dressing room, or getting examined in a doctor's office, or suffering acts of violence, or losing a child, or gasping their last breaths, or something along those lines." *Love*, 2024 WL 809107, at *13. Stray remarks on a social media among other commentators clearly do not rise to the level broadcasting the "deeply personal moments of intimacy or trauma" described above.

Similarly, even if the Court does not dismiss Plaintiffs' strained tortious inference with business relationships claim, it fails for a myriad of other reasons. Critically, Plaintiffs admit they cannot point the finger to any particular defendant for Gharavi being kicked out of events. *See* Response, p. 20 ("following defendants' actions…") Plaintiffs merely allege one event followed the other; they do not explain how long after the social media posts before they were kicked out.

Plaintiffs' citations to *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp.*, Inc., 545 N.E.2d 672, 676 (Ill. 1989) and *Voyles v. Sandia Mortg. Corp*., 751 N.E.2d 1126, 1133 (Ill. 2001) do not change this result. Response, at 20-21. In *HPI* (a non-defamation case), it was *undisputed* that (1) the contract existed with a particular entity, (2) the defendant was aware of the contract, (3) intentional inducement and breach of the contract, and (4) resulting damages. *HPI Health Care Servs*., 545 N.E.2d at 676. In contrast, those elements have not been properly plead here. Plaintiffs' Amended Complaint fails to allege each FloSports Defendant had knowledge of and that both Plaintiffs' even had a "valid business relationship," or even whom those relationships were with as opposed to hypothetical ones with unnamed entities or individuals. Plaintiffs have not alleged any damages or terminations of a contract that they had or that these hypothetical entities even had

knowledge of the alleged defamatory statements. *See Brinley Holdings Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 556 (N.D. Ill. 2022), *quoting Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015) ("A "reasonable expectancy" of a business opportunity is more than mere "hope or opportunity of a future business relationship."). *Voyles*, 751 N.E.2d at 1133, actually rejected the plaintiff's theory of an "inference with prospective business advantage" so it is unclear why Plaintiffs chose to cite that case in support of their theory.

Despite the third opportunity to do so by way of their Response, Plaintiffs cannot identify a single event in which Gharavi had a reasonable expectation of officiating but was denied because of any *FloSports* Defendant. All the Amended Complaint and random exhibits show is the FloSports Defendants wanted the exploitation of minors by pornographic websites to stop. The Amended Complaint and Response are practically silent as to Gharavi's future opportunities to officiate wrestling matches. Notably, Plaintiffs do not even allege Plaintiffs are no longer able to referee matches for compensation as a result of the FloSports' Defendants statements. Accordingly, the Court should dismiss Counts IV and V against FloSports Defendants.

### D.     Plaintiffs Fail to State A UDTPA Claim.

Relatedly, Plaintiffs admit the essential facts to demonstrate the FloSports Defendants did not make a false representation of fact as alleged in Count VI. As described above, Plaintiffs are in fact aware that their videos become embedded on pornography sites and Plaintiffs admit they profit from increased view counts. Moreover, Plaintiffs agree their videos are used in immoral ways. Amend. Compl. ¶¶ 27, 30. Regardless, "the UDTPA does not apply to statements that impugn a business's integrity, but do not implicate the quality of the business's goods or services." *Am. Med. Ass'n v. 3Lions Publ'g, Inc.*, No. 14 C 5280, 2015 WL 1399038, at *5 (N.D. Ill. Mar. 25, 2015). Plaintiffs' allegations fail to meet this standard and should be dismissed.

### E. Plaintiffs Fail to State A DMCA Misrepresentation Claim.

As explained in the Motion, at 28, Plaintiffs' allegation that FloSports sent YouTube a takedown request fails to state a claim for misrepresentation under the DMCA. To state a DMCA misrepresentation claim, Plaintiffs must plead facts that FloSports "knowingly materially misrepresent[ed]... that material or activity is infringing..." *Sunny Factory, LLC v. Chen*, No. 21 C 3648, 2022 WL 742429, at *4 (N.D. Ill. Mar. 11, 2022), quoting 17 U.S.C. § 512(f)(1). A "copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake... Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner." *Id.*, *quoting Rossi v. Motion Picture Ass'n of America Inc.*, 391 F.3d 1000, 1004-05 (9th Cir. 2004).

