**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NIMA GHARAVI, and RIGHT CALL OFFICIALS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 24-cv-1969 |
| v. | ) ) | Hon. Steven C. Seeger |
| FLOSPORTS, INC., CHRISTIAN PYLES, JESSICA PRESLEY, MATSCOUTS, LLC, WILLIE SAYLOR, ALLYSON SCHWAB, PATRICK MINEO, JON KOZAK, SKRAMBLE WRESTLING GEAR LLC, STEPHEN KOLANKOWSKI, JOSEPH CORSINI, and JOHN DOES 1- 25, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Nima Gharavi officiates youth wrestling matches across the United States. He also runs a side business that involves videotaping wrestling matches, editing the footage, and posting the videos on YouTube. Unfortunately, some of those videos have wound up on websites with pornography.

The problem has attracted attention on social media. A number of people in the wrestling community have expressed concerns that videos of youth wrestling have found their way onto perverse websites.

A few employees of FloSports have chimed in online. FloSports streams videos of live sporting events, including wrestling matches. Two employees of FloSports, Christian Pyles and Jon Kozak, have made online posts about the inappropriate use of wrestling footage involving

minors. They expressed concerns about two unnamed individuals who edit and market wrestling videos to pedophiles.

Gharavi believes that the FloSports employees were talking about him. He believes that they accused him of promoting pedophilia.

So he sued. Gharavi brought quite a few claims against FloSports, Pyles, and Kozak about their social-media posts, alleging defamation and related claims. He also brought a copyright-misrepresentation claim about a so-called takedown request, meaning a request that Defendants made to YouTube to take down some of Gharavi's videos.

The case is about online speech, but the speech didn't take place in Illinois. FloSports is based in Texas, and Pyles and Kozak live there, too. As they see things, Gharavi can't sue them in Illinois simply because they posted content on the internet. They moved to dismiss for lack of personal jurisdiction.

For the reasons stated below, the motion to dismiss for lack of personal jurisdiction is hereby granted.

## Background

At the motion-to-dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020). However, in deciding a motion to dismiss for lack of personal jurisdiction, the Court can consider facts outside the pleadings. *See Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020); *see also Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019).

Nima Gharavi, an Illinois resident, is a wrestling official. *See* Second Am. Cplt., at ¶ 1 (Dckt. No. 67). Gharavi has officiated hundreds of matches in the United States in the last seven years. *Id.* at ¶¶ 1, 19, 25.

In addition to officiating, Gharavi attends various "local and regional wrestling matches hosted by high schools [and] colleges . . . ." *Id.* at ¶ 21. Gharavi often video-records the matches. *Id.* at ¶ 22.

Gharavi runs a YouTube channel under the handle "Midwest Wrestle" to share these videos. *Id.* at ¶ 23. He posts "his edited videos . . . to share his passion for the sport and so that friends and family of the athletes have a way to view and share the matches." *Id.*

"To maximize his viewership and provide higher-quality videos to attendees and fans of the sport, [] Gharavi utilizes a high-quality video camera" and spends an "immeasurable" amount of time editing the videos. *Id.* at ¶ 24.

Many of the athletes in Gharavi's videos are minors. *Id.* at ¶ 26. So, Gharavi spends "several hours each day" reviewing and moderating comments on his channel's videos. *Id.* He "translat[es] comments in foreign languages to ensure offensive and inappropriate commentary are identified and removed and the offending accounts are blocked." *Id.*

Sometimes unaffiliated websites embed or re-post videos from Midwest Wrestle's YouTube channel. *Id.* at ¶ 27. Some of the websites are "standard sources such as the NCAA [or] local wrestling clubs." *Id.* at ¶ 29.

But other websites have a darker side. To Gharavi's "great dismay," his videos have appeared on websites that contain pornographic or "other immoral and offensive content." *Id.* at ¶ 30.

3

Gharavi has no affiliation with these pornographic and offensive websites. *Id.* at ¶ 31. He did not consent to his videos appearing on those websites. *Id.* He has never posted, or encouraged anyone to post, his videos on pornographic websites. *Id.* at ¶ 34.

In fact, Gharavi "regularly submits takedown requests" to these websites, asking that they remove his videos. *Id.* at ¶ 32. But the videos sometimes pop back up, because the practice of posting videos of wrestling matches on pornographic websites is "unfortunate but common." *Id.* at ¶ 31.

