IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| NIMA GHARAVI, an individual, and RIGHT CALL OFFICIALS, INC., an Illinois corporation, <br><br> Plaintiffs, <br><br> v. <br><br> JESSICA PRESLEY, MATSCOUTS, LLC, WILLIE SAYLOR, PATRICK MINEO, STEPHEN KOLANKOWSKI, JOSEPH CORSINI, IAN JAGGER, JOHN DAVIDSON, and JOHN DOES 4-25. <br><br> Defendants. | Case No. 1:24-cv-1969 <br><br> **Judge:** <br> Honorable Steven C. Seeger <br><br> **Magistrate Judge:** <br> Honorable Beth W. Jantz |

**PLAINTIFFS' MOTION FOR CLERK'S ISSUANCE OF
SUBPOENA TO X CORP WITH FIRST AMENDMENT ANALYSIS**

NOW COME Plaintiffs, NIMA GHARAVI ("Mr. Gharavi") and RIGHT CALL OFFICIALS, INC. ("Right Call Officials") (collectively, "Plaintiffs"), by and through counsel, SWANSON, MARTIN & BELL, LLP, and respectfully request that this Court direct the Clerk to issue a third-party subpoena to X Corp. (formerly "Twitter") pursuant to Federal Rule of Civil Procedure 45(a)(3). This request arises from ongoing defamation litigation wherein Plaintiffs seek to identify anonymous X Corp. account holders who have published defamatory statements and explicit threats of physical violence against them.

**INTRODUCTION AND BACKGROUND**

Under Rule 45(a)(3), the Clerk must issue subpoenas upon request, and attorneys may alternatively issue subpoenas directly. Plaintiffs request direction from this Court for the Clerk's issuance here not because court permission is required, but to provide comprehensive First

Amendment analysis in advance to facilitate X Corp.'s voluntary compliance and promote judicial economy. X Corp. has established precedent requiring heightened procedural safeguards before disclosing anonymous users' identities. By providing this constitutional analysis proactively, Plaintiffs aim to address these concerns and encourage voluntary compliance, avoiding the delays and costs associated with motion practice in a foreign federal court where enforcement would occur.

Plaintiffs are currently pursuing defamation claims in this Court against multiple defendants for false statements accusing them of criminal conduct, including posting wrestling videos to pornographic websites and endangering children. (Dkt. No. 92) The X Corp. account holder using the handle "@POTUS_Wrestling" has published numerous false and defamatory statements about Plaintiffs with massive reach, including posts viewed over 17,000 times containing explicit accusations such as "Goodmorning and [f***] @Midwestwrestle who is a pedophile" and "this dudes definitely trying to [f***] kids." (*See* Screenshots of @POTUS_Wrestling Posts attached as **Exhibit A**)

The X Corp. account holder using the handle "@Jagger712" recorded and published multiple videos containing explicit threats of physical violence against Plaintiffs, including threatening to "put this cigarette out in your eye" and warning that "one of these guys is gonna break a [f******] camera over your head." (*See* Screenshots of @Jagger712 X Posts and Videos attached as **Exhibit B** and corresponding Video Transcript attached as **Exhibit C**)

The identities of both anonymous account holders are necessary to pursue Plaintiffs' claims, as these individuals appear to be part of a coordinated campaign to defame and threaten Plaintiffs, with @POTUS_Wrestling demonstrating knowledge of Plaintiffs' ongoing litigation and encouraging others to continue the harassment. Subsequent to @POTUS_Wrestling's

publications at issue, the account holder changed its handle to @MatScouts_RTC. Sometime between July 29, 2025 and August 10, 2025, @MatScouts_RTC (formerly @POTUS_Wrestling) deactivated its account, triggering a 30-day time period until permanent deletion under X Corp.'s own policies.[1] On August 11, 2025, Plaintiffs served a litigation hold letter regarding @MatScouts_RTC (formerly @POTUS_Wrestling) via hand-delivery to X Corp.'s registered agent CT Corporation System.

Plaintiffs thereby request that the Court direct the Clerk to issue a subpoena pursuant to Federal Rule of Civil Procedure 45(a)(3) upon Plaintiffs' presentation of a properly formatted subpoena. Rule 45(a)(3) provides that "[t]he clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it." *Alexander v. Richter*, 756 F. App'x 611, 615 (7th Cir. 2018). Alternative attorney issuance under the same rule is permissive. *See Vukadinovich v. Posner*, 2022 WL 20507901, at *1 (N.D. Ind. June 15, 2022) (quoting Fed. R. Civ. P. 45(a)(3)) ("An attorney also may issue and sign a subpoena if the attorney is authorized to practice in the issuing court.").[2]

**LEGAL STANDARD**

As a matter of policy, X Corp. pursues the laudable goal of safeguarding users' First Amendment right to anonymous speech, a principle recognized in *Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997). To that end, X Corp. has been successful in establishing a body

---

[1] "Deactivation begins the process to permanently delete your X account…After your 30-day deactivation window, your X account is permanently deleted." *See* How to Deactivate Your X Account, X Help, https://help.x.com/en/managing-your-account/how-to-deactivate-x-account (last visited Aug. 11, 2025).

