IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NIMA GHARAVI, an individual, and RIGHT CALL OFFICIALS, INC., an Illinois corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No, 1:24-cv-1969 |
| vs. | ) ) | Judge: Hon. Steven C. Seeger |
| JESSICA PRESLEY, MATSCOUNTS, LLC, WILLIE SAYLOR, PATRICK MINEO, STEPHEN KOLANKOWSKI, JOSEPH CORSINI, IAN JAGGER, JOHN DAVIDSON, and JOHN DOES 4-25, | ) ) ) ) ) ) ) | Magistrate Judge: Hon. Beth W. Jantz |
| Defendants. | ) | |

**JOHN DAVIDSON'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS UNDER RULES 12(b)(2) AND 12(b)(6)**

Defendant, JOHN DAVIDSON, by his attorneys, STORM & PISCOPO, P.C., files this Memorandum of Law in support of his Motion to Dismiss the claims against him for (1) lack of personal jurisdiction under FRCP 12(b)(2); and (2) failure to state a claim upon which relief can be granted pursuant to FRCP 12(b)(6).

**Background**

On May 29, 2025, Plaintiffs, NIMA GHARAVI and RIGHT CALL OFFICIALS, INC. (collectively "Plaintiffs"), filed a Third Amended Complaint [Doc 92], which for the first time named JOHN DAVIDSON as a Defendant. Five (5) counts of the Third Amended Complaint are brought against Davidson: (1) Count I for defamation *per se*; (2) Count II in the alternative to Count I, defamation *per quod*; (3) Count III for invasion of privacy by false light; (4) Count IV for intentional infliction of emotional distress; and (5) Count V for tortious interference with business relationships.

1

As to Davidson, the Third Amended Complaint ("TAC") alleges as follows. Plaintiff Gharavi and his company, Right Call Officials, Inc. are citizens of the State of Illinois; Gharavi is a registered wrestling official with the NCAA and the IHSA and other organizations. (TAC, ¶ 1.) Davidson is a citizen of the State of Pennsylvania[1] who posts on X under the handle "Antitroll 2828." According to Plaintiff, he had been previously identified as "John Doe No. 3" (TAC, ¶ 9), but no previous Complaint had alleged what, if anything, John Doe No. 3 had done, other than "publicly express outrage, disgust, hatred, and have made threats of physical violence towards Mr. Gharavi in response to the statements made in Defendants' social media posts." [*See* Doc. 1, ¶ 61.]

Gharavi creates and posts a number of videos of wrestling events. He edits the videos and then posts them on YouTube under the handle "Midwest Wrestle." (TAC, ¶¶ 19-21.) Gharavi alleges that he spends hours reviewing comments in order to remove inappropriate comments and block the offending accounts. (TAC, ¶ 24.) However, according to Plaintiffs, third parties that also post pornographic materials have misappropriated his videos and re-posted them on their own channels. (TAC, ¶¶ 28-32.)

Beginning in the spring of 2023, certain Defendants (*not* Davidson) accused Gharavi, by direct message, of purposely uploading his videos to pornographic websites. Gharavi denied those allegations, but those Defendants (again, *not* Davidson) still made them public, first by a podcast and then by making posts on social media. (TAC, ¶¶ 33-40, Exs. B-G.)

The Third Amended Complaint includes only the following allegation as it relates to Defendant Davidson:

---

[1] Although the Third Amended Complaint asserts on information and belief that Defendant John Davidson is a New Jersey resident (TAC, ¶ 9), in fact he resides in Pennsylvania. Specifically, on October 20, 2025, the Complaint and summons were served on Defendant at his home at 5579 River Road, Equinunk, Pennsylvania. [Doc 126.]

2

>41. Upon information and belief, Mr. Davidson made a series of defamatory, inflammatory, and doxing posts aimed at, and identifying Mr. Gharavi and/or Midwest Wrestle, including, but not limited to:
>
>>a. Insinuating that Mr. Gharavi's [sic] is a "predator"; and
>>
>>b. Making violent threats towards Mr. Gharavi. (*See* Davidson Social Media Posts, attached as **Exhibit H**).

