**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | |
|---|---|
| NIMA GHARAVI, an individual, and RIGHT CALL OFFICIALS, INC., an Illinois corporation,<br><br>Plaintiffs,<br><br>v.<br><br>JESSICA PRESLEY, MATSCOUTS, LLC, WILLIE SAYLOR, PATRICK MINEO, STEPHEN KOLANKOWSKI, JOSEPH CORSINI, IAN JAGGER, JOHN DAVIDSON, and JOHN DOES 4-25.<br><br>Defendants. | Case No. 1:24-cv-1969<br><br>**Judge:**<br>Honorable Steven C. Seeger<br><br>**Magistrate Judge:**<br>Honorable Beth W. Jantz |

**PLAINTIFFS' MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST DEFENDANT, PATRICK MINEO, PURSUANT TO RULES 37(e) AND 37(b)(2)**

NOW COME Plaintiffs, NIMA GHARAVI and RIGHT CALL OFFICIALS, INC. ("Plaintiffs"), by and through counsel, SWANSON, MARTIN & BELL, LLP, and, pursuant to Federal Rules of Civil Procedure 37(e) and 37(b)(2), for their Motion for Sanctions for Spoliation of Evidence, state as follows:

## INTRODUCTION

For more than a year, Plaintiffs have attempted to obtain complete discovery responses from Defendant Patrick Mineo. The Court has twice compelled Mineo to supplement his production. Dkt. 131; Dkt. 180 at 1, 9. The second order spelled out what compliance required: complete message threads, complete responsive posts from all of his social media accounts, and the date, time and sender of each message. Dkt. 180 at 6–8. It also warned Mineo that any continued failure to respond fully "is likely to result in an order requiring him to pay Plaintiffs'

attorneys' fees." Dkt. 180 at 9. Four weeks later, Mineo served four pages of screenshots that he called "the complete Corsini-Mineo conversation." Supp. Resp. at 2.[1] Those pages are not his copy of anything; they are the exhibit that Plaintiffs filed nearly eight months earlier, reproduced image for image. *Compare* Supp. Resp. at 4–7, *with* Dkt. 154-1 at 2–5.

Mineo further represented that he could not locate complete versions of responsive ESI that existed after he was obligated to preserve it, continuing a pattern in which responsive communications and social-media content that once existed are no longer available. Supp. Resp. at 3. On January 4, 2024, Gharavi publicly announced that he would be taking legal action. At that time, Mineo's communications and social-media posts were still posted on the internet. Indeed, some were preserved by Plaintiffs using Page Vault. Yet Mineo deleted three of those posts. Tr. 274:23–275:1; Ex. E at 8–10. This deletion provides an important backdrop for evaluating the subsequent disappearance of responsive evidence that existed after this litigation was initiated.

Mineo's most recent failure to supplement is the latest instance of a pattern that runs through the record. Where a document would show what Mineo said, to whom or when, the original is withheld or gone, and Plaintiffs' own material comes back in its place. The resulting prejudice to Plaintiffs is substantial. The missing ESI concerns the very communications, social-media activity, and interactions underlying Plaintiffs' claims. Plaintiffs can no longer be expected to litigate around evidence that Mineo was obligated to preserve but no longer exists. Accordingly,

[1] Plaintiffs cite the following exhibits, attached to this motion: Exhibit A, excerpts of the transcript of Mineo's January 19, 2026 deposition ("Tr.") and the deposition exhibits cited ("Dep. Ex."); Exhibit B, Mineo's September 2, 2026 supplemental responses, with MINEO-SUPP-001 through -004 ("Supp. Resp."); Exhibit C, files from his December 16, 2025 supplemental production ("Prod. II"); Exhibit D, his responses to Plaintiffs' Requests to Admit 1–20 and 21–28 ("RTA Resp. 1–20" and "RTA Resp. 21–28"); Exhibit E, pages from X as displayed on October 5, 2026 and October 23, 2026; Exhibit F, declaration of Nima Gharavi; and Exhibit G, the correspondence described in the Local Rule 37.2 statement. All times are Central. Dep. Exs. 12 and 17 bear the legend "Confidential and Pursuant to Protective Order," which Plaintiffs applied to their own production. Plaintiffs withdraw that designation as to both exhibits, which are therefore filed publicly.

Plaintiffs bring this Motion pursuant to Rules 37(e) and 37(b)(2), and respectfully request appropriate sanctions for Mineo's spoliation of crucial electronically stored information.

## BACKGROUND

***Mineo Deleted Evidence Despite Being on Notice of Litigation***

Mineo created and administers The Wrestling Room, a Facebook group that Facebook labels a "Private group." Tr. 44:10–45:8, 48:5–16; Dep. Ex. 9 at 1. On January 1, 2024, he opened a thread there about Plaintiff Nima Gharavi ("Gharavi") that drew 148 comments, among them a member's offer to "play a crucial role in the disappearance of this man." Dep. Ex. 9 at 1, 14; Tr. 130:23–131:1. On the afternoon of January 4, Plaintiffs' Page Vault captured four of Mineo's posts on X. Dkt. 92-3 at 2–13. That night, at 10:50 p.m., Gharavi announced on X that he "will be taking legal action against those individuals who have spread false and inflammatory rumors about me." Ex. E at 3, 6. By the next morning the thread could no longer be located. Mineo, who as an administrator can remove the group's posts, has never produced the thread or said what became of it, and the only copy in the record is Plaintiffs' capture. Tr. 48:5–16; Dep. Ex. 9.

Three of the five archived X posts, all of which Mineo agreed he wrote, now return only X's notice that the page does not exist: "Hmm...this page doesn't exist. Try searching for something else." Tr. 273:2–8; Ex. E at 8–10. Asked when he deleted them, Mineo could fix only an outer limit: "I -- I said I don't even recall when I -- I deleted them. I just know it would've been prior to being served." Tr. 274:12–15, 274:23–275:1. The fourth, his January 3, 2024 "Parents, coaches" post, is still on his account. Ex. E at 11. The fifth, his January 1, 2024 "The thumbnails and the way he records" reply post, also remains on his account. Ex. E at 15-16.

Plaintiffs filed this suit on March 8, 2024, and within days, Mineo posted about it in The Wrestling Room, over a screenshot of a docket listing that names him as a defendant: "HAHA!

Good luck little buddy!" Dkt. 1; Dep. Ex. 17 at 1; Tr. 276:18–277:1, 287:12–14; Ex. F ¶¶ 8–9. Beneath it he commented "Full filing from 3/8:" above the local path of a PDF in his phone's "Library/SMS/Attachments" folder. Dep. Ex. 17 at 3. By the time Gharavi was notified of the filing on March 11, 2024, Ex. F ¶ 8, the post could no longer be located. Asked to confirm that it was no longer on Facebook, Mineo said that he "would have to check," and he testified that he did not recall deleting it, pointing to the group's other moderators. Tr. 283:18–21, 288:2–4. He was personally served on March 26, 2024. Dkt. 13 at 1.

***Initial Discovery Responses and Motion to Compel***

Plaintiffs served the discovery at issue on November 26, 2024. Dkt. 146 at 1. Mineo served his initial responses on May 30, 2025. His production consisted primarily of partial screenshots that omitted sender identities, timestamps, and surrounding context. Dkt. 146 at 1–2; *see also* Dkt. 180 at 2. After attempting to resolve these deficiencies through multiple correspondence and a meet-and-confer, Plaintiffs filed a motion to compel. Dkt. 120. Notably, within two weeks of Plaintiffs' first deficiency letter in September 2025, Mineo wrote to Joseph Corsini, then his co-defendant: "Also our convos here are privileged and not subject to discovery! If you catch my drift paison haha none of our messages are/were included. So can keep between us then". Dkt. 154-1 at 4; Dkt. 120-4 at 1. Before the Court granted Plaintiffs' first motion to compel, Mineo assured it that "no private or platform-based messages were withheld." Dkt. 129 at 3; Dkt. 131. In granting Plaintiffs' first motion to compel, the Court overruled Mineo's timeliness objection, directed the parties to confer regarding supplemental discovery, and ordered Mineo to make any such supplements by December 16, 2025. Dkts. 120, 131. Mineo's December 2025 supplementation did not cure the deficiencies. His supplementation largely returned Plaintiffs' own production, including 181 pages of third-party subpoena returns that Plaintiffs had produced. Dkt. 146 at 3.

At the Magistrate Judge's suggestion, Dkt. 140, Plaintiffs renewed their motion to compel. Dkt. 146. Opposing Plaintiffs' renewed motion, Mineo asserted that "Plaintiffs identify no evidence of spoliation, concealment, or bad faith." Dkt. 150 at 2. One week later, Plaintiffs filed the Messenger thread that Corsini had produced, which runs from February to September 2025, and which Mineo had never produced. Dkt. 154 at 2; Dkt. 154-1 at 2–5. At his deposition, Mineo described his contact with Corsini as a single message and, asked whether that was "the extent of your communication with him," answered: "Yes. We never -- we never talked after that." Tr. 272:4–11.

On August 4, 2026, the Court compelled Mineo to supplement his responses to Requests for Production 1–3 and 7–8, and Interrogatories 3–5, noting that the requests to produce sought "relevant information that is proportional to the needs of the case, as they seek documents and information directly relating to the allegations in the complaint and the scope of Mineo's alleged conduct." Dkt. 180 at 4–8. The Court expressly rejected Mineo's arguments that Plaintiffs were merely speculating about the existence of additional responsive materials. Dkt. 180 at 5. The Court noted that Mineo had not produced the Corsini thread, "suggesting that Mineo did not search for or produce all information in his possession," and that his failure to produce any message showing how he obtained a letter Jennifer Ritacco wrote to the Court "also suggests that his production is incomplete." Dkt. 180 at 5. The Court held that every account to which Mineo has access "must be searched by him," and it permitted complete screenshots in PDF, though "they ***must*** include date- and time-stamps and the identity of the senders." Dkt. 180 at 6 n.1, 8 (emphasis in original).

***Mineo's Supplemental Production***

On September 2, 2026, Mineo served supplemental responses pursuant to Dkt. 180. No complete versions of his prior productions were included. Instead, with respect to Requests for

Production 1–3, Mineo stated that "[t]he additional search required by Dkt. 180 located no other responsive material." Supp. Resp. at 2. Mineo iterated this same statement for Requests for Production 7 and 8, and added "To the extent a previously produced retained screenshot does not display additional date, time, or surrounding context, the additional search did not locate a fuller accessible version." *Id.* at 3. The only additional communication Mineo produced was not new to this litigation: a four-page conversation with Corsini, which itself had already been produced from Corsini's records and was one of the examples identified by Plaintiffs and the Court as evidence that Mineo's production was incomplete. Dkt. 180 at 5; Supp. Resp. at 1–3.

Despite the Court's order requiring complete message threads with date- and time-stamps and the identity of the senders, Dkt. 180 at 6–8, Mineo did not produce complete versions of the previously-produced communications with Jennifer Ritacco, did not produce communications reflecting how he obtained the Ritacco letter, did not produce complete versions of previously cropped screenshots, did not produce his own social media posts that are still available online, and did not produce fuller versions of the social-media content that the Court had specifically ordered him to provide. Instead, Mineo represented that no fuller versions could be located through searches of the accounts to which he presently has access. Supp. Resp. at 2–3.

Nor is the missing content limited to the Ritacco and Corsini communications. Publicly available social media content authored by Mineo and directly concerning Plaintiffs remains absent from his productions. For example, Mineo never produced his January 1 or January 3, 2024 X posts, one containing a gif with the words "WE GOT HIM", and another calling for his banishment from the sport, despite both posts remaining publicly available. Likewise, Mineo never produced responsive posts from his InterMat account under the username "PMineo22." Thus,

responsive content remained available from accounts under Mineo's control but nevertheless was not produced in response to this Court's Order. *See* Dkt. 180.

The record establishes that responsive communications and posts existed; many were preserved by third parties, archived by Plaintiffs, or remain publicly available today; the Court ordered Mineo to search all accounts within his possession, custody, or control, and produce complete versions with date and time stamps and full context; and Mineo responded by asserting that no additional responsive materials were located or that no fuller accessible versions can be located. This is no longer a case of ordinary discovery noncompliance. Mineo's supplemental responses leave the only possibility that responsive ESI that once existed has been lost despite his duty to preserve it. Mineo's conduct warranting relief from this Court.

## LEGAL STANDARD

When a party fails "to obey an order to provide or permit discovery," the Court "may issue further just orders," from designated facts and preclusion to "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii), (vi). Where electronically stored information that "should have been preserved in the anticipation or conduct of litigation" is lost because a party "failed to take reasonable steps to preserve it," and it "cannot be restored or replaced through additional discovery," the Court, upon finding prejudice, may order measures "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e), (e)(1). On finding "that the party acted with the intent to deprive," the Court may go further, presuming that the lost information was unfavorable or entering a default judgment. Fed. R. Civ. P. 37(e)(2). For lost electronically stored information, Rule 37(e) displaces the court's inherent authority: the 2015 amendment "forecloses reliance on inherent authority or state law to determine when certain measures should be used." Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment.

Sanctions for spoliation are within the discretion of the trial court, with an emphasis on the culpability, or bad faith, by the party accused. *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 720–21 (7th Cir. 2001); *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998). Bad faith in this context means destruction "for the purpose of hiding adverse information." *Mathis*, 136 F.3d at 1155; *see also Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 548–49 (7th Cir. 2017). Rule 37(e)(2)'s "intent to deprive" standard "is not much different from the standard at work in the Seventh Circuit in cases antedating the Amendment to the Rule." *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 1616725, at *11 (N.D. Ill. Apr. 4, 2018) (Cole, M.J.). The intent finding that Rule 37(e)(2) requires "may be made by the court when ruling on a pretrial motion." Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment. The facts that support it need only be shown by a preponderance of the evidence. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778, 781 (7th Cir. 2016); *Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 626 n.1 (N.D. Ill. 2022).

## ARGUMENT

### I. Mineo Disobeyed the Court's August 4, 2026 Order.

Mineo's productions throughout this litigation follow a consistent pattern. Rather than producing complete, native records from his own accounts, Mineo repeatedly has produced either incomplete screenshots or materials obtained from third parties.

The Corsini supplement is the plainest violation. The Court ordered Mineo to produce his own messages with their dates and senders. Dkt. 180 at 6–8. He returned Corsini's copy instead, with no message drawn from his own account and no date that Corsini had not already supplied. *Compare* Supp. Resp. at 4–7, *with* Dkt. 154-1 at 2–5. Mineo has never said that his own copy was lost, though he promised the Court that he would say so expressly if messages were no longer

available. Dkt. 184 at 4. Nor could he say so consistently with his testimony: the thread's dated messages run from February to September 2025, long after his service, and he testified that he "preserved everything once [he] was served." Dkt. 154-1 at 2–4; Tr. 170:6–8. Either his copy exists and he withheld it in defiance of Dkt. 180, or he destroyed it while this suit was pending. Either way, the order went unobeyed, and sanctions are warranted.

Mineo's search for social-media content fared no better. Although his supplement reports that he "located no additional responsive social-media content," three posts remain on his X account: his January 1, 2024 post stating that the way Plaintiffs record videos and zooms "makes your stomach turn," and calling for his banishment from the sport, his January 3, 2024 "Parents, coaches" post and his reply to another user about an hour later. Supp. Resp. at 3; Ex. E at 11, 13, 15-16. None of those posts have ever been produced from his account. What Mineo did produce fails the order's requirements as well. The only copy of his March 2024 post that he has produced is a September 2025 screenshot of the first page of Plaintiffs' own scan of it, without the post's comments. Prod. II, IMG_8337.jpg. He nonetheless testified that he believed his supplemental discovery included "that post." Tr. 288:5–8.

The absence of any communication reflecting how Mineo received the Ritacco letter is particularly telling. Mineo initially produced a letter that Ritacco wrote to the Court, but no message showing how he came to have it—a gap the Court itself identified. Dkt. 180 at 5. Asked under oath whether any portion of his thread with Ritacco went unproduced, Mineo answered: "No. Not that I recall." Tr. 169:7–10. Yet he produced the letter itself while failing to produce the communication transmitting it. Those facts cannot both be true, and Mineo's supplemental responses offer no explanation for the discrepancy. Instead, his supplement reports that his search found no message concerning the letter's transmission. Supp. Resp. at 1.

Because the order named the requests, the accounts and the form of production, and warned Mineo of the consequence of falling short, each of these failures is a failure "to obey an order to provide or permit discovery." Dkt. 180 at 4–9; Fed. R. Civ. P. 37(b)(2)(A).

## II. Mineo Spoliated Electronically Stored Information Critical to Plaintiffs' Claims.

Spoliation is "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001); *see also Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002). The duty attaches once litigation is reasonably foreseeable, including before suit, when a party reasonably should know that evidence may be relevant to anticipated litigation. Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment; *Silvestri*, 271 F.3d at 591; *Hollis*, 603 F. Supp. 3d at 619–20 (whether the duty has arisen "is an objective inquiry, viewed from the perspective of the defendant at the time").

Mineo dates his duty to preserve from when he was aware that he was "officially being sued," and he explains his failure to preserve earlier by the lack of service: "I didn't have a formal notice and I did not understand myself to be under any preservation obligation. I wasn't served yet." Tr. 280:9–10, 280:14–17, 282:24–283:1. Rule 37(e), however, reaches information that should have been preserved "in the anticipation or conduct of litigation," not merely once a suit is filed or served. Fed. R. Civ. P. 37(e). By January 4, 2024, litigation was being openly discussed, when Gharavi announced it, and it was unquestionably in view after the March 8, 2024 filing that Mineo celebrated within days. The day before the announcement, Mineo had written of Gharavi that "Everyone is scared to get sued," which he explained as a reference to "prior statements that I saw online about people being scared of litigation and other lawsuits being threatened and filed." Dep. Ex. 12; Ex. E at 13; RTA Resp. 21–28 at 2–3 (Reqs. 24–25); Tr. 192:15–22.

The losses cluster around notice and cannot be considered mere coincidences: within hours of the announcement, the thread could no longer be located; within days of the filing, the March 2024 post could no longer be located; and after the January 4 captures and, by Mineo's account, before service, the three X posts were deleted. Only Mineo's own records could show whether, when and by whom the thread and the March 2024 post were removed, and he has produced none of them. Plaintiffs' captures preserve some of the text, but not what only Mineo's accounts held: the thread's later comments and the record of who removed it, the replies to and engagement with the deleted posts, the March 2024 post's full comment thread, and the message that brought him Ritacco's letter to the Court, which necessarily postdates the complaint. The Court has ordered Mineo to search every account he can access, and his search found nothing further, so that information "cannot be restored or replaced through additional discovery." Dkt. 180 at 6 n.1, 7; Supp. Resp. at 1, 3; Fed. R. Civ. P. 37(e); *see BankDirect*, 2018 WL 1616725, at *10 (third parties' e-mails about the same events were "not remotely comparable" to the party's own lost e-mails, and an incomplete substitute "was not an adequate 'restoration or replacement'").

Regarding his productions, the Ritacco and Deanne Moore threads existed at least at the time of Mineo's responses to Plaintiffs' Requests to Produce on May 30, 2025. Mineo swore that he preserved this responsive information after being served with this lawsuit in March 2024. Tr. 170:8, 171:7–9. Faced with the Court's finding that responsive communications appeared to be missing from Mineo's original production, Dkt. 180 at 5, as of September 2, 2026, Mineo claims that no additional responsive documents (or no more complete versions) were located. Supp. Resp. at 1–3. If Mineo preserved responsive ESI as required, then complete versions of those communications, including timestamps, sender identities, and surrounding context, should have remained available in the accounts that the Court ordered him to search. *See DR Distribs., LLC v.*

*21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 979–80 (N.D. Ill. 2021) (where a chat program saved messages by default and a search found none, "a reasonable inference is that [the party] affirmatively deleted the chats, despite his claims to the contrary").

The loss of complete message threads, associated metadata, and contextual communications deprives Plaintiffs of evidence regarding who participated in the communications, when they occurred, what prompted them, what other statements accompanied them, and how Mineo coordinated his conduct with others. Such information is directly relevant to Plaintiffs' claims and cannot be reconstructed from the isolated screenshots that remain. Those posts included statements central to Plaintiffs' claims, including that Mr. Gharavi was a "vile human being" who "need[s] to be exiled far away from the sport of wrestling and any tournament, practice room, school and children in general," that Plaintiff was "framing up these videos and then pushing them out to evil places," and that being "kicked out of Midlands [was] not enough" because he was using the sport for "something very evil." Dkt. 92-3 at 4–9. While Plaintiffs preserved snapshots of those posts as they existed on January 4, 2024, those captures do not preserve the replies, reposts, reactions, engagement, metadata, or surrounding context associated with the original posts. Thus, even where Plaintiffs were able to preserve snapshots of Mineo's statements, the complete ESI associated with those posts has been lost. Where responsive ESI existed, should have been preserved, and cannot be produced after a court-ordered search, the record supports a finding that the party responsible failed to take reasonable preservation measures.

## III. <u>Sanctions under Rule 37 are Necessary.</u>

Rule 37(e)(1) authorizes measures no greater than necessary to cure prejudice caused by the loss of ESI. Rule 37(e)(2) further authorizes a presumption that the lost information was unfavorable to the party where the Court finds that a party acted with the intent to deprive another

party of the information's use in litigation. On that finding, prejudice is presumed. *Hollis*, 603 F. Supp. 3d at 622; Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment.

The circumstances here support a finding of intent. Mineo was on notice of the litigation. He acknowledged his obligation to preserve evidence. Tr. 280:9–10. He testified that he preserved everything once he was served. Tr. 170:8, 171:7–9. His account of his own compliance cannot be taken at face value: opposing Plaintiffs' Rule 72(a) objection, he told the Court that he "testified that he obtained and saved the Ritacco letter before he was served," and the transcript contains no such testimony. Dkt. 184 at 4; *see Hollis*, 603 F. Supp. 3d at 624 (a party's inaccurate discovery response about lost ESI could be read as "an attempt to deflect attention away from its own intentional conduct"). But even before then, he deleted several responsive posts after learning of the threat of litigation. Disappearances within hours of an announcement and within days of a filing are not routine housekeeping. Moreover, he repeatedly produced only selected screenshots rather than complete communications from his own accounts, and now, he claims that a search did not reveal additional responsive records or materials that include the court ordered date, time, and surrounding context. The missing ESI is not random. After service, Mineo told Corsini that their messages were "not subject to discovery" and could be kept "between [them]," and he then produced the copy Plaintiffs had filed instead of his own. Dkt. 154-1 at 4; Supp. Resp. at 4–7. The absent materials concern the very communications and social media activity at the heart of Plaintiffs' claims. This pattern permits the reasonable inference that the complete communications were not lost accidentally but were withheld, deleted, or otherwise rendered unavailable to prevent their use in this litigation. *See Hollis*, 603 F. Supp. 3d at 623–24 (evidence that a party did not look for or preserve video it knew how to obtain, after a request to review it, "supports a reasonable inference" of intent).

Accordingly, Plaintiffs respectfully submit that a negative presumption under Rule 37(e)(2)(A) is warranted for purposes of Plaintiffs' motion for summary judgment, due by October 26, 2026. Dkt. 188; *see Brown & Williamson Tobacco Corp. v. Jacobson*, 827 F.2d 1119, 1134–36 (7th Cir. 1987) (employee selectively destroyed relevant documents, while litigation was pending and in violation of a retention policy, and offered a non-credible justification, fact finder was entitled to presume that documents would have been unfavorable to the defendants), *cert. denied*, 485 U.S. 993 (1988); *see also Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350, 355 (N.D. Ill. 2016) (finding, on a sanctions motion, that a party who deleted e-mails from her personal Gmail account to "hide" adverse information acted in bad faith, which gave rise to "a strong inference" that the e-mails "would have been unfavorable" to her). Specifically, the Court should find that the missing communications, message threads, and associated social media content would have been unfavorable to Mineo and favorable to Plaintiffs on the issues raised in this action. The same finding supports an instruction under Rule 37(e)(2)(B) that the jury may presume as much at trial. Such a finding is appropriate because the missing evidence relates directly to Mineo's communications regarding Plaintiffs and the conduct forming the basis of Plaintiffs' claims.

Alternatively, if the Court determines that the present record is insufficient to establish intent under Rule 37(e)(2), Plaintiffs respectfully request leave to conduct a limited supplemental deposition of Mineo directed solely to the issues raised by his September 2026 supplemental production, the searches he performed in response to Dkt. 180, the accounts searched, the preservation measures implemented, and the circumstances under which responsive ESI became unavailable. Counsel reserved that right, and fact discovery closed except for "any discovery covered by the motion to compel." Tr. 311:9–10; Dkt. 174. The order on that motion then closed fact discovery, so the deposition is sought as relief for Mineo's failure to comply with it. Dkt. 180

at 1; Fed. R. Civ. P. 37(b)(2)(A). Because Mineo has already been deposed, leave is required, but the Court "must grant leave to the extent consistent with Rule 26(b)(1) and (2)," and it must allow additional time "if needed to fairly examine the deponent." Fed. R. Civ. P. 30(a)(2)(A)(ii), (d)(1). The committee note recognizes that unproduced documents "may justify further examination once production has occurred." Fed. R. Civ. P. 30 advisory committee's note to 2000 amendment.

Finally, the Court "must order" Mineo to pay the reasonable expenses caused by his failure, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Returning an opponent's exhibit as one's own, after an express warning that fees would likely follow, is neither substantially justified nor a circumstance that makes an award unjust.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court: (1) find that Mineo spoliated electronically stored information subject to Rule 37(e); (2) find that Mineo acted with the intent to deprive Plaintiffs of the lost information and presume that it was unfavorable to him summary judgment and instruct the jury that it may so presume at trial; or (3) in the alternative to (2), permit Plaintiffs to present evidence and argument to the jury about the loss and instruct that it may consider the loss in evaluating the evidence; (4) alternatively grant Plaintiffs leave to conduct a limited supplemental deposition concerning Mineo's preservation efforts, searches, and the loss of responsive ESI; (5) award Plaintiffs reasonable expenses, including attorneys' fees and costs; and (6) grant such further relief as the Court deems just and proper.

Respectfully Submitted,

**NIMA GHARAVI and RIGHT CALL OFFICIALS, INC.**

Dated: October 23, 2026

By: */s/ Olivia E. Duggins*_____

Jeffrey S. Becker (ARDC #6282492)
William D. Patterson (ARDC #6294533)
Nicole O'Toole Peterson (ARDC #6330227)
Olivia E. Duggins (ARDC #6349003)
SWANSON, MARTIN & BELL, LLP
330 N. Wabash Avenue, Suite 3300
Chicago, Illinois 60611
Phone: (312) 321-9100
jbecker@smbtrials.com
npeterson@smbtrials.com
oduggins@smbtrials.com

**LOCAL RULE 37.2 STATEMENT**

Pursuant to Local Rule 37.2 and the Court's Standing Orders about Depositions and Discovery, Dkt. 4, Plaintiffs state that they attempted in good faith to confer with Defendant Patrick Mineo about the matters raised in this motion. On October 6, 2026, Plaintiffs' counsel emailed Mineo, provided him with a draft of this motion, and requested a meet-and-confer by telephone or in person regarding the apparent loss of ESI. After receiving no response, counsel followed up by email on October 8 and October 12, 2026, again requesting available dates and times for the conference. On October 13, 2026, Mineo acknowledged receipt of the draft motion, disputed Plaintiffs' allegations concerning spoliation and prejudice, and asserted that he had complied with the Court's supplementation deadline. He further declined to provide dates for the requested conference, instead asking that Plaintiffs accept his written response "in lieu of another conference." When counsel subsequently advised Mineo that the Court's Standing Order requires a conference conducted either by telephone or in person and requested confirmation of his position, Mineo responded on October 14, 2026, that he did not believe another conference would be productive. The full thread of Plaintiffs' counsel's communications with Mineo is attached as Exhibit G. Counsel's attempts to engage in consultation were therefore unsuccessful due to no fault of counsel's. Plaintiffs understand the motion to be opposed.

*/s/ Olivia E. Duggins*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on October 23, 2026, a copy of the foregoing Plaintiffs' Motion for Sanctions for Spoliation of Evidence Against Defendant, Patrick Mineo, Pursuant to Rules 37(e) and 37(b)(2) was served upon the following via the Court's CM/ECF system and electronic mail:

Patrick Mineo, *pro se*

**NIMA GHARAVI and RIGHT CALL OFFICIALS, INC.**

Dated: October 23, 2026

By: */s/ Olivia E. Duggins*_____
Jeffrey S. Becker (ARDC #6282492)
William D. Patterson (ARDC #6294533)
Nicole O'Toole Peterson (ARDC #6330227)
Olivia E. Duggins (ARDC #6349003)
SWANSON, MARTIN & BELL, LLP
330 N. Wabash Avenue, Suite 3300
Chicago, Illinois 60611
Phone: (312) 321-9100
jbecker@smbtrials.com
npeterson@smbtrials.com
oduggins@smbtrials.com