**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | |
|---|---|
| NIMA GHARAVI, an individual, and RIGHT CALL OFFICIALS, INC., an Illinois corporation,<br><br>Plaintiffs,<br><br>v.<br><br>JESSICA PRESLEY, MATSCOUTS, LLC, WILLIE SAYLOR, PATRICK MINEO, STEPHEN KOLANKOWSKI, JOSEPH CORSINI, and JOHN DOES 1-25.<br><br>Defendants. | Case No. 1:24-cv-1969<br><br>**Judge:**<br>Honorable Steven C. Seeger<br><br>**Magistrate Judge:**<br>Honorable Beth W. Jantz |

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Over many years, Nima Gharavi and Right Call Officials ("RCO") developed their reputation in the wrestling community for providing high-quality officiating and footage of wrestling matches at the high school and collegiate level. Then Patrick Mineo began a defamatory campaign accusing them of creating child pornography and posting videos on adult websites. Not only were these statements false, but the undisputed evidence shows that Gharavi and RCO have worked zealously to avoid any misuse of his videos. Unsurprisingly, such inflammatory, false statements damaged Plaintiffs' reputation and caused them to lose business opportunities. Under the summary judgment standard, judgment should be entered in Plaintiffs' favor because the record clearly establishes "no genuine dispute as to any material fact." *Torres v. Brookman*, 155 F.4th 952, 956 (7th Cir. 2025).

## ARGUMENT

### I. Mineo Defamed Gharavi and Right Call Officials.

Mineo posted to hundreds of thousands of people a series of defamatory statements claiming Gharavi's wrestling videos are edited to be child pornography and that he distributes the videos on pornographic websites. Mineo falsely claimed on X and Facebook that Gharavi was "using our sport and his access for something very evil" and was "framing up these videos and then pushing them out to evil places resulting in millions of views." SOF[1] ¶¶ 36, 38. Mineo claimed Gharavi purposefully used "suggestive angles," "provocative thumbnails," and "ultra HD camera w/ subtle zooms" to make the wrestling videos into pornography. SOF ¶ 40. He also falsely claimed Gharavi was "uploading [the videos] in evil places," "posting them in chat rooms and porn sites," and asked rhetorically, "you don't think this is perverted to upload the videos to pornographic sites?" SOF ¶¶ 44, 46–47. To further scare his audience, he alleged that Gharavi was part of a "sinister network of people" using wrestling "for something very bad." SOF ¶ 52. He even described Gharavi as a "vile human being" who needed to be "exiled far away from the sport of wrestling and any tournament, practice room, school and children in general." SOF ¶ 32. To undermine Gharavi's ability to work in the profession, he demanded that the IHSA revoke Gharavi's officiating credentials and declared that Gharavi "cannot be allowed in a gym … on a mat … next to these kids." SOF ¶ 40. Confirming that his defamatory statement was an accusation of criminal conduct, he announced that "the FBI will be handling this matter moving forward." SOF ¶ 49. Therefore, summary judgment is appropriate. There is no dispute that Mineo made these statements, that the

[1] "SOF" refers to Plaintiffs' Local Rule 56.1 Statement of Material Facts in Support of Their Motion for Summary Judgment Against Defendant Patrick Mineo

statements are false, or that the statements harmed Gharavi and RCO. Therefore, summary judgment is appropriate.

### *A. Falsely Stating Someone Peddles Child Pornography is Defamation Per Se*

Accusing someone of sexually exploiting children is defamation *per se. Hadley v. Doe*, 34 N.E.3d 549, 559-60 (2015). Defamatory statements are "statement[s] that harm a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). A party proves a defamation claim by showing the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages. *Id.*

Here, the undisputed evidence shows that (1) Mineo falsely stated Gharavi deliberately created, packaged and distributed videos of children in a manner to facilitate their consumption for sexual purposes and that Gharavi was a "vile human being and need to be exiled far away from the sport of wrestling and any tournament, practice room, school, and children in general" (SOF ¶ 32); (2) Mineo made several unprivileged publications of his statements to third parties by calling upon the wrestling community to ostracize Gharavi in a public forum (SOF ¶ 32); and (3) that these publications damaged Gharavi and RCO by causing tournament organizers to cancel his retention and forbid him from attending competitions. SOF ¶¶66–69. *See Green,* 917 N.E.2d at 459.

#### **1. Mineo Made False Statements About Gharavi and RCO.**

Far from being a peddler of child pornography, the undisputed record shows Gharavi and RCO are the victims of intellectual property theft. Indeed, Plaintiffs have actively engaged in preventing the misuse of his videos, and has filed hundreds of DMCA take down notices and

subpoenaed many internet services to determine the identity of those misusing his videos. SOF ¶¶ 17–18, 21. Despite his statements, Mineo confirmed in his deposition that he conducted no investigation into the veracity of the accusations he made. SOF ¶¶ 30, 56–65. Nor is there any basis for his accusations that Gharavi purposefully used provocative thumbnails, or the assertion that Gharavi uploaded the videos to pornographic sites. SOF ¶¶ 40, 44. As Mineo admitted, he never personally saw Gharavi post the videos in any chat room, possessed no evidence that Gharavi was paid to distribute his videos to pornographic websites, had no access to Gharavi's accounts or login credentials, and possessed no communications in which Gharavi admitted uploading videos to pornographic websites. SOF ¶¶ 30, 56–65. And as Mineo conceded, he "didn't view evidence proving how or by whom" the videos came to appear on the third-party sites. SOF ¶ 30. Thus the undisputed evidence shows all of Mineo's accusations are factually false.

**2. Mineo Made the Statements to Third Parties.**

Mineo did not communicate his accusations privately to Plaintiffs or confidentially to law enforcement. Instead, he repeatedly published them on social media to members of the wrestling community and the public at large. Mineo is an administrator of the Facebook group "The Wrestling Room," SOF ¶ 25. Mineo posted about Plaintiffs in the Wrestling Room numerous times, a group consisting of parents of wrestlers, wrestlers, wrestling fans and wrestling coaches. SOF ¶ 27. Mineo also published his accusations about Plaintiffs on X. He confirmed that he understands how X operates, including that posts made on the platform can reach audiences. SOF ¶ 23. And his posts did just that. In one post on X, Mineo stated:

> Yeah @Midwest_Wrestle. You are a vile human being and need to be exiled far away from the sport of wrestling and any tournament, practice room, school, and children in general. You know what you are doing and the fact that you are allegedly

> a certified referee in Iowa is scary. You need to be investigated by authorities ASAP.

That post alone received 214,000 views and 24 reposts, demonstrating that Mineo's accusations were actually disseminated well beyond their original publication. SOF ¶ 34. Another post, in which Mineo accused Plaintiffs of "using our sport and [their] access for something very evil," received approximately 14,000 views. SOF ¶ 36. Thus, the record affirmatively establishes that Mineo communicated his accusations to third parties and that tens of thousands of people, including members of the very wrestling community in which Plaintiffs operate, were exposed to them. Nor is there any basis in the record for a privilege permitting Mineo to publicly accuse Plaintiffs of criminal sexual misconduct involving children or to present those accusations to the wrestling community as fact. The undisputed evidence therefore establishes both publication to third parties and the absence of any applicable privilege.

### 3. Mineo's False Statements Damaged Gharavi.

Mineo's false statements match the criteria for two of the five recognized categories of defamation *per se* that do not require proof of special damages: (a) words that impute the commission of a criminal offense; and (b) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business. *Bryson v. News Am. Publications, Inc.*, 672 N.E.2d 1207, 1214-15 (Ill. 1996). Therefore, Gharavi need not establish special damages. *Id.*

#### *a) The Statements Impute the Commission of a Criminal Offense.*

Mineo's statements constitute defamation *per se* because, read naturally and in their entirety, they impute serious criminal conduct involving the sexual exploitation of children and distributing child pornography. His words convey to an ordinary reader that Gharavi was intentionally exploiting videos of children for sexual purposes and should therefore be investigated by law enforcement. Mineo accused Gharavi of using "suggestive" thumbnails, zooming in on

minors' "private parts during matches," pushing videos to "evil places," uploading videos to pornographic websites in a perverted manner, being a "vile human being," and needing to be kept away from children and "investigated by authorities ASAP." Viewed in their natural and obvious sense, Mineo's statements unmistakably accuse Gharavi of criminal sexual misconduct involving minors and therefore fall into the category of defamation *per se*.

In *Hadley v. Doe*, a user posted online that the plaintiff, a politician seeking election to the county board of Stephenson County, was "a Sandusky waiting to be exposed. Check out the view he has of Empire [Elementary School] from his front door." 34 N.E.3d 549, 552 (2015). The Illinois Supreme Court held that if proven, the statement constituted defamation *per se*. *Id.* at 559-60. The court explained that readers would naturally associate the reference to Jerry Sandusky with the highly publicized child-sex-abuse scandal involving him and that courts need not "espouse a naïveté unwarranted under the circumstances" when determining a statement's meaning. *Id.* at 557-58. The court further emphasized that a defendant need not explicitly call someone a child molester; insinuations and allusions are equally problematic when the intended meaning is clear. *Id.* The less subtle statements made by Mineo, clearly intend to impute criminal conduct.

Indeed, Mineo admits that he believed that Gharavi's actions constituted criminal conduct and should be investigated by the authorities. As Mineo explained in his own deposition, it was his opinion that Gharavi should be "investigated by the authorities." SOF ¶ 33. Indeed, despite having "zero contact with the FBI" he posted that "The FBI will be handling this matter." SOF ¶ 49. Further imputing that Gharavi had committed crimes. Any reader, and certainly a reasonable one, would understand that Mineo implied criminal conduct by Plaintiffs. *See Rao v. JPMorgan Chase Bank, N.A., No. 21 C 1361, 2022 WL 847560*, at *3 (N.D. Ill. Mar. 22, 2022), *aff'd sub nom.* Rao v. J.P. Morgan Chase Bank, N.A., 153 F.4th 541 (7th Cir. 2025) (explaining that a defendant

need not expressly accuse a plaintiff of committing a specific crime for a statement to be defamatory *per se*; it is enough that the statement conveys that meaning to a reasonable reader).

***b) Mineo's Statements Prejudice Plaintiffs in their Profession.***

Mineo's statements are also defamatory *per se* because they directly attack Gharavi's fitness and integrity as a wrestling official and video producer and prejudice Plaintiffs as they pursue their livelihood. Statements that impute a person lacks integrity or prejudice them in their profession are defamatory *per se*. *Dobias v. Oak Park & River Forest High School District 200*, 57 N.E.3d 551, 564-68 (Ill. App. Ct. 1st Dist. 2016). In *Dobias*, the appellate court held that statements accusing the plaintiff of "rolling around on a bed in a hotel alone with an athlete" and "hanging out" with student-athletes while they drank alcohol and used drugs could reasonably be understood as impugning her integrity and fitness as a teacher and coach. *Id.* at 555, 565-68.

The same reasoning applies here with even greater force. As in *Dobias*, Mineo's statements were directed at conduct involving minors and expressly framed as behavior from which children needed protection. But Mineo went further, directly urging the wrestling community to remove Gharavi from the locations, events and relationships necessary to carry on his profession. SOF ¶¶ 32, 41. Indeed, Mineo's call for Gharavi's exclusion confirms that professional harm was not some collateral implication of the statements. It was their express object. The natural and obvious meaning of Mineo's statements is that Gharavi is unfit to serve as a wrestling official and unfit to work around young athletes. As those statements strike directly at Gharavi's integrity, fitness and ability to perform within his profession, they constitute defamation *per se*.

Although damages are presumed, the record nevertheless contains evidence of concrete reputational, professional and economic harm flowing from the Mineo's statements. As discussed in Section B below, the resulting harm was not abstract. Plaintiffs lost access to the wrestling

events and organizations upon which their business depends. SOF ¶¶66–69. Following the dissemination of these accusations, Plaintiffs lost contracts involving wrestling organizations and events, had press credentials revoked and were asked to stop filming or leave events. SOF ¶¶66–69. These consequences directly impaired Plaintiffs' ability to create the wrestling content from which their business derives revenue. SOF ¶¶70–71. The accusations also damaged Plaintiffs' standing among the coaches, parents, athletes and event organizers whose trust and cooperation are necessary for Plaintiffs to obtain access to wrestling events and continue operating within the wrestling community. SOF ¶¶66–69, 72–73. For a business dependent upon continued access to wrestling events, relationships with wrestling organizations and the ability to film athletes, an accusation that its operator poses a danger to children strikes at the core of its ability to operate. *See e.g.*, *Van Horne v. Muller*, 185 Ill. 2d 299, 307, 705 N.E.2d 898, 903 (1998).

### ***B. In the Alternative, the Evidence Compels Judgment on Plaintiffs' Defamation Per Quod Claim.***

In the alternative to defamation *per se*, Plaintiffs have proven defamation *per quod*.[2] Statements are considered defamation *per quod* if the defamatory character of the statement is not apparent on its face, and extrinsic facts are required to explain its defamatory meaning. *Kapotas*, 30 N.E.3d, at 587. *Per quod* claims require proving of special damages. *Id.* at 1215. Special damages are a definite loss of revenue resulting from customers lost as a consequence of those statements. *Becker*, 292 Ill. App. 3d at 127, 684 N.E.2d at 1387; *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶ 60, 965 N.E.2d 1237.

As discussed above, Mineo's statements constitute defamation *per se*. But even if the Court concludes that additional context is necessary to appreciate their defamatory meaning, the record

[2] *See, e.g. Burlet v. Baldwin*, 452 F. Supp. 3d 801, 813 (N.D. Ill. 2020) (plaintiffs may plead defamation *per quod* in the alternative to *per se*).

supplies that context and establishes defamation *per quod*. First, the context in which Mineo made the statements demonstrates their injurious meaning. Gharavi operates within the wrestling community as both a videographer and wrestling official. SOF ¶¶ 9, 11. His work requires access to wrestling tournaments, gyms, practice rooms and schools and depends upon relationships with coaches, wrestlers, parents, tournament organizers and wrestling organizations. Mineo's accusations were explicitly directed at those precise professional relationships. He stated that Gharavi should not be permitted in a "gym," "on a mat," near "these kids," at "any tournament, practice room, [or] school," and instead should be "exiled far away from the sport of wrestling." SOF ¶¶ 32, 40. Mineo's deposition removes any ambiguity as to what he intended by that language. Mineo admitted that, when he stated Gharavi should be "exiled," he meant "social criticism or loss of community support." SOF ¶ 33. Thus, even under Mineo's own characterization of his words, his statements called for Gharavi to lose the support of the very community upon which Plaintiffs' professional activities depend.

Those accusations were directed to the very community capable of imposing those consequences. Mineo testified that the Wrestling Room has more than 80,000 members and includes wrestling parents, wrestlers, coaches and fans. SOF ¶¶ 26–27. Even if extrinsic facts are necessary to appreciate the defamatory meaning of Mineo's statements, those facts are undisputed: Mineo accused Plaintiffs of exploiting their access to youth wrestling for sexual purposes, directed those accusations to the community upon which their business depends and expressly advocated the same professional exclusion Plaintiffs experienced.

**The record likewise establishes special damages.** Following the dissemination of these accusations, Plaintiffs lost contracts involving wrestling organizations and events and were asked to stop filming or leave events. SOF ¶¶66–71. These consequences directly impaired Plaintiffs'

ability to create the wrestling content from which their business derives revenue. SOF ¶ 70. The accusations also damaged Plaintiffs' standing among the coaches, parents, athletes and event organizers whose trust and cooperation are necessary for Plaintiffs to obtain access to wrestling events and continue operating within the wrestling community. SOF ¶¶66–72. For a business dependent upon continued access to wrestling events, relationships with wrestling organizations and the ability to film athletes, an accusation that its operator poses a danger to children strikes at the core of its ability to operate. Significantly, those losses correspond to the precise consequences Mineo demanded: loss of community support, exclusion from wrestling events and revocation of Gharavi's referee credentials. Accordingly, even if the Court concludes that Mineo's statements are not actionable *per se*, the undisputed record establishes defamation *per quod*.

## II. Mineo Indisputably Engaged in Invasion of Privacy by False Light (Count III).

An invasion of privacy by false light occurs when: (1) the plaintiff is placed in a false light before the public; (2) the false light would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice. *Kolegas v. Heftel Broad. Corp.,* 607 N.E.2d 201, 209–10. The record indisputably establishes each element. First, Mineo placed Plaintiffs in a false light before the public. He portrayed Gharavi as an individual who deliberately focused on minors' private areas, selected sexualized images for thumbnails, distributed the resulting content to pornographic websites, and posed such a threat to children that he should be excluded from gyms, tournaments, and schools. The false portrayal Mineo created was clear: that Gharavi was intentionally exploiting minors for sexual or pornographic purposes and posed a danger to children.

Second, a reasonable person would find such a portrayal highly offensive. This element is met "when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." *Lovgren v.*

*Citizens First Nat'l Bank*, 126 Ill. 2d 411, 420, 128 Ill. Dec. 542, 545, 534 N.E.2d 987, 990 (1989). In *Lovgren*, the Illinois Supreme Court held that a false publication stating that the plaintiff was selling his farm could support a false-light claim, particularly where the publication allegedly made it "practically impossible" to obtain refinancing of his loan. *Id*.

If falsely portraying someone as selling their farm without their consent was sufficiently offensive, then falsely portraying someone as being involved in child pornography is far more egregious. Unlike the publication in *Lovgren*, which concerned a lawful financial transaction, the portrayal here associates Plaintiffs with conduct that is criminal, morally reprehensible, and universally condemned. A reasonable person could readily conclude that such a false association not only is highly offensive, but could jeopardize employment, business opportunities, and business relationships, as what subsequently happened to Plaintiffs.

The record also establishes actual malice because Mineo published these accusations despite having no evidence establishing their truth and without independently investigating whether Gharavi was responsible for placing the videos on third-party websites. *See Duncan v. Peterson,* 408 Ill. App. 3d 911, 920-22 (2d Dist. 2010). *Duncan v. Peterson* is instructive. There, the defendant, a senior pastor at the plaintiff's former church, sent letters to board members of the plaintiff's new church falsely accusing him of an extramarital affair, filing for divorce, misusing church funds, and abusing alcohol, while also seeking to strip him of his ordination and prevent him from serving as a minister. 408 Ill. App. 3d 911, 912 (2d Dist. 2010). The appellate court affirmed a jury verdict for the plaintiff on his false light claim, finding sufficient evidence of actual malice because the defendant disseminated the accusations without investigating their truth, checking available public records, or questioning the individuals who made the underlying accusations. *Id.* at 920-22. The court further held that dissemination to members of the plaintiff's

church leadership satisfied the publicity requirement because their relationship to the plaintiff made publication to them "as harmful to plaintiff as dissemination to the public would have been," and found sufficient injury where the accusations harmed the plaintiff's professional standing and ability to work as a minister. *Id.* at 921-22.

As in *Duncan*, Mineo published serious accusations bearing directly on Gharavi's fitness to continue working in his professional community without first independently investigating whether those accusations were true. *See id.* at 920-22. Mineo admitted that he never personally saw Gharavi post videos in any chat room, possessed no evidence that Gharavi was paid to distribute videos to pornographic websites, and could not identify evidence establishing how or by whom the videos reached those sites. SOF ¶¶ 30, 56–65. Thus, as in *Duncan*, the lack of investigation supports actual malice, the targeted dissemination satisfies publicity, and the effort to exclude Gharavi from his profession confirms the highly offensive and injurious nature of the false light in which Mineo placed him. *Id.* Thus, Plaintiffs are entitled to summary judgment.

## III. <u>The Undisputed Evidence Supports Judgment on the Intentional Infliction of Emotional Distress Claim (Count IV).</u>

To prove intentional infliction of emotional distress under Illinois law, Plaintiffs must show that: (1) Mineo's conduct was extreme and outrageous; (2) he intended to cause severe emotional distress or knew there was a high probability his conduct would do so; and (3) his conduct caused severe emotional distress. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006); *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997). To show that the conduct caused severe emotional distress, the distress caused by the defendant's outrageous conduct, when measured by its intensity and duration, must be so severe that no reasonable person could be expected to endure it. *Kornick v. Goodman*, 2023 IL App (2d) 220197, ¶ 25, 477 Ill. Dec. 1, 8, 242 N.E.3d 231, 238. The undisputed record satisfies that demanding standard. Given the gravity of

Mineo's repeated public accusations, their extraordinary dissemination, and Mineo's express effort to induce Plaintiffs' exclusion from their professional community, Mineo necessarily knew, at minimum, that there was a high probability his conduct would cause severe emotional distress.

And it did. As a direct result of Mineo's conduct and the ensuing public and professional fallout, Gharavi experienced severe emotional distress, anxiety, mental anguish, embarrassment, and humiliation, while simultaneously confronting exclusion from wrestling events and damage to the professional relationships and reputation he had developed within the sport. SOF ¶¶ 74–80.

The Seventh Circuit's decision in *Naeem v. McKesson Drug Co.*, 444 F.3d 593 (7th Cir. 2006), applying Illinois law, further demonstrates why summary judgment is appropriate here. In *Naeem*, the court affirmed a jury verdict in favor of the plaintiff on her IIED claim where her employer engaged in a persistent course of conduct that included public criticism, deliberate sabotage of her work, and the imposition of impossible job demands. *Id*. at 605. In affirming denial of defendant's motion for a new trial, the court explained that the employer's conduct extended beyond ordinary workplace disputes because it involved a pattern of behavior designed to undermine the plaintiff and affect her emotional well-being. *Id.* at 605-07. The court further determined that the defendants' express desire to "send [the plaintiff] a message," "affect her mental processes," and "get [her] attention," coupled with their knowledge that such conduct was likely to inflict emotional distress, was sufficient to establish the requisite intent. *Id*. at 606.

Here, as in *Naeem*, the record reflects a deliberate pattern and course of conduct calculated to damage Plaintiffs personally and professionally, in complete disregard for the emotional consequences to Plaintiffs. Further, as in *Naeem*, where evidence of depression, anxiety, nightmares, humiliation and the deterioration of personal relationships supported an IIED verdict, the record here demonstrates severe emotional distress arising from Mineo's sustained effort to

portray Gharavi as a threat to children and remove him from the wrestling community. *Id.* at 606-07. Accordingly, the undisputed facts establish Plaintiffs' IIED claim.

## IV. Plaintiffs are Entitled to Judgment on their Tortious Interference with Business Relationships Claim (Count V).

The record leaves no doubt that Mineo tortiously interfered with Plaintiffs' business relationships. To prevail on such a claim under Illinois law, a plaintiff must establish: (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of that expectancy; (3) intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy; and (4) resulting damages. *See Brinley Holdings Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 556 (N.D. Ill. 2022).

The undisputed record establishes each element. Plaintiffs had ongoing and prospective business relationships through Midwest Wrestle's YouTube channel, relationships with wrestling organizations and event operators, and continued opportunities to officiate and film wrestling events. SOF ¶¶ 8–13. The record supports that Mineo was fully aware of those relationships. His posts repeatedly identified Gharavi as the operator of Midwest Wrestle and specifically referenced his role as a wrestling referee. *See, e.g.*, SOF ¶¶ 32. Indeed, Mineo expressly targeted those relationships, telling the wrestling community that Gharavi "cannot be allowed in a gym . . . on a mat . . . next to these kids," urging that he be "exiled far away from the sport of wrestling and any tournament, practice room, school, and children in general," and calling upon the IHSA to consider revoking his referee credentials. SOF ¶¶ 32, 40. By urging these members of the wrestling community to exclude Gharavi from wrestling events and revoke his referee credentials, Mineo did far more than express a negative opinion about Plaintiffs. He intentionally sought to disrupt Plaintiffs' existing and prospective business relationships with the very individuals and

organizations upon whom Plaintiffs depended for officiating assignments, event access, filming opportunities, and revenue-generating content.

The interference achieved its intended effect. As discussed above, Plaintiffs suffered the precise consequences Mineo sought: loss of contracts, revocation of credentials, exclusion from wrestling events, loss of filming opportunities, and diminished business prospects within the wrestling community. SOF ¶¶ 69–72. Those damages flowed directly from Mineo's effort to persuade others that Plaintiffs should be ostracized from the sport and denied access to wrestling events and participants. No reasonable jury could conclude that Mineo's conduct was anything other than an intentional and unjustified effort to disrupt Plaintiffs' existing and prospective business relationships. Accordingly, Plaintiffs are entitled to summary judgment on Count V.

## **CONCLUSION[3]**

This case presents no genuine dispute of material fact. Mineo repeatedly and publicly accused Plaintiffs of conduct tantamount to the sexual exploitation of children, demanded their exclusion from the wrestling community, and called for investigation by law enforcement. The undisputed record establishes that those accusations were false. The record further shows that Mineo published them widely and that Plaintiffs suffered the precise harms that Mineo’s accusations caused. Accordingly, Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment and enter judgment in Plaintiffs’ favor on liability as to Counts I, III, IV, and V (with Count II in the alternative to Count I), reserve the issue of damages for an evidentiary hearing, and award such further relief as the Court deems just and appropriate.

---

[3] Plaintiffs further note that a related Plaintiffs’ Motion for Sanctions for Spoliation of Evidence Against Defendant, Patrick Mineo, Pursuant to Rules 37(e) and 37(b)(2) is currently pending before the Court. Dkt 190. That motion concerns Mineo’s preservation and production of electronically stored information relevant to the claims at issue in this action and seeks evidentiary relief, including an adverse-inference finding concerning missing evidence. To the extent the Court grants any portion of the requested spoliation relief, Plaintiffs respectfully submit that such ruling would provide an additional and independent basis supporting summary judgment in Plaintiffs’ favor.

Respectfully Submitted,

**NIMA GHARAVI and RIGHT CALL OFFICIALS, INC.**

Dated: October 26, 2026

By: */s/ Olivia E. Duggins*

Jeffrey S. Becker (ARDC #6282492)
William D. Patterson (ARDC #6294533)
Olivia E. Duggins (#6349003)
SWANSON, MARTIN & BELL, LLP
330 N. Wabash Avenue, Suite 3300
Chicago, Illinois 60611
Phone: (312) 321-9100
jbecker@smbtrials.com
wpatterson@smbtrials.com
oduggins@smbtrials.com

# CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on October 26, 2026, a copy of the foregoing Plaintiffs' Memorandum in Support of Their Motion For Summary Judgment was served upon the following via the Court's CM/ECF system and electronic mail:

Patrick Mineo, *pro se*

Respectfully Submitted,

**NIMA GHARAVI and RIGHT CALL OFFICIALS, INC.**

Dated: October 26, 2026

By: */s/ Olivia E. Duggins*
William D. Patterson (ARDC #6294533)
Jeffrey S. Becker (ARDC #6282492)
Nicole O'Toole Peterson (ARDC #6330227)
Olivia E. Duggins (ARDC #6349003)
SWANSON, MARTIN & BELL, LLP
330 N. Wabash Avenue, Suite 3300
Chicago, Illinois 60611
Phone: (312) 321-9100
wpatterson@smbtrials.com
jbecker@smbtrials.com
npeterson@smbtrials.com
oduggins@smbtrials.com