Here, it is clear based on the cease and desist letter and other documents attached to the Amended Complaint that Kozak's social media post references FloSports' contractual right to exclusive streaming, which he mistakenly termed copyright. Amend. Compl. ¶ 38; Exs. C-D. YouTube's policies permit takedown requests for violations of private contractual rights as well as copyright infringement.[6] Notably, Plaintiffs do not attach FloSports' YouTube requests in the Response but do reference an email explaining that FloSports notified YouTube to take down Plaintiffs' videos because they violate FloSports' exclusive streaming rights (not copyrights). Thus, Plaintiffs appear to concede the takedown request does not involve allegations of copyright infringement, pleading themselves out of a DMCA claim. Kozak's stray, mistaken remark about the nature of the takedown request also does not demonstrate actual knowledge of the misrepresentation on behalf of FloSports.

---

[6] *See e.g.*, You Tube Legal Complaints Policy, available at https://support.google.com/youtube/topic/2803176?hl=en&ref_topic=6151248&sjid=11180516203705714589-NC (explaining discussing various "legal complaints" that can be submitted to YouTube)

### F.    Plaintiffs Cannot Bring a Claim for Unjust Enrichment.

In their Response, Plaintiffs cite *O'Malley v. Adams*, 227 N.E.3d 800, 815 (Ill. App. Ct. 2023) to argue the FloSports Defendants cited bad law by relying on, *Flores v. Aon Corp.*, 2023 WL 6333957 (Ill. Ct. App. 2023), which reiterated Illinois does not recognize "unjust enrichment" as an independent cause of action. Response, at 25. To the extent *Flores,* 2023 WL 6333957, conflicts with *O'Malley*, 227 N.E.3d 800, *Flores* is binding authority as it is from the First District which reviews cases in Cook County–where this Court sits. Because *O'Malley* is from the Fifth District, it is merely persuasive authority. Moreover, the Northern District of Illinois, including this Court, has cited *Flores* with approval*. See Love,* 2024 WL 809107, at *16 (citing *Flores* and noting unjust enrichment is a "theory of recovery when a plaintiff prevails on some other claim"); *In re Mondelez Data Breach Litig*., No. 23 C 3999, 2024 WL 2817489, at *6 (N.D. Ill. June 3, 2024) (finding unjust enrichment is not an independent cause of action); *Smith v. Loyola University Medical*, No. 23 CV 15828, 2024 WL 3338941, at *9 (N.D. Ill. July 9, 2024) (dismissing unjust enrichment claim based on same conduct as fraud claim). Meanwhile, no federal court or Illinois appellate court has cited *O'Malley* since its ruling.

Recovery for unjust enrichment is an equitable remedy that "stands on the shoulders of some other claim." *Love*, 2024 WL 809107, at *16. Plaintiffs' unjust enrichment "claim" fails for the same reasons as their above claims fail. Additionally, Plaintiffs fail to allege FloSports was enriched or that any enrichment was unjust. Like in *Mondelez*, this Court should dismiss this "claim" on the basis that the allegations do not support any conclusion that the FloSports Defendants have "unjustly retained any benefit provided by plaintiffs." *In re Mondelez Data Breach Litig*., 2024 WL 2817489, at *6. For example, Plaintiffs do not and cannot allege they gave the FloSports Defendants anything they profited from. Vague assertions that "FloSports received

a benefit through the redirection of Plaintiffs' customers" is non-sensical and a tortured reading of "conferring a benefit" under an unjust enrichment theory. It is also not supported by the allegations of the Amended Complaint.

All that Plaintiffs' Amended Complaint and Exhibits show is that various individuals separately made observations and formed opinions while discussing an issue related to the safety of minors at youth wrestling matches across the country and, in part, how online video sharing platforms has affected said issue. Pyles and Kozak exercised their First Amendment Rights and concern for youth wrestlers by commenting on the situation from their perspective, along with dozens of others on social media (some of which may have been the same individuals with different usernames). Plaintiffs seek to punish Pyles and Kozak for voicing their opinions in a way that Illinois law and U.S. Constitution simply do not permit. This Court should dismiss Plaintiffs' attempt subvert the First Amendment and silence FloSports for exercising various rights afforded to them under Illinois and federal law.

## III. Conclusion

For these reasons, Defendants FloSports, Inc., Christian Pyles and Jonathan Kozak respectfully request that the Court dismiss the claims asserted against them (i) for lack of personal jurisdiction and (ii) for failure to state a claim.

Dated: July 17, 2024                    Respectfully submitted,

                                        BLANK ROME LLP

                                        *Attorneys for Defendants FloSports, Inc.,*
                                        *Christian Pyles and Jonathan Kozak*