FloSports, Inc. is a competitor of sorts to Gharavi. FloSports records and broadcasts live sporting events, including wrestling matches. *Id.* at ¶ 2. FloSports is a Delaware corporation with its principal place of business in Texas. *Id.* at ¶ 2; Defs.' Mem. in Supp. of Mtn. to Dismiss, at 8 (Dckt. No. 32-1).

Christian Pyles and Jon Kozak are FloSports employees. Pyles is a Content Director, and Kozak is a ranker. *See* Second Am. Cplt., at ¶¶ 3, 9 (Dckt. No. 67). Pyles and Kozak are citizens of Texas. *Id.*

In the spring of 2023, FloSports and Pyles began "intentionally and unjustifiably targeting [] Gharavi and Midwest Wrestle." *Id.* at ¶ 38.

The problems began with takedown notices. A takedown notice isn't a braggadocious way of communicating to a wrestling opponent about a forthcoming headlock. A takedown notice often refers to a request under the Digital Millennium Copyright Act to remove online content that violates a copyright. But by the sound of things, YouTube accepts takedown requests for other reasons, too.

4

Connor Jaschen, an employee of FloSports, submitted takedown notices to YouTube for 20 of Gharavi's videos on his Midwest Wrestle channel. *Id.* The complaint alleges that the takedown notices were "false" because FloSports didn't own the copyright. *Id.*

Gharavi "successfully defended" the takedown requests. *Id.* But it took three weeks, and YouTube banned him from posting new content in the meantime. *Id.* The ban caused a loss of viewership and revenue, and it took Gharavi four months to get it back. *Id.*

Later, in June 2023, FloSports sent Gharavi a cease-and-desist letter "expressing its concern that [] Gharavi had filmed and posted videos of wrestling matches for which FloSports claim[ed] to have exclusive recording rights." *Id.* at ¶ 42.

FloSports then upped the ante. Counsel for FloSports sent an email to counsel for Gharavi, entitled "Litigation Hold." "Mr. Gharavi continues to publish competition video from wrestling events to which Flo holds exclusive media rights." *See* Second Am. Cplt., Ex. D, at 2 of 3 (Dckt. No. 67-4).

Along the way, counsel for FloSports accused Gharavi of knowingly distributing material that wound up on pornographic websites. *See* Second Am. Cplt., at ¶ 43 (Dckt. No. 67).

Counsel for FloSports wrote: "He promotes many of his videos using thumbnail images that emphasize the genitalia of the wrestlers, generally high school students. As a result, a number of Gharavi's videos are distributed on pornographic websites around the world. And not only does Mr. Gharavi know about it, he has chosen to monetize this distribution of child pornography." *See* Second Am. Cplt., Ex. D, at 2 of 3 (Dckt. No. 67-4).

That allegation didn't go over well with Gharavi. Counsel for Gharavi responded by letter and "vehemently denie[d] all such claims and or [sic] accusations." *See* Second Am. Cplt., Ex. E, at 2 of 3 (Dckt. No. 67-5); *see also* Second Am. Cplt., at ¶ 45 (Dckt. No. 67).

Six months later, on December 30, 2023, Pyles published three social-media posts on X, formerly known as Twitter. The three tweets did not mention Gharavi or Midwest Wrestle by name. Second Am. Cplt., at ¶ 50 (Dckt. No. 67); *see also* Second Am. Cplt., Ex. G (Dckt. No. 67-7). Even so, the complaint alleges that the posts were about Gharavi and Midwest Wrestle.

Pyles made his first tweet after re-posting comments from Allyson Schwab, a co-Defendant. In that post, Schwab declared that she was a parent, and she expressed concerns about the suggestiveness of cropped photos and videos of youth wrestling. But Schwab didn't mention Gharavi or Midwest Wrestle:

> Ok real talk.
>
> I am a parent. I am also a content creator. I shoot video, photos, etc. I understand in our sports some things are going to maybe look a certain way or show in singlets. I crop, I sometimes just don't use a photo as a way to protect the kid. That same pic could be out there 30 other ways, but it's just what I do.
>
> Parents – do yourself a favor. Look at the places your kids pop up on – sites channels – Search them on YouTube. Is the video of the match or your child walking back and forth for a while. Is the image selected for the video suggestive?
>
> This is a real thing in our sports. All you have to do is look at the photos or videos of a creator to understand if it's intentional or not. Are all the frames selected for videos suggestive? Are all the photos of positions you wouldn't see other photographers post? Is there 240k views on a jv match?
>
> Do your due diligence and research! Also schools/tournament directors have someone check who you're credentialing to photograph these athletes esp minors.

*See* Second Am. Cplt., Ex. F, at 3 of 101 (Dckt. No. 67-6) (cleaned up).

After re-posting Schwab's tweet, Pyles offered three tweets of his own.

In the first tweet, Pyles agreed that the situation was a "[h]uge problem." *See* Second Am. Cplt., Ex. G, at 3 of 24 (Dckt. No. 67-7) (cleaned up). He discussed two individuals who

posted suggestive videos of youth wrestling. He mentioned "the one in Iowa." *Id.* And then, he

referred to "one just as bad, if not worse who is scarily enough an official." *Id.*

Pyles didn't reveal any names. But he described the situation as "true evil" because it

appealed to "twisted desires," writing:

> Huge problem.
>
> We (Flo[Sports]) turned in the one in Iowa, raised it with [the National Wrestling Media Association], he was let go by the wrestling media group who employed him.
>
> There's one just as bad, if not worse who is scarily enough an official.
>
> Flo[Sports] has done everything in power, leveraging partners, etc. to get him out.
>
> He threatens to sue constantly.
>
> It's true evil. I've seen other content creators naively laud this guy's work. Not knowing the incredible view counts (which eclipse the most viewed [senior] level/NCAA matches in history) are from people with twisted desires.

*Id.* (cleaned up).

Pyles made the second tweet a little later that day. In that post, Pyles described the

actions that FloSports had taken to prevent those two individuals from shooting videos:

> With both of these parasites, we had a moment where we (Flo[Sports] staff) felt we "got em!" Despite all the evidence presented to law enforcement, governing bodies, [the National Wrestling Media Association], both individuals are still at wrestling events all the time. Sometimes as an official, sometimes shooting. Not just college. Youth, HS as well. Minors. When I say it's kept me/us up some nights, it's not hyperbole. It's a helpless feeling knowing they are still around, and even worse to feel mostly stifled in what you can say due to their threat of legal action.
>
> This whole situation has been really disturbing for me and the entire Flo[Sports] team. We discovered the IA guy, he is still running around to various HS and non d1 events (got kicked out of a d1 event this weekend)

and posting content. So disturbing he's not black balled entirely, but no mechanism really exists for that.

When we figured out what the official was doing, we had what we thought was "everything" figured out. We collected it all. Presented it to higher ups at Flo[Sports] who escalated it widely to various authorities and wrestling leadership. This guy is still running around doing the same thing. Youth, HS, college and still an official as of this season.

When he learned that we knew about all the tactics he was utilizing, he made immediate adjustments to his page, trying to change his thumbnails back to less suggestive images.

*Id.* at 6 of 24.

Pyles posted the third tweet about twenty minutes later. He expressed outrage that parents had thanked "this guy" for making videos of children wrestling:

I've seen parents of totally unknown wrestlers THANK this guy for the video of their child getting hundreds of thousands of views.

Imagine being that head in the clouds about what is actually happening.

The comment counts are very low relative to the views because he leaves embed (and monetization) function on so the videos can be embedded on OTHER sites.

*Id.* at 10 of 24.

A few days later, Kozak (the FloSports ranker) wrote a post on a message board on InterMatWrestle.com, a social-media forum for wrestling-related topics. *See* Second Am. Cplt., at ¶ 51 (Dckt. No. 67).

The people on that message board commented on the tweets by Schwab and Pyles. The name of the conversation was "Creeps in the wresting community – What can we do about it?" *See* Second Am. Cplt., Ex. H, at 3 of 87 (Dckt. No. 67-8).

Other individuals asked for more specificity about the allegations made by Schwab and Pyles in their posts. A user with the name "flyingcement" offered some details to fill in the gaps.

That user stated that "Nima Gharavi (Illinois / Midwest Wrestle)" was one of the two officials in question.[1] *Id.* at 6 of 87.

After a few days, and after a few dozen posts from various users, Kozak added a message on the message board and chimed in. Kozak noted that some wrestling videos posted by the individual in question ended up on pornographic websites.

Other posts on the message board explicitly referred to Gharavi and Midwest Wrestle. Kozak didn't follow suit. Kozak stuck with pronouns ("he" and "his"), without naming names:

> A few things to add here that haven't been covered:
>
> –His videos (of minors) are embedded on porn sites
>
> –Many of his most viewed videos have large portions that don't feature wrestling (wrestlers walking around during injury time/blood time)
>
> –He films and uploads videos without having permission/rights to the events
>
> Most recently he wasn't credentialed for Midlands and filmed anyway before he got kicked out by Storniolo.
>
> We've tried to strike his channel for copyright infringement because that's what we can actually prove. We're still working through it but things have gotten tricky where we've had to bring in legal.

*Id.* at 27 of 87.

In the complaint, Gharavi alleges that the tweets and the posts were about him. He took umbrage at the suggestion that he is involved in child pornography.

Gharavi declared that he "is not a pedophile, does not engage in immoral or dangerous conduct, does not pose a danger to the wrestling community, and has never intentionally allowed or encouraged pornographic websites to embed his videos into their own website." *See* Second

---

[1] The user "flyingcement" was later identified as Joseph Corsini, who is also a defendant in this lawsuit.

Am. Cplt., at ¶ 56 (Dckt. No. 67). In his view, FloSports, Pyles, and Kozak have no evidence to suggest otherwise. *Id.* at ¶¶ 68–70.

Gharavi responded to the social-media posts by bringing a 14-count complaint against 11 Defendants. Only three Defendants are relevant here.

Gharavi brings five claims against FloSports, Pyles, and Kozak, including defamation *per se* (Count I), defamation *per quod* (Count II), invasion of privacy by false light (Count III), intentional infliction of emotional distress (Count IV), and tortious interference with business relationships (Count V). *Id.* at ¶¶ 76–108.

Gharavi also brings a few additional claims against FloSports alone, including a claim under the Illinois Uniform Deceptive Trade Practices Act (Count VI), a misrepresentation claim under 17 U.S.C. § 512(f) (Count VII), and an unjust-enrichment claim (Count VIII). *Id.* at ¶¶ 109–27.

Gharavi seeks damages for reputational harm, loss of business, emotional distress, an attempted home break-in, and other threats to his physical safety. *Id.* at ¶¶ 61–67, 72–75.

FloSports, Pyles, and Kozak moved to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim.

### Legal Standard

When considering a motion to dismiss for lack of personal jurisdiction, a district court must "read the complaint liberally, in its entirety, and with every inference drawn in" the plaintiff's favor. *Central States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (citation omitted). Additionally, a district court can consider matters outside of the pleadings. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

A plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.*; *see also Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020). When it comes to factual matters, the tie goes to personal jurisdiction.

A district court must hold an evidentiary hearing when personal jurisdiction turns on the resolution of a dispute about material facts. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). But here, none of the parties point to any material facts in dispute. The parties gave this Court no reason to hold an evidentiary hearing, so it won't hold one. *Id.*; *see also Harbor Grand, LLC v. EMCASCO Ins. Co.*, 2022 WL 4079436, at *1 (N.D. Ill. 2022) (declining to hold an evidentiary hearing because there were no material factual disputes); *Urban 8 Danville Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 2020 WL 3058101, at *2 n.4 (N.D. Ill. 2020) (same).

The party asserting personal jurisdiction – here, Gharavi – bears the burden of proof. *See Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). When a court resolves a motion to dismiss for lack of personal jurisdiction based on the briefs, without an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Purdue Rsch. Found.*, 338 F.3d at 782 (citation omitted); *see also Hyatt Int'l Corp.*, 302 F.3d at 713.

### Analysis

FloSports, Pyles, and Kozak moved to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, and under Rule 12(b)(6) for failure to state a claim. As discussed below, this Court lacks personal jurisdiction, so the analysis starts and ends there.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). A federal court's authority "to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is

11

subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

So, unless there is a federal statute authorizing nationwide service of process, this Court "may exercise personal jurisdiction over [a defendant] only to the extent that a court of general jurisdiction in Illinois could." *See Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756 (7th Cir. 2010) (citing Fed. R. Civ. P. 4(k)(1)(A)).

Here, all but one of Gharavi's claims arise under state law. Gharavi does bring a federal claim under 17 U.S.C. § 512 of the Copyright Act, but the Copyright Act does not provide for nationwide service of process. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (Gorsuch, J.). So this Court must apply the Illinois long-arm statute to determine personal jurisdiction. *See* Fed. R. Civ. P. 4(k)(1)(A).

The Illinois long-arm statute authorizes personal jurisdiction to the extent "permitted by the Illinois Constitution and the Constitution of the United States." *See* 735 ILCS 5/2-209(c). So, the requirements under state statute and the federal Constitution "merge." *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010); *see also Tekway, Inc. v. Agarwal*, 2020 WL 5946973, at *4 (N.D. Ill. 2020). When it comes to personal jurisdiction, Illinois law allows whatever the Due Process Clause allows.

The Due Process Clause permits a court to exercise personal jurisdiction if the defendant has purposefully established "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). The minimum contacts must not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction comes in two varieties: general jurisdiction and specific jurisdiction. Gharavi argues that this Court has both. In reality, this Court has neither.

## I. General Jurisdiction

The first question is whether this Court has general jurisdiction over FloSports, Pyles, and Kozak. General jurisdiction is a high standard. It applies only where a defendant is "at home." And here, Defendants are far from home.

"General jurisdiction is for suits neither arising out of nor related to the defendant's contacts with the State." *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). A defendant "may be sued on any and all claims" where it is subject to general jurisdiction, *without* regard to the nexus between the forum-state contacts and the nature of the claim. *Daimler*, 571 U.S. at 137.

In a nutshell, general jurisdiction exists when a plaintiff sues a defendant on that defendant's home turf. A defendant can be sued in his or her home state for anything and everything. It's hard to complain about getting sued in your own backyard, because home comes with a home-field advantage. So any claim is fair game.

"The standard for general jurisdiction is demanding because the consequences can be severe." *uBID*, 623 F.3d at 426. A defendant is subject to general jurisdiction only when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 139 (alteration in original) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "[C]ontacts [that] can be said to be *in some sense* 'continuous and systematic'" are not enough. *Id.* (emphasis added).

General jurisdiction exists where a defendant is at home. For a corporation, home typically means the place of incorporation and the principal place of business. *Id.* at 137. For individuals, home means that person's state of domicile. *Id.*

The Supreme Court left open the possibility that general jurisdiction might exist in other situations. But if the window of opportunity is open, the opening is only a crack. It would take an "exceptional case." *Id.* at 139 n.19.

FloSports is a Delaware corporation with its principal place of business in Texas. So, FloSports is subject to general jurisdiction in Delaware and Texas. Similarly, Pyles and Kozak are domiciled in Texas, so they are subject to general jurisdiction in the Lone Star State.

Gharavi does not dispute those facts. Instead, Gharavi appears to argue that this case is an "exceptional case."

It's hard to see why. The substance of the case might be unusual. But from a jurisdictional perspective, the issues are run of the mill.

Start with FloSports. Gharavi alleges that FloSports markets its business to Illinois residents and distributes its services to Illinois residents. *See* Pl.'s Resp., at 9 (Dckt. No. 41). Its employees travel across the country, including Illinois. *Id.*

That's about it. And that's hardly "exceptional." Those connections fall far short of establishing general jurisdiction. *See, e.g.*, *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017) (declining to find the railroad BNSF "at home" in Montana despite its "over 2,000 miles of railroad track and more than 2,000 employees in Montana"); *see also Thomas v. Walmart Inc.*, 2024 WL 1050179, at *7 (N.D. Ill. 2024) (holding that the court did not have general jurisdiction

14

over Walmart even though it was the state's largest employer because the plaintiffs failed to show "that the company's nationwide or global business operations [were] directed from Illinois").[2]

FloSports has contacts with lots of states, but those contacts do not mean that FloSports is at home everywhere it goes. After all, "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *See BNSF*, 581 U.S. at 414 (quoting *Daimler*, 571 U.S. at 140 n.20). General jurisdiction is not like an RV – you're not at home wherever you go.

This Court does not have general jurisdiction over Pyles and Kozak, either.

Gharavi alleges that users in Illinois read the social-media posts by Pyles and Kozak. He believes that Pyles and Kozak are social-media influencers and generated money through their posts. *See* Pl.'s Resp., at 10 (Dckt. No. 41).

That's not enough for general jurisdiction. A person is not at home everywhere that he does business. *See Alani Nutrition, LLC v. Ryse Up Sports Nutrition, LLC*, 2024 WL 148969, at *3 (N.D. Ill. 2024) ("[E]xercising general personal jurisdiction over [defendants] simply because [their] social media activity reaches Illinois residents would mean that every social media influencer is 'at home' in every state in which they have followers. Such a proposition would stretch the boundaries of personal jurisdiction far beyond constitutional limits.").[3]

---

[2] Gharavi points out that a court in this district exercised general personal jurisdiction over defendants who the court determined "had continuous and systematic contacts with Illinois by way of their product distribution network related to ShamWow! towels." *See Jordan Miller & Assocs., Inc. v. Shlomi*, 2021 WL 1923403, at *3 (N.D. Ill. 2021). There, the complaint alleged "that ShamWow! towels were distributed to retail stores with significant Illinois operations," which "suggest[ed] that ShamWow! towels were sold in Illinois." *Id.* Notably, that court did not cite *Daimler*, and it did not contend whatsoever with the "essentially at home" language present in both *Daimler* and *Goodyear*. In any case, a district court case is merely persuasive authority. *See All. to End Repression v. City of Chicago*, 820 F.2d 873, 875 (7th Cir. 1987); *see also Slep-Tone Ent. Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898, 905 (N.D. Ill. 2014) (noting that "prior decisions by courts in [this district] were not binding precedent [but could] serve as persuasive authority" when they were "well-reasoned and particularly persuasive on the issue").

[3] Gharavi cites a series of cases about website operators from the early 2000s that appear to have been overruled by intervening case law, including *Daimler* and *Goodyear*. *Compare* Pl.'s Resp., at 10–11 (Dckt. No. 41), *with* Defs.' Reply, at 2 (Dckt. No. 48) ("Plaintiffs rely on overruled case law regarding

FloSports, Pyles, and Kozak aren't at home in Illinois, so this Court lacks general jurisdiction over them.

## II.     Specific Jurisdiction

The only other possibility is specific jurisdiction.  But based on the allegations, specific jurisdiction isn't an option.

Unlike general jurisdiction, specific jurisdiction isn't about where a defendant is from. Specific jurisdiction comes from "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also GCIU*, 565 F.3d at 1023 ("Specific jurisdiction [] 'refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'").

A court has specific jurisdiction "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010); *see also Daimler*, 571 U.S. at 127.

A defendant's contacts with the forum state must "directly relate to the challenged conduct or transaction." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) ("[T]he defendant's *suit-related* conduct must create a substantial connection with the forum State.") (emphasis in original).

The Seventh Circuit recently restated the three-part test for specific jurisdiction:

> First, the defendant's contacts with the forum state must show that it purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state.  Second, the

---

general jurisdiction.").  As discussed above, "continuous and systematic" is not enough.  The defendant must also be "at home" in the forum state.

> plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 623 (7th Cir. 2022) (citation omitted).

This Court took a close look at Defendants' contacts with Illinois, meaning the contacts that allegedly gave rise to the injuries. For specific jurisdiction, the alleged injury must have arisen out of "the defendant's forum-related activities." *Id.* Any other contacts with Illinois don't matter.

Different claims involve different conduct by FloSports, Pyles, and Kozak. The state-law claims (Counts I to VI, VIII) are based on Defendants' social-media activity. *See* Second Am. Cplt., at ¶¶ 76–116, 122–27 (Dckt. No. 67). The federal claim of copyright misrepresentation is about the takedown requests that a FloSports employee sent to YouTube. *Id.* at ¶¶ 117–21.

The nexus is different, and the Court must consider these claims separately. *See Gillam v. Abro Kalamazoo 3, Inc.*, 712 F. Supp. 3d 1079, 1084 (N.D. Ill. 2024) ("Specific jurisdiction, unlike general jurisdiction, is case-specific. And more than that, it is claim-specific: there must be personal jurisdiction over defendant as to each claim when considered separately.").

The Court will start with the state-law claims before turning to the copyright-misrepresentation claim.

### A.      State-Law Claims

The state-law claims are about the social-media posts by FloSports, Pyles, and Kozak. *See* Second Am. Cplt., at ¶¶ 76–116, 122–27 (Dckt. No. 67).

Gharavi takes issue with the content of the posts. He brings a grab-bag of claims, including defamation, false light, emotional distress, and interference with a business relationship. *Id.* at ¶¶ 76–108. He also alleges deceptive trade practices. *Id.* at ¶¶ 109–16.

17

The claims don't get very far before stumbling into the issue of purposeful availment. Specific jurisdiction does not exist unless Defendants "purposefully availed themselves of the privilege of conducting business in Illinois, or purposefully directed their activities at this forum." *Engs Com. Fin. Co. v. Premiere Copier, Inc.*, 2023 WL 3259780, at *6 (N.D. Ill. 2023) (citing *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012)).

In other words, a defendant must purposefully reach out to the forum state. The relationship "must arise out of contacts that the 'defendant *himself*' creates with the forum." *Advanced Tactical Ordnance*, 751 F.3d at 801 (emphasis in original) (quoting *Walden*, 571 U.S. at 277). That said, "the nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue." *See Felland*, 682 F.3d at 674.

In a case about intentional torts, personal jurisdiction requires "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt – that is, the plaintiff would be injured – in the forum state." *Tower Commc'ns Expert, LLC v. TSC Constr., LLC*, 2018 WL 5624268, at *6 (N.D. Ill. 2018) (quotation marks omitted) (quoting *Tamburo*, 601 F.3d at 703).

"[T]he mere fact that [the defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *See Walden*, 571 U.S. at 291; *see also Green Light Nat'l, LLC v. Kent*, 2018 WL 4384298, at *3 (N.D. Ill. 2018) ("It is not enough that a defendant know that any injury resulting from alleged tortious conduct would be felt in the forum state.") (citation omitted); *Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) ("Knowing about a potential for harm in a particular state is not the same as acting *in* that state – and it takes the latter to permit personal jurisdiction under state law.") (emphasis in original).

18

That is, "mere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's *conduct* connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290 (emphasis added). A plaintiff "must allege injury *and* 'something more' directed at the state before jurisdiction over a foreign defendant may be considered proper." *Engs Com. Fin. Co.*, 2023 WL 3259780, at *5 (emphasis in original) (cleaned up).

Those rules apply with special force when it comes to online communications. A defendant isn't subject to personal jurisdiction nationwide for posting something on the worldwide web. And a defendant isn't subject to jurisdiction in a particular state simply because the post is about someone in that state.

Posting something about someone on the internet is not enough to give rise to personal jurisdiction in the target person's home state. The post must constitute speech uniquely voiced in the forum state, or call for action in the forum state. It's the difference between putting a stake in the ground, and launching something into the atmosphere. Throwing content into the wind does not mean that there is personal jurisdiction wherever it lands.

Courts routinely hold that specific jurisdiction must rest on something more than posts on the internet about a plaintiff in the forum state. *See, e.g.*, *Hoffman v. Barnes*, 2012 WL 1021837, at *4 (N.D. Ill. 2012) (finding no personal jurisdiction in a defamation case because there was "no evidence of express aiming beyond the plaintiffs' mere residence in Illinois"); *Bittman v. Fox*, 2016 WL 2851566, at *8 (N.D. Ill. 2016) (finding no personal jurisdiction because plaintiff failed to show that defendant "expressly directed any tortious conduct at the State of Illinois, rather than at an Internet audience of fellow activists").

19

But sometimes online communications do give rise to personal jurisdiction. In those cases, courts require some extra connection to the forum state, above and beyond saying something on the internet about a person in that state.

A good example is *Majumdar v. Fair*, 567 F. Supp. 3d 901 (N.D. Ill. 2021). That case involved a professor who brought defamation claims about social-media posts. The posts accused the professor of sexually assaulting and harassing students at the University of Chicago.

In those posts, the defendant repeatedly referenced the University of Chicago, frequently "tagging" the university's social-media page. *Id.* at 911. The district court equated that activity to "sen[ding] open letters to the University of Chicago [or] post[ing] copies on campus bulletin boards for all to see." *Id.* The defendant also "tagged at least two Illinois residents, including one of [the] plaintiff's current [] colleagues at the University of Chicago." *Id.*

The court found it "difficult to accept [the] defendant's argument that she did not purposefully direct or expressly aim her posts at Illinois, not only because she specifically directed many of them at Illinois-based users such as '@UChicago,' but also for the independent reason that the content of the posts suggest[ed] that pressuring the University of Chicago to take action against [the] plaintiff . . . was the goal of her social media campaign." *Id.*

In the end, the court found specific jurisdiction. *Id.* at 911, 913. The defendant explicitly referenced Illinois in her posts. *Id.* The defendant primarily targeted social-media users in Illinois, and encouraged an Illinois university and Illinois residents to take action against the plaintiff in Illinois. *Id.*

The Seventh Circuit reached the same conclusion in *Tamburo*, which involved an allegation of defamation based on posts on a website. Specific jurisdiction existed because the

20

defendants encouraged people in Illinois to do something in Illinois. "[S]ome of the messages specifically listed Tamburo's Illinois address and urged readers to harass him. This is enough for a prima facie case of personal jurisdiction under *Calder*'s 'express aiming' test for personal jurisdiction in intentional-tort cases." *See Tamburo*, 601 F.3d at 706.

A leading case from another district shows how online content can fall on different sides of the jurisdictional boundary line. *See Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850, 864 (E.D. Mich. 2019). That case was about defamatory tweets. Some tweets gave rise to personal jurisdiction, and others didn't.

One defendant published a tweet that included the address of a Michigan resident, which was "fairly characterized as doxing" (meaning the public disclosure of personal identifying information). *Id.* at 861. The "tweet was intended to cause some action in Michigan or catch the eye of those most able to make contact with the Vangheluwes, i.e., Michiganders." *Id.* So it gave rise to personal jurisdiction.

Another tweet was more up in the air, without sufficient ties to Michigan. That tweet attached an article that flagged the fact that the plaintiff lived in Michigan. *Id.* But the tweet did not call on people in Michigan to do anything in Michigan.

The article "was not tailored to a Michigan audience. Nor is there evidence that GotNews marketed or circulated the article to people in Michigan specifically as opposed to GotNews readers generally." *Id.* at 863. There was nothing about the tweet "specifically targeting the pocket books of Michiganders." *Id.* at 864.

That body of case law confirms that this Court lacks personal jurisdiction over FloSports, Pyles, and Kozak. They did not mention Gharavi by name, let alone mention that he lives in Illinois.

And even if they had, the posts would not give rise to personal jurisdiction. The posts did not call on anyone in Illinois to take any action against Gharavi in Illinois. The posts were not "tailored to a [Illinois] audience," and there is no "evidence that [Defendants] marketed or circulated the article to people in [Illinois] specifically as opposed to [their] readers generally." *Vangheluwe*, 365 F. Supp. 3d at 863.

The complaint does not even allege that Defendants knew that Gharavi resided in Illinois. So the fact that Gharavi lived in Illinois was "purely incidental." *Hoffman*, 2012 WL 1021837, at *4.

And even if Defendants knew about his Illinois residency, that knowledge would not suffice. Again, knowing about a potential for harm in a particular state is not a basis for specific jurisdiction. *See Ariel Invs.*, 881 F.3d at 522; *Tekway*, 2020 WL 5946973, at *5. The focus is on actions by the defendant, not harm to the plaintiff.

True, Gharavi may have "experienced a particular injury or effect" in Illinois. *See Walden*, 571 U.S. at 290. But that's not enough. The posts by FloSports, Pyles, and Kozak do not "connect[] [them] to the forum in a meaningful way." *See Walden*, 571 U.S. at 290.

Gharavi relies on a case where the sale of a product to Illinois residents gave rise to personal jurisdiction. *See* Pl.'s Resp., at 6 (Dckt. No. 41) (citing *BRABUS GmbH v. Individuals Identified on Schedule A Hereto*, 2022 WL 7501046 (N.D. Ill. 2022)). That case does not move the needle. This case is about defamatory online communications, not the sale of a product. The alleged injury did not arise from the sale of anything to anyone in Illinois.

Gharavi also puts weight on a case where a phone call to Illinois gave rise to personal jurisdiction. *See Nw. 1 Trucking Inc. v. Haro*, 613 F. Supp. 3d 1081, 1094 (N.D. Ill. 2020). That

22

case doesn't score him any points, either.  Here, no one directly communicated with anyone in Illinois.

In sum, this Court lacks specific jurisdiction over FloSports, Pyles, and Kozak for any claims related to their social-media activity.

### B.      Federal Copyright-Misrepresentation Claim

The other claim is the copyright-misrepresentation claim.  Gharavi alleges that "Connor Jaschen, acting as a representative of FloSports, knowingly submitted false [copyright] takedown notices for twenty of Gharavi's YouTube videos . . .  [but] Gharavi successfully defended each [copyright] takedown notice . . . ."  *See* Second Am. Cplt., at ¶ 38 (Dckt. No. 67).

Communicating with YouTube doesn't give rise to personal jurisdiction in Illinois. YouTube isn't based in the Land of Lincoln.  It is based in California.  *See Contact Us,* YouTube, https://www.youtube.com/t/contact_us (last visited March 14, 2025).  Nothing about that communication was directed at Illinois.

 Maybe Gharavi felt the *effects* of the takedown notices in Illinois.  But again, feeling an injury in Illinois is not enough to give rise to personal jurisdiction over an out-of-state defendant. *See Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

In any case, Gharavi does not make any argument why the takedown requests created a connection to Illinois.  Without a connection, there is no personal jurisdiction.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Dckt. No. 31) is hereby

granted.  FloSports, Pyles, and Kozak are dismissed for lack of personal jurisdiction.

Date:  March 14, 2025

Steven C. Seeger
United States District Judge

24