[2] Parties who have elected not to voluntarily comply with these heightened procedural safeguards have sustained substantial judicial resources and significant delays to their underlying proceedings. *See Cognosphere Pte. Ltd. v. X Corp.*, 2024 WL 4227594 (N.D. Cal. Sept. 18, 2024) and *Agdal v. X Corp.*, 2025 WL 81594 (N.D. Cal. Jan. 13, 2025); *In re: DMCA 512(h) Subpoena to X Corp.*, 2:25-mc-00474, Dkt. 34 (E.D. La. Aug 8, 2025). By contrast, in a freestanding DMCA subpoena matter, Plaintiffs obtained voluntary compliance from X Corp. without adversarial motions practice by revising their initial subpoena request to include First Amendment analysis in a supplemental filing. Compare *In re DMCA Section 512(h) Subpoena to X Corp.*, 3:25-mc-80056-LB, Dckt. 1 (N.D. Cal.) with *In re DMCA Section 512(h) Subpoena to X Corp.*, 3:25-mc-80056-LB, Dkt. 3 (N.D. Cal.).

of caselaw requiring heightened procedural safeguards before disclosure of anonymous users' identities.[3]

## ARGUMENT

### I. The Four-Step Balancing Inquiry Tests Weigh in Favor of Issuing the Subpoena.

The *Rich* Court conducted a four-factor balancing inquiry evaluating whether "(1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source"). *Rich v. Butowsky*, 2020 WL 5910069, at *3–4 (N.D. Cal. Oct. 6, 2020). Plaintiffs meet the requirements under the four-factor test.[4]

---

[3] Because Rule 45(c)(2)(A) requires production "at a place within 100 miles of where the [entity]…regularly transacts business in person," and both Rule 45(d)(2)(B)(i) and (d)(3)(A) require subpoena motions to be heard in "the district where compliance is required," the bulk of this protective caselaw developed in the Northern District of California, where X Corp. was previously headquartered. *See In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876-79 (N.D. Cal. Jun. 21, 2022); *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 982 (N.D. Cal. Mar. 2, 2015); and *Rich v. Butowsky*, 2020 WL 5910069, at *3–4 (N.D. Cal. Oct. 6, 2020).

[4] Courts in this District have applied the five-factor *Sony Music* balancing inquiry, when considering the need for disclosure of subpoenaed identifying information from ISPs regarding subscribers: "(1) a concrete showing of a prima facie claim of actionable harm, (2) specificity of the discovery request, (3) the absence of alternative means to obtain the subpoenaed information, (4) a central need for the subpoenaed information to advance the claim, and (5) the party's expectation of privacy." *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 248-249 (N.D. Ill. Aug. 9, 2011) citing *Sony Music Entertainment Inc. v. Does 1–40*, 326 F.Supp.2d 556, 564 (S.D.N.Y. July 26, 2004). Should this Court apply the *Sony Music* test instead, Plaintiffs still meet the requirements and the subpoena should be issued. Plaintiffs have pled a prima facie claim of defamation (*see* Section I(B)), have specified their discovery request to the identities of the anonymous X users (*see* Section I(A)), have no other way of obtaining such identities (*see* Section I(BC)), and need the identities of the X users in order to litigate their defamation claims (*see* Section I(B). As to the party's expectation of privacy, this Court has held that John Doe defendants who use the Internet to engage in "unlawful" behavior have a minimal expectation of privacy in remaining anonymous. *See First Time Videos, LLC*, 276 F.R.D. at 248. Surely, the same analysis would apply in this case wherein the anonymous X users have made defamatory statements and violent threats against Plaintiffs. *See also Jones v. Meta Platforms, Inc.*, 2025 WL 2308494 (N.D. Cal. Aug. 11, 2025).

**A.** *The Subpoena is Being Sought in Good Faith.*

The X Corp. subpoena is being sought in good faith as the systematic nature of @POTUS_Wrestling's and @Jagger712's campaigns, spanning multiple days with increasingly inflammatory content and explicit encouragement for others to continue the harassment, demonstrates this subpoena seeks to unmask conduct far beyond protected anonymous speech.

**B.** *The Information Sought in the Subpoena (Identity of the Anonymous X Users) Directly and Materially Relates to Plaintiffs' Defamation Claims.*

The identifying information is central to Plaintiffs' ability to pursue their defamation claims, as they cannot proceed without knowing the defendant's identity for service of process and the subscriber information directly relates to Plaintiffs' ability to pursue their claims and obtain redress for the substantial harm caused. Under Illinois law, defamatory statements are defined as "statement[s] that harm a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). To state a claim for defamation under Illinois law, Plaintiffs must plausibly plead: (1) the defendant made a false statement about the Plaintiffs; (2) the defendant made an unprivileged publication of that statement to a third-party; and (3) that this publication caused damages. *Id.* Plaintiffs have established each element.

The @POTUS_Wrestling account has published numerous false statements with massive reach, including posts viewed over 17,000 times containing explicit false accusations. *See* Ex. A. These statements are demonstrably false and constitute defamation per se under Illinois law as they falsely accuse Plaintiffs of criminal conduct. These defamatory statements achieved massive publication, with individual posts receiving thousands of views and generating hundreds of responses from wrestling community members across multiple days in June 2025, demonstrating widespread dissemination to the wrestling community. Moreover, the systematic defamatory

campaign has caused Plaintiffs severe reputational harm and interference with their business relationships in the wrestling community, with @POTUS_Wrestling encouraging. The @Jagger712 also account presents a compelling case for unmasking based on both defamatory statements and explicit threats of physical violence. The user published videos containing false statements accusing Plaintiffs of inappropriate conduct and comparing them to known sexual predators. *See* Exs. B and C.

The Supreme Court has held that "the First Amendment also permits a State to ban a 'true threat.'" *Virginia v. Black*, 538 U.S. 343, 359 (2003). True threats encompass "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id.* at 359. Moreover, the speaker "need not actually intend to carry out the threat," rather, "a prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." *Id.* at 359-360 (internal citations omitted). "Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Id.* at 360. Here, @POTUS_Wrestling and @Jagger712 statements clearly constitute "true threats" as they directly threaten specific violent acts against Plaintiffs personally, communicate serious intent through detailed descriptions of violence, and target Plaintiffs specifically by name and reference their activities.

Both users' defamatory statements and explicit threats of violence constitute tortious and potentially criminal conduct that falls outside core First Amendment protections. The Supreme Court "has placed fighting words outside the protection of the First Amendment." *Nuxoll ex rel.*

*Nuxoll v. Indian Prairie Sch. Dist. # 204*, 523 F.3d 668, 670 (7th Cir. 2008). Similarly, false statements made with reckless disregard of the truth "do not enjoy constitutional protection." *Matter of Palmisano*, 70 F.3d 483, 487 (7th Cir. 1995). As such, the unmasking of their identifies is warranted and necessary in order for Plaintiffs to pursue their claims.

    C. *The Identity of the Anonymous X Users Cannot be Obtained from Any Other Source.*

Finally, Plaintiffs cannot obtain the identity of the anonymous users from any other source as only X Corp. possesses the subscriber information necessary to identify the account holder. For these reasons, the Court should find that a First Amendment analysis warrants the issuing of the X Corp. subpoena.

## CONCLUSION

@POTUS_Wrestling and @Jagger712's systematic defamatory campaign with massive reach (17,000+ views), coordinated harassment, and deliberate escalation of attacks constitutes tortious conduct that falls outside core First Amendment protections. This bad faith conduct diminishes any privacy interest and makes identification critical to preventing continued harm. Accordingly, this Court should issue a subpoena to X Corp. pursuant to Fed. R. Civ. P. 45(a)(3).

WHEREFORE, Plaintiffs respectfully request this Court direct the Clerk to issue a subpoena pursuant to Fed. R. Civ. P. 45(a)(3) upon Plaintiffs' presentation of a properly formatted subpoena seeking the following information from X Corp. related to the @POTUS_Wrestling (also known as @MatScouts_RTC) and @Jagger712 accounts; and for any further relief this Court deems appropriate and just.

                                              Respectfully Submitted,

                                              **NIMA GHARAVI and RIGHT CALL OFFICIALS, INC.**

Dated: August 18, 2025                  By:*/s/ Nicole O'Toole Peterson*_____

7

Jeffrey S. Becker (ARDC #6282492)
Nicole O'Toole Peterson (ARDC #6330227)
Olivia E. Duggins (#6349003)
SWANSON, MARTIN & BELL, LLP
330 N. Wabash Avenue, Suite 3300
Chicago, Illinois 60611
Phone: (312) 321-9100
jbecker@smbtrials.com
npeterson@smbtrials.com
oduggins@smbtrials.com