(TAC, ¶ 41.) Exhibit H reflects social media posts on a forum called "Intermatwrestle." (TAC, Ex. H, pp. 27-28.) The Exhibit reveals 11 posts by "Antitroll2828", which read as follows:

>**December 31, 2023:** Real talk "why hasn't anyone just thrown these guys a beating? Especially parents who found pictures of their kids with perverts commenting on them and such, this isn't a new thing I heard about these weirdos over a year ago and they life half a country away from me, I wouldn't let these clowns anywhere near my kids and I would cause such an issue if this guy was reffing in my area that would have to get rid of him. . . who gives a shit about the law when it comes to things like this?
>
>**December 31, 2023 (in response to a post by "flyingcement"):** Yea that's absolutely crazy to me, I thought people in the Midwest had a little more back bone but apparently not bc if it took mrs Schwab to really say something. I can promise where I grew up in a very Italian town in NJ these guys would've had bricks coming through their windows the first time this shit came out and it would only gotten worse and more violent from there til the message was received, no way they would've been able to do it as long as they have.
>
>**December 31, 2023 (in response to a reply to his post by "billyhoyle"):** So you use my very specific post about where I grew up to take a shot at the Boy Scouts, Catholic Church and Italians? The Bergen coaches did nothing wrong, the kid who filed the complaint and his dad are psychos, the kid tried to injury his competition on the team multiple times, the father broke into the school and tried to rig the scale so his sons opponent would miss weight for a wrestle off and the father almost list his license to practice law because of all the BS in the lawsuit, how the hell does any of what you said correlate to the OP
>
>Civil legal action? Lobby states to pass laws? You mean lobby the same politicians who protect epsteins client list like it's their daughter's virtue? Police and laws don't ever stop weirdos like this, The whole point of what me and @flyingcement were saying is parents start throwing these guys beating then they'll stop showing up to wrestling events, then if they stop showing up to wrestling events they can't take creepy high def crotch shots of hs wrestlers and put them in the internet where literal perverts are commenting on the pics and sharing them to pedo websites

**December 31, 2023 (in response to a further reply by "billyhoyle"):** Legal action is literally never the best way to deal with predators especially ones that target children, law enforcement knows about these guys and have done nother, and hell nothing will happen if law enforcement makes a move, a teacher in my town was arrested for being a serial predator for years, even posing as a 12 yr old victims father and forcing her to get an abortion and this career predator who was tied to ruining the lives of 8 different little girls got 4 years in prison, served a little over 2 and half and got out, meanwhile same town 19 year old kid with no record hits an illegal alien riding a bicycle the wrong way with no lights on the highway because he blew a /06 he got 10 years and had to serve 7 and half. . .and these kind of people know the law isn't against them.

**January 1, 2024 (in response to question about "illegal alien"):** Bc he was….

**January 1, 2024 (in response to post by "BAC"):** All this shit and in the end nothing will get accomplished or if it does it'll take years while clown continues to operate . . orrr 3 fathers or brothers in masks run into this guy throw him a beating, make him piss blood for awhile and see how many more tournaments this weirdo pops up after that

**January 2, 2024 (in response to post by "sourge165"):** Bro this post is about weirdos taking pictures of children wrestling and posting them for some profit from pedos and you're held up on my story like shut the hell up, and the point was that a kid got more time and had his life ruined worse than a serial kid rapist who preyed on girls for a decade because the laws against predators are a joke, the kid hit someone who was riding a bike in the dark on a highway going the wrong way who was committing a felony (his presence here illegally was a felony) and that kid got more time in a harder prison than a rapist, stay on topic

**January 2, 2024 (in response to a post by "billyhoyle"):** Your first paragraph is exactly why predators and criminals are thriving in this country right now, literally the definition why this country has the arrow pointing straight down, you think I give a shit if I get some jail time for beating up a child predator? If this guy was doing this in Nj I was would drive straight to the arena and wait for him in a parking lot. Violence has always been and always will be the greatest deterrent towards evil men, these people don't care about laws and laws don't work for the victims at all in our system, he's exploited 100s of kids and posted their images for pedos to enjoy and currently is a youth ref with access to children and you want to start the long drawn out process of changing laws (relying on politicians, half of which are current fighting to keep Epstein client list sealed) and file civil suits which go on for years and years.. the law has known about this for over a year. How many pictures have been taken and sent into the cesspool of the internet since then? How many disgusting weirdos enjoyed them since the cops were notified? Hopefully the F.B.I. does something now that they are involved but I doubt if they do it'll be a quick and speedy process

4

the greatest threat to society isn't evil men it's the indifference and apathy of good men

**January 2, 2024 (in response to "interviewed_at_Weehawken"):** This isn't the first time Mineo used his platform to call out predators in the wrestling community and he has 3 young girls so I know he's sincere when he talks about this stuff, and Mineo runs a wrestling page with like over 1000 members in NJ, quite a few that work in law enforcement, it wouldn't be surprising at all if one of them knew who to call to get the ball rolling on something…

pretty weird time and subject to try and dunk on Mineo when he did more to try and stop this guy in the last 48 hrs then law enforcement and the wrestling community did in a year

**January 2, 2024 (in response to "interviewed_at_Weehawken"):** Idk who brought it up first and my point was that mineo shared all this information with his wrestling group, a lot of NJ wrestlers around mineos age went into law enforcement and are members of said group so I said I wouldn't be surprised if that helped get the FBI get involved. big difference between a wrestling mom calling the fess and a Sgt in a large police department calling the feds , I wasn't stating anything as a fact just pointing that out to you

I dunk in mine from time to time because he deserves it occasionally but this is a very serious subject and one I know he isn't talking about for clicks or likes

**January 2, 2024 (in response to a post by "Le duke"):** Weak

Per the FBI own numbers only 52 percent of all murders are solved (and they group this in with manslaughter to boost that number)

26 percent of rape cases are solved

36 percent of violent crimes are solved

23 percent of all Robbery

And those are just the numbers for cases with arrest, not prosecutions so these number go down even more after trial and almost 90 percent of the rest agree to a plea deal for a lesser charge and less or no jail time

im also not advocating for people to go be Batman in their communities after, a lot of stupid people could end up hurting people but in certain situations everyday people need to step up and do something when law enforcement can't or just won't stop the obvious wrong going on , otherwise predators and criminals rule and society fails

> Thinking about it I think pyles may have briefly brought this up in the past but tap danced around it for fear of getting sued or company orders or whaever the reason and when these guys got kicked out of midlands pyles popped back up with it.

(TAC, Ex. H; *see also* Exhibit 1 to the Motion to Dismiss).

## Argument

**I. The Third Amended Complaint should be dismissed as to John Davidson for lack of personal jurisdiction.**

A Federal Rule of Civil Procedure 12(b)(2) motion to dismiss asserts a "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). A motion to dismiss pursuant to Rule 12(b)(2) is a challenge to a court's ability to bring a person into its adjudicative process. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). When a defendant challenges personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *NBA Properties, Incorporated v. HANWJH,* 46 F.4th 614, 620 (7th Cir. 2022). In reviewing a jurisdictional motion, the district court "must read the complaint liberally, in its entirety, and with every inference drawn in" the plaintiff's favor. *Central States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.,* 440 F.3d 870, 878 (7th Cir. 2006). Unless there is an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003).

The Illinois long-arm statute authorizes personal jurisdiction to the extent "permitted by the Illinois Constitution and the Constitution of the United States." *See* 735 ILCS 5/2-209(c). Accordingly, the requirements under state statute and the federal Constitution "merge." *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010)

Jurisdiction under the Due Process Claus falls under two types: general jurisdiction and specific jurisdiction. General jurisdiction is for suits neither arising out of nor related to the defendant's contacts with the state. *GCIU-Employer Ret. Fund v. Goldfarb Corp.,* 565 F.3d 1018,

6

1023 (7th Cir. 2009). For an individual, general jurisdiction is the place in which an individual is domiciled. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Goodyear Dunlop Tires Ops., S.A. v. Brown,* 564 U.S. 915, 924 (2011). Here, Defendant Davidson is domiciled in Pennsylvania, not in Illinois, and therefore the Court cannot have general jurisdiction over him.

Specific jurisdiction exists in situations where "the suit 'arise[s] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler*, 571 U.S. at 118 quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-924 (2011). There are three requirements for specific jurisdiction to exist:

> First, the defendant's contacts with the forum state must show that it "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state." Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) quoting *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). A court has specific jurisdiction "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.,* 623 F.3d 440, 443 (7th Cir. 2010). Ultimately, "the question of personal jurisdiction hinges on the defendant's—not the plaintiff's—contacts with the forum state." *North v. Ubiquity, Inc.*, 72 F. 4th 221, 225 (7th Cir. 2023).

This Court has ruled that it lacks jurisdiction over Defendants Schwab, FloSports, Pyles, and Kozak, reasoning that their social media posts did not constitute purposeful availment of the laws of Illinois. They did not purposefully reach out to the forum state. [Doc. 80, pp. 18-22.] Similarly, each claim brought against Mr. Davidson is based upon his social media posts. Like those Defendants, Mr. Davidson's social media posts did not state Plaintiffs' names, did not

7

mention Illinois, and did not encourage anyone in Illinois to take action in Illinois anywhere. For a state to have specific jurisdiction over a defendant, the defendant's conduct must connect with the forum state, "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "Mere injury to a forum resident is not a sufficient connection to the forum. . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 290.

Here, Davidson did not mention Plaintiffs by name, mention the state of Illinois, or call on anyone in Illinois to take any action against Plaintiffs in Illinois. For these reasons, the Court should find that it lacks jurisdiction over Defendant John Davidson and dismiss the Third Amended Complaint against him.

**II. The Complaint should be dismissed under Section 12(b)(6) of the Code of Civil Procedure.**

Even if the Court had jurisdiction over the Defendant, the Complaint should be dismissed for failure to state a claim upon which relief may be granted under Rule 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.* at 678 (*citing Bell Atlantic Corp. v. Twombly, v.* 550 U.S. 544, 555 (2007)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombley,* 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Rather, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 557.

### A. Count I fails to state a claim against Defendant Davidson for defamation *per se.*

Under Illinois, a defamatory statement is one that harms a person's reputation because it lowers the person in the eyes of others or deters others from associating with him. *Hadley v. Doe,* 2015 IL 118000, ¶ 30. For a plaintiff to establish a claim for defamation, the plaintiff must "show that the defendant 'made a false statement concerning [the plaintiff], that there was an unprivileged publication to a third party with fault by the defendant, which caused damage to the plaintiff.'" *McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1016 (N.D. Ill. 2012) (*quoting Krasinski v. United Parcel Serve., Inc.*, 124 Ill. 2d 483 (1988)).

A statement is defamatory *per se* if its harm is obvious and apparent on its face, such that injury to a plaintiff's reputation may be presumed. *Hadley,* 2015 IL 118000, ¶ 30; *Tuite v. Corbett,* 224 Ill. 2d 490, 501 (2006). A statement must fall under one of the following five categories to qualify as defamation *per se* in Illinois:

> (1) Words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing his or her employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

9

*Tuite v. Corbett,* 224 Ill. 2d 490, 501 (2006); *McGreal*, 892 F. Supp. 2d 996, 1016 (N.D. Ill. 2012).

However, for a statement to constitute defamation *per se*, it must be injurious to the plaintiff on its face. *Hadley,* 2015 IL 118000, ¶ 31. If a reasonable "innocent construction" (i.e., non-defamatory) can be made of the statement, then it is not actionable. *Tuite,* 224 Ill. 2d at 502. Under the innocent construction rule, "[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se. Tuite,* 224 Ill. 2d at 503 (*quoting Chapski v. Copley Press,* 92 Ill.2d 344, 352 (1982)). The innocent construction must be a reasonable one, giving the words their natural and obvious meaning; courts will not strain to find an innocent construction when a defamatory meaning is far more reasonable. *Bryson v. News America Publications, Inc.,* 174 Ill. 2d 77, 90-94 (1996).

Here, the Complaint fails to specify which of Davidson's posts are defamatory. In the end, however, none of Davidson's posts identify the Plaintiff. A statement is not actionable as defamation per se if the statement, when read on its face, "can reasonably be interpreted as referring to someone other than the plaintiff." *Id*. ¶ 33. As none of Mr. Davidson's posts identify the Plaintiff, they can be reasonably viewed as referencing someone other than the Plaintiff, making Plaintiffs' defamation claim insufficient. Indeed, earlier in the thread the discussion was about two individuals, one in Iowa and one in Illinois. Davidson's statements did not discuss either one in particular. As such, Plaintiff fails to allege sufficient facts to demonstrate defamation *per se* and Count I should be dismissed.

Moreover, the posts by Defendant Davidson do not assert any false statements of and concerning the Plaintiffs. Nowhere in any of Davidson's posts does he say that the Plaintiff was a

"pedophile" or a "predator." At the very most, the post states what Davidson thinks should happen to persons who post online videos showing inappropriate images of minors, and that the legal system is an inadequate tool for dealing with them. It is not a statement that Plaintiffs did anything wrongful. Thus, the statements are not defamatory statements directed at Plaintiffs, but constitutionally protected opinions that the legal system is insufficient to protect society. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339-40 (1974) ("Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.") Because the statements are not defamatory, Count I fails to state a claim against Davidson and should be dismissed.

### B. Count II fails to state a claim against Defendant Davidson for defamation *per quod*.

Count II is for defamation *per quod*, in the alternative to Count I. A defamation *per quod* claim is appropriate when (1) extrinsic evidence is needed to demonstrate the injurious meaning of a statement or (2) when a statement is facially defamatory but does not fall into one of the five categories to be defamation *per se*. *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549 ¶ 43. A defamation *per quod* claim requires the plaintiff to plead special damages, specifically "actual damage of a pecuniary nature." *Id*. (quoting *Bryson v. News Am. Publs.*, 174 Ill. 2d 77 (1996)). Courts have consistently held that *per quod* special damages are held to the heightened pleading requirement of Federal Rule of Civil Procedure 9(g): "if an item of special damage is to be claimed, it must be specifically stated." *Gentleman v. Mass. Higher Educ. Assistance Corp.*, 272 F. Supp. 3d 1054, 1068 (N.D. Ill. 2017) quoting Fed. R. Civ. P. 9(g). *See also Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003).

Here, regarding damages, Plaintiff merely stated:

11

> As a result of Defendants' unlawful conduct, Plaintiffs have suffered severe character and reputational injury in their peer and professional communities, as well as diminished future prospects for recording, endorsement, and sponsorship opportunities, including, but not limited to, being asked to leave events, cease filming events, had press credentials revoked during events, and/or contracts cancelled.

(TAC, ¶ 74.) Plaintiffs provided no factual allegations of special damages. Plaintiffs failed to itemize alleged losses or even identify a specific instance in which an opportunity previously available to Plaintiffs was denied because of any statement made by Davidson. Plaintiffs fail to meet the general pleading standards under *Iqbal* and *Twombly,* let alone the heightened pleading standards required by Rule 9(g). As Plaintiffs fail to specifically plead damages, their claim for defamation *per quod* is improper and should be dismissed.

### C. Count III fails to state a claim for false light.

To properly plead a claim for invasion of privacy by false light, a plaintiff must plead facts showing "(1) the plaintiff was placed in a false light before the public; (2) the false light in which plaintiff was placed would be highly offensive to a reasonable person; and (3) the defendant acted with malice, meaning with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kole v. Village of Norridge*, 941 F. Supp. 2d 933, 964 (N.D. Ill. 2013). Courts have consistently held that "where the plaintiff fails to state a cause of action for defamation *per se*, a count alleging false-light invasion of privacy based on the allegedly inherently defamatory statements must fail as well." *Kapotas v. Better Gov't Ass'n,* 2015 IL App (1st) 140534 ¶ 75. *See also Seith v. Chicago Sun-Times, Inc.*, 371 Ill. App. 3d 124, 139 (1st Dist. 2007).

As with defamation, for false light claims to be successful, the plaintiff must allege that the issue is "of and concerning" the plaintiff, and special damages must also be pleaded if the statements the action is based on are not defamatory *per se*. *Muzikowski v. Paramount Pictures*

12

*Corp.*, 322 F.3d 918, 927 (7th Cir. 2003). Here, the Plaintiff fails to properly plead a claim of false light. For statements to be "of and concerning" the plaintiff, the statements must not be able to reasonably be construed as referring to a person other than the plaintiff. Id. Based on reasons already set forth, Plaintiffs fails to show that Mr. Davidson's statements are "of and concerning" the Plaintiffs. Furthermore, Plaintiffs again failed to plead special damages when all Plaintiffs alleged in damages were: "As a result of Defendants' unlawful conduct, Mr. Gharavi has suffered great financial harm, embarrassment, extreme emotional distress, and harm to Mr. Gharavi's professional reputation." (TAC, ¶ 81.) Therefore, Plaintiffs fail to state a claim for invasion of privacy by false light and the claim should be dismissed.

**D. Counts I-III should be dismissed as being filed outside the statute of limitations.**

An argument that a claim is indisputably barred by the statute of limitations is properly raised under Rule 12(b)(6). *Small v. Chao,* 398 F.3d 894, 898 (7th Cir. 2005). Under Illinois law, a claim for defamation or false light must be filed within one year after the cause of action accrued. 735 ILCS 5/13-201. Here, Davidson's statements were made on December 31, 2023 and January 1 and 2, 2024. However, the claims against him were not filed until May 29, 2025, more than one year later.

The fact that Plaintiffs named "John Does 1-25" in their original Complaint is of no moment. Under the Seventh Circuit's "John Doe rule," naming a fictitious defendant is not a "mistake" within the meaning of Fed. R. Civ. P. 15(c), which does not allow for relation back when there is lack of knowledge of a proper party. *Herrera v. Cleveland,* 8 F.4th 493, 497 (7th Cir. 2021). Naming a fictitious party does not satisfy the statute of limitations: "It is the plaintiff's responsibility to determine the proper party to sue and to do so before the statute of limitations

13

expires." *Hall v. Norfolk Southern Ry. Co.,* 469 F.3d 590, 596 (7th Cir. 2006). Counts I-III are barred by the statute of limitations and therefore should be dismissed.

### E. Count IV fails to state a claim for intentional infliction of emotional distress.

To successfully plead a claim of intentional infliction of emotional distress, a plaintiff must allege (1) the conduct in question was truly extreme and outrageous; (2) the defendant intended to, or should have known that there was a high probability that such conduct would cause such stress; and (3) the conduct in fact caused severe emotional distress. *Xingjian Sun v. Gang Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024). To be actionable, the conduct must be "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community" for the conduct to rise to the level of extreme and outrageous. *Zitzka v. Westmont*, 743 F. Supp. 2d 887, 929 (N.D. Ill. 2010) quoting *Stokes v. Bd. Of Educ.*, 599 F.3d 617, 626 (7th Cir. 2010). Furthermore, claims alleging intentional infliction of emotional distress "must be 'specific and detailed beyond what is normally considered permissible in pleading a tort action.'" *Chang Hyun Moon v. Kang Jun Liu*, 2015 IL App (1st) 143606 ¶ 24.

Here, Plaintiffs failed to allege any specific behavior by Defendant John Davidson that was beyond the bounds of decency or intolerable in a civilized society. At the most, Davidson was saying that he thinks bad things should happen to persons who post pictures of minors for the entertainment of perverts. While perhaps inappropriate, such an opinion is hardly uncommon and not extreme or outrageous. Moreover, Plaintiffs failed to allege facts showing that Davidson knew or should have known his conduct would cause emotional distress. Instead, Plaintiffs alleged "Defendants' intended to cause Mr. Gharavi emotional distress and/or knew that there was a high probability that their conduct would cause such emotional distress." Third Amended Complaint ¶

14

84. Such a conclusory allegation is simply insufficient under *Iqbal* and *Twombly*. Therefore, Count IV should be dismissed.

**F. Count V fails to state a claim for tortious interference with business relationships.**

To plead a claim of tortious interference with business relationships, a plaintiff must allege: (1) the existence of a valid business relationship or expectancy; (2) knowledge by the defendant of the relationship or the expectancy; (3) an intentional interference inducing the relationship or expectancy to terminate; and (4) damage to the party whose relationship or expectancy was interrupted. *Dustman v. Advocate Aurora Health, Inc.*, 2021 IL App (4th) 210157 ¶ 57. Here, Plaintiffs merely plead conclusions without alleging any facts. Plaintiffs fail to allege a single valid business relationship or expectancy that they had but lost due to Davidson's statements. Nor do they allege that Davidson had any knowledge of any such relationship or expectancy or acted to terminate it. Instead, Plaintiffs plead the bare conclusion that "[d]efendants intentionally and unjustifiably interfered to prevent Plaintiffs' expectancies from being fulfilled." (TAC ¶¶ 90 & 91.) Like Count IV, this is insufficient under *Iqbal* and *Twombly*. Count V should be dismissed for failure to state a claim.

WHEREFORE, Defendant prays that the Court GRANT his Motion to Dismiss the Third Amended Complaint under Rules 12(b)(2) or 12(b)(6).

DATED: December 1, 2025  Respectfully submitted,

/s/ *Philip J. Piscopo*
Philip J. Piscopo
Attorney for Defendant, John Davidson

Storm & Piscopo, P.C.
2000 S. Batavia Avenue, Suite 410
Geneva, Illinois 60134
(630) 232-6170
pjp@stormpiscopo.law
IL Bar No. 6243658