**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | |
|---|---|
| NIMA GHARAVI, an individual, and RIGHT CALL OFFICIALS, INC., an Illinois corporation,<br><br>Plaintiffs,<br><br>v.<br><br>JESSICA PRESLEY, MATSCOUTS, LLC, WILLIE SAYLOR, PATRICK MINEO, STEPHEN KOLANKOWSKI, and JOHN DOES 4-25.<br><br>Defendants. | Case No. 1:24-cv-1969<br><br>**Judge:**<br>Honorable Steven C. Seeger<br><br>**Magistrate Judge:**<br>Honorable Beth W. Jantz |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR DEFAULT JUDGMENT UNDER RULE 55(b)(2)

## INTRODUCTION

Plaintiffs filed this action on March 8, 2024. Dkt. 1. Four defendants have been defaulted under Rule 55(a): Jessica Presley, Stephen Kolankowski, Willie Saylor, and MatScouts, LLC. Dkts. 44, 56, 62. None of these defendants have formally moved to set aside the default. The Court has directed Plaintiffs to move for default judgment against them. Dkt. 201.

The Third Amended Complaint ("TAC"), Dkt. 92, pleads that each defaulted defendant published false accusations about Plaintiff Nima Gharavi, a wrestling official. They accused him of deliberately putting his videos of wrestling matches on pornographic websites or allowing those sites to embed them, or of being a pedophile. TAC ¶¶ 35–36, 38–39. One of the defaulted defendants, Presley, even published his home address and asked the wrestling community to "do something" about him, and an attempted break-in at that address followed. *Id.* ¶¶ 38, 49; Dkt. 92-4 at 2–3.

Plaintiffs ask the Court to find each of the four defaulted defendants liable on the TAC's well-pleaded facts, to hold one hearing on damages and other relief after it rules on the pending motions for summary judgment (Dkts. 191, 196), and to enter judgment after that hearing. That sequence decides liability on these papers and lets the Court hear damages once.

## BACKGROUND

***Allegations Against the Defaulted Defendants***

Nima Gharavi is a wrestling official registered with the NCAA, the Illinois High School Association, and other organizations. TAC ¶ 1. Over the years, he has officiated hundreds of matches across the United States. *Id.* ¶ 17. His company, Right Call Officials, Inc., does business as "Midwest Wrestle" and manages the Midwest Wrestle YouTube channel, where he publishes videos of wrestling matches. *Id.* ¶¶ 1, 18, 21. He is the company's only officer and employee. *Id.* ¶ 18. To Gharavi's great dismay, some pornographic websites have re-posted those videos without his consent. *Id.* ¶¶ 25–29. He regularly sends takedown requests to offending sites, and has never posted his videos to a pornographic website or encouraged anyone else to do so. *Id.* ¶¶ 30, 32.

Saylor is the managing member of MatScouts, a wrestling media company. *Id.* ¶ 3; Dkt. 64 ¶ 1. He first accused Gharavi, in a direct message on X, of purposefully uploading his videos to pornographic websites, and Gharavi strongly denied it. TAC ¶¶ 33–34; Dkt. 92-1. Saylor and MatScouts then released a podcast episode accusing him of purposefully linking and embedding his videos on pornographic websites. TAC ¶ 35. Later, acting individually and as an agent of MatScouts, Saylor identified Gharavi on X, by name, state, and channel, as the previously unnamed subject of other users' posts. *Id.* ¶¶ 4, 36(a); Dkt. 92-2 at 3. The complaint pleads that those posts accused Gharavi of intentionally allowing pornographic websites to embed his videos. TAC ¶ 36(a). Saylor's post told readers that Gharavi had been "kicked out" of a wrestling event

for the "true evil" of catering to "twisted desires." TAC ¶ 36(b)–(c); Dkt. 92-2 at 3; Dkt. 80 at 7. Saylor asked Gharavi whether the accusations were true before he posted them and was told they were false, yet he posted anyway. TAC ¶ 43.

Presley published Gharavi's home address on X. TAC ¶¶ 2, 38(b); Dkt. 92-4 at 3 (address redacted). She introduced it with the words "Here ya go" and added, "we are like the FBI when you piss [us] off." Dkt. 92-4 at 3. The same day, she urged the NCAA's wrestling account to "STOP using a pedophiles content" and asked whether "the wrestling community" could "get together and do something about this friggin creep @Midwest_Wrestle." TAC ¶ 38(a); Dkt. 92-4 at 2.

Kolankowski re-posted, on Instagram, screenshots of posts accusing Gharavi of intentionally allowing pornographic websites to embed his videos. TAC ¶¶ 6, 39(a). Under his own caption, "Absolutely Disgusting Stuff from @midwestwrestle," he displayed another user's post declaring that the Illinois High School Association "must also look into revoking this person's referee license." Dkt. 92-5 at 3. His post also gave Gharavi's full name, his location "in the Chicagoland area," his photograph, and his email address. TAC ¶ 39(b); Dkt. 92-5 at 6 (photograph and email address redacted).

On January 2, 2024, after those posts, Gharavi was the subject of an attempted break-in at the address Presley had published. TAC ¶ 49. He was then forced to vacate his home. *See id.* ¶ 50. He received threats of physical violence and fears for his safety. *Id.* ¶¶ 46, 51, 59–60. Officiating contracts were cancelled, and event hosts asked him to stop filming or to leave. *Id.* ¶¶ 47–48, 58. His reputation and ability to work in the wrestling community suffered. *Id.* ¶¶ 52, 57.

The operative complaint pleads defamation *per se*, defamation *per quod*, false light, intentional infliction of emotional distress, and tortious interference against all Defendants (Counts

I–V), and a claim under the Illinois Civil Liability for Doxing Act against MatScouts, Saylor, Presley, and Kolankowski (Count VI). TAC ¶¶ 61–104.

***Service on the Defaulted Defendants***

Presley was served with the summons and complaint on March 26, 2024. Dkt. 12. She has never appeared, answered, or otherwise responded. On July 15, 2024, the Court noted that "months have passed" without a response from Presley, and entered default against her. Dkt. 44. Saylor and MatScouts were served on March 19, 2024. Dkts. 8, 9. On April 4, 2024, they filed a joint answer to the original complaint. Dkt. 14. On October 17, 2024, the Court noted that they had answered the original complaint but not the amended complaint and gave them "another chance." Dkt. 57. The Court ordered Saylor and MatScouts to respond by October 25, 2024, and indicated that if they did not, Plaintiffs "can and should seek" entry of default and later a default judgment. *Id.* Plaintiffs moved for default on October 28, 2024, and the Court entered their defaults on November 6, 2024. Dkts. 60–62. Saylor then filed a declaration asking to cure the default, but no motion to vacate followed, and no attorney has appeared for him. Dkt. 64.

The Court authorized alternative service on Kolankowski on July 15, 2024, after finding that he appeared to be evading service. Dkt. 43. Plaintiffs served him by regular and certified mail and filed a certificate of service on July 30, 2024. Dkt. 49. On October 17, 2024, the Court confirmed that he had been served and entered default against him. Dkt. 56. Defendant Patrick Mineo is the only defendant still litigating. On October 26, 2026, Plaintiffs and Mineo filed cross-motions for summary judgment, which are pending. Dkts. 191, 196.

## <u>LEGAL STANDARD</u>

"Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir.

1983). The defaulting party "cannot contest the fact of his liability unless the entry of default is vacated under Rule 55(c)." *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016). Allegations "relating to the amount of damages suffered ordinarily are not" taken as true. *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). The Court "may conduct hearings" when it needs to "determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). The Court must also have jurisdiction, because a default judgment entered without personal jurisdiction is void. *be2 LLC v. Ivanov*, 642 F.3d 555, 557 (7th Cir. 2011).

## ARGUMENT

### A. The Court Has Subject-Matter Jurisdiction.

The Court has diversity jurisdiction under 28 U.S.C. § 1332(a). Gharavi is a citizen of Illinois, and Right Call Officials, Inc. is an Illinois corporation with its principal place of business in Illinois. TAC ¶ 1; Dkt. 53 ¶ 2. Presley is a citizen of Ohio, Kolankowski of New Jersey, and Mineo of Pennsylvania. TAC ¶¶ 2, 5, 6. MatScouts is a limited liability company whose only member is Saylor, so it takes his citizenship. Dkt. 64 ¶¶ 1, 3; Dkt. 79 ¶¶ 1–4; *Mut. Assignment & Indemnification Co. v. Lind-Waldock & Co., LLC*, 364 F.3d 858, 861 (7th Cir. 2004). Saylor was a citizen of Pennsylvania or Idaho when this case began, and in either state, he and MatScouts are diverse from Plaintiffs. TAC ¶ 4; Dkt. 64 ¶ 4; Dkt. 79 ¶¶ 2, 4. The Court raised MatScouts' citizenship *sua sponte*, and Plaintiffs answered. Dkts. 51, 53, 71, 72, 77, 79. The amount in controversy exceeds the jurisdictional minimum. TAC ¶¶ 11, 15.

### B. The Court Has Personal Jurisdiction Over Each Defaulted Defendant.

For an intentional tort, the defendant's conduct must be intentional and expressly aimed at the forum state, with knowledge that the plaintiff would be injured there. Dkt. 80 at 18. "The post must constitute speech uniquely voiced in the forum state, or call for action in the forum state." *Id.* at 19. Courts "require some extra connection to the forum state, above and beyond saying

something on the internet about a person in that state." *Id.* at 20. A defendant "must act in the forum state or must take action directed at the forum state, such as encouraging someone else to do something in that state." Dkt. 153 at 7. Plaintiffs need only make a prima facie showing on the papers. Dkt. 80 at 11. Every count arises from the same posts, so the analysis is the same for each claim. *See id.* at 17 (grouping the state-law claims, all "based on Defendants' social-media activity").

The Court's rulings demonstrate the requisite extra connection. In dismissing Allyson Schwab as a defendant, the Court noted that she had not called for readers "to take action in Illinois," had made no "explicit reference to Illinois," and was not alleged to have known that Gharavi lived here. Dkt. 81 at 4–5. Two decisions the Court drew on mark the same line. In *Tamburo*, "some of the messages specifically listed Tamburo's Illinois address and urged readers to harass him," and that was "enough for a prima facie case of personal jurisdiction." *Tamburo v. Dworkin*, 601 F.3d 693, 697 (7th Cir. 2010); *see* Dkt. 80 at 20–21. In *Vangheluwe*, a tweet "included the address of a Michigan resident" and "was intended to cause some action in Michigan or catch the eye of those most able to make contact with" the plaintiffs. Dkt. 80 at 21 (discussing and quoting *Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850, 861 (E.D. Mich. 2019)). "So it gave rise to personal jurisdiction." *Id.*

Presley never appeared. Dkts. 12, 44. Her posts have that extra connection, because she published Gharavi's Illinois home address and urged others to act against him. TAC ¶¶ 1, 38, 49; Dkt. 92-4 at 2–3. Publishing the address shows that she knew where he lived, and no reference to this state could be more specific. She offered it with the words "Here ya go." Dkt. 92-4 at 3. The same day, she asked whether "the wrestling community" could "get together and do something about this friggin creep," and she told the NCAA's wrestling account to "STOP allowing the guy

to officiate matches." Dkt. 92-4 at 2. An Illinois address paired with a call to act is what *Tamburo* found sufficient, and a tweet giving a forum address was enough in *Vangheluwe*. Another court in this district found jurisdiction on those two facts. "By allegedly publishing [the plaintiff's] home address and encouraging others to take action against him, he expressly aimed his defamatory conduct at Illinois." *Lord v. Smith*, No. 22 C 2689, 2022 WL 17668707, at *4 (N.D. Ill. Dec. 14, 2022).

Kolankowski never appeared either. Dkt. 56. His post has the same connection. It named Gharavi in full, placed him "in the Chicagoland area," and displayed a profile page with his photograph and email address. TAC ¶ 39(b); Dkt. 92-5 at 6. Kolankowski thus had Gharavi's location, and he gave it to his readers. Under his own caption, he also displayed Mineo's post, which spoke to parents "especially in the Midwest area" and declared that the Illinois High School Association "must also look into revoking this person's referee license." Dkt. 92-5 at 3. The Court has held that the same call, when Mineo made it, "is enough to establish personal jurisdiction in Illinois." Dkt. 82 at 4. Kolankowski republished the call and supplied the means of finding the man it targeted. By contrast, the Court dismissed Corsini, who never "asked others to perform specific actions in Illinois." Dkt. 153 at 6.

Finally, Saylor and MatScouts waived any objection to personal jurisdiction. A party waives the defense by failing to raise it in a Rule 12 motion or a responsive pleading. Fed. R. Civ. P. 12(h)(1); *see Relational, LLC v. Hodges*, 627 F.3d 668, 672 (7th Cir. 2010) ("[D]efenses based on a lack of personal jurisdiction, such as legally defective service, may be waived."). They answered the complaint together and raised no jurisdictional defense. Dkt. 14. The same rule forecloses any objection that either might raise to process or to its service. Fed. R. Civ. P. 12(h)(1).

Because the defense is waived, the Court need not decide whether their posts would otherwise meet the test.

### C. <u>The Well-Pleaded Facts Establish Each Defendant's Liability.</u>

The complaint's facts, taken as true, establish each count against each of the four. The statements named Gharavi and Midwest Wrestle, the name under which Right Call Officials does business. TAC ¶¶ 18, 36, 38–39; Dkt. 92-2 at 3; Dkt. 92-4 at 2–3; Dkt. 92-5 at 3, 6.

#### 1. Defamation (Counts I and II).

A defamation claim requires facts showing "that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Love v. Simmons*, No. 23-CV-2392, 2024 WL 809107, at *4 (N.D. Ill. Feb. 27, 2024) (quoting *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009)). A plaintiff need not plead or prove actual damage to reputation when the statement is actionable *per se*. *Van Horne v. Muller*, 705 N.E.2d 898, 903 (Ill. 1998). Two *per se* categories apply here: statements "imputing the commission of a criminal offense," and statements "that prejudice a party, or impute lack of ability, in his or her trade, profession or business." *Id.* A statement conveying that a person "was a pedophile or had engaged in sexual acts with children" falls in the first category. *Hadley v. Doe*, 34 N.E.3d 549, 558–59 (Ill. 2015). Whether such a statement asserts a fact depends on its meaning, its verifiability, and its context, and it is not hyperbole merely because it was posted online. *Id.* at 559–60. A person who repeats a defamatory statement is liable for it as well. *D'Ambrosio v. Meta Platforms Inc.*, 176 F.4th 928, 942 (7th Cir. 2026) ("Illinois law, with some wrinkles, imposes liability on authors, publishers, and re-publishers of actionable defamatory statements.").

Presley called Gharavi's videos "a pedophiles content" and demanded that he not be allowed "to officiate matches where he can physically touch these kids." TAC ¶ 38(a); Dkt. 92-4 at 2. Read together, those words assert as fact that Gharavi is a pedophile and a danger to the children whose matches he officiates. An innocent construction of them would be strained. *See Hadley*, 34 N.E.3d at 559. They impute a crime and unfitness for his profession, and they are false. TAC ¶ 42. She published them on X without privilege and never asked him whether they were true. *Id.* ¶¶ 2, 44, 56, 62.

The complaint pleads that Kolankowski re-posted screenshots of posts accusing Gharavi of intentionally allowing pornographic websites to embed his videos in an attempt to increase viewership. *Id.* ¶ 39(a); Dkt. 92-5 at 3, 5. On one of them, he added his own caption, "Absolutely Disgusting Stuff from @midwestwrestle." Dkt. 92-5 at 3. That caption presents the post's accusations as true. He never asked Gharavi whether they were, and republishing them makes him liable for them. TAC ¶ 44.

Saylor and MatScouts accused Gharavi, on their podcast, of purposefully and "consistently" linking and embedding his videos on pornographic websites. *Id.* ¶ 35. Saylor then identified him on X as the subject of other users' posts accusing him of intentionally allowing pornographic websites to embed his videos. *Id.* ¶ 36(a). Naming Gharavi as the subject of those posts republished their accusations. The accusations are false, and Saylor was told so before he posted. *Id.* ¶¶ 32, 34, 42–43. They impute crimes and a want of integrity in Gharavi's work as an official and video producer. *Id.* ¶¶ 65–66.

The complaint pleads that each of the four published with knowledge of falsity or reckless disregard for the truth, and with actual malice. *Id.* ¶¶ 53–56, 63–64. Their statements told the wrestling community that Gharavi is a sexual predator or engages in pedophilia or other lewd

behavior. *Id.* ¶ 67. Count II pleads the same statements *per quod*, in the alternative, with the losses that followed. *Id.* ¶¶ 47–48, 69–74.

**2. False light (Count III).**

False light requires that the defendant placed the plaintiff "in a false light before the public," that the false light "would be highly offensive to a reasonable person," and that the defendant acted with actual malice. *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 209–10 (Ill. 1992); *see Love v. Simmons*, 2024 WL 809107, at *6. The statements put before the public the assertion that Gharavi "had been involved in vile and serial criminal and sexual conduct when he had not." TAC ¶ 76. An accusation of that kind would be highly offensive to any reasonable person. *Id.* ¶ 78. The complaint pleads that each of the four acted with knowledge of its falsity or reckless disregard for it. *Id.* ¶¶ 77, 79–80.

**3. Intentional infliction of emotional distress (Count IV).**

This tort requires extreme and outrageous conduct, intent to inflict severe emotional distress or knowledge of a high probability of it, and severe distress in fact. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 79–80 (Ill. 2003); *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604–05 (7th Cir. 2006). These posts did more than defame Gharavi. They told the wrestling community that an official who works children's matches was a sexual predator, and two of the four told readers how to find him. *See* TAC ¶¶ 38–39, 67. Presley called him a pedophile, published his home address and photographs of him, and urged others to "do something" about him. *Id.* ¶ 38; Dkt. 92-4 at 2–3. After those posts, someone tried to break into his home at that address. TAC ¶ 49. Kolankowski published his photograph, his email address, and his location beside the accusations, and one reader asked, "We firing up the woodchipper or what?" *Id.* ¶ 39(b); Dkt. 92-5 at 3, 6. The posts drew threats of physical violence. TAC ¶ 46.

Saylor named Gharavi as the subject of the accusations after being told they were false, and he acted for MatScouts. *Id.* ¶¶ 36, 43. The complaint pleads that each defendant intended the distress or knew it was highly probable. *Id.* ¶ 84. It also pleads that Gharavi has experienced fear for his physical safety and his life, and extreme emotional distress. *Id.* ¶¶ 85–86.

**4. Tortious interference with business relationships (Count V).**

This claim requires "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Brinley Holdings Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 556 (N.D. Ill. 2022) (quoting *Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015)). Plaintiffs had reasonable expectations of entering into or continuing business relationships in officiating and through the Midwest Wrestle channel, and each defendant knew it. TAC ¶¶ 45, 88–90. Presley called Gharavi's videos "a pedophiles content" and urged the NCAA's wrestling account to stop using them and to "STOP allowing the guy to officiate matches." Dkt. 92-4 at 2. Kolankowski republished a call for the revocation of Gharavi's officiating license. Dkt. 92-5 at 3.

Saylor and MatScouts knew of those relationships and published their accusations to members of the wrestling community. TAC ¶¶ 35–36, 45, 62. The complaint pleads that all four interfered intentionally and without justification, and that officiating contracts were cancelled in response to the defendants' posts. *Id.* ¶¶ 47–48, 91–93.

**5. The Doxing Act (Count VI).**

The Civil Liability for Doxing Act gives a civil action to a person aggrieved by doxing. 740 ILCS 195/10(a), 195/15(a). The Seventh Circuit reads the claim "to have six elements: (1)

intentional publication of personally identifiable information; (2) the published information identifies a person without reliance on extrinsic sources; (3) lack of consent to the publication; (4) intent to harm or harass; (5) knowledge or reckless disregard of a reasonable likelihood of death, bodily injury, or stalking to the person whose information is published; and (6) one or more of the listed harms results." *D'Ambrosio*, 176 F.4th at 937–38. Personally identifiable information is identifying information such as a name "in combination with" linked information such as a "home address," "email address," or "social media accounts." 740 ILCS 195/5. The listed harms include emotional distress, fear of serious bodily injury, and "a substantial life disruption." 740 ILCS 195/10(a)(2). Such a disruption may include "moving from an established residence." 740 ILCS 195/5.

Kolankowski published Gharavi's full name with his photograph, his email address, and his location. TAC ¶¶ 39(b), 97; Dkt. 92-5 at 6. That information identifies Gharavi by itself, and he did not consent. TAC ¶ 98. Kolankowski's state of mind appears from the post itself. Under his own caption, it set those details beside the accusations and a call for action against Gharavi. *Id.* ¶ 99; Dkt. 92-5 at 3, 6. His readers understood it that way. One wrote, "Internet time to do the thing where we find him," and another, "We firing up the woodchipper or what?" Dkt. 92-5 at 3, 6. The complaint pleads that Kolankowski published with knowledge or reckless disregard that stalking was reasonably likely, and that the listed harms followed. TAC ¶¶ 100–102.

Presley published Gharavi's home address with his name. *Id.* ¶¶ 38(b), 96; Dkt. 92-4 at 3. Her own words show her purpose: she offered the address with "Here ya go" and wrote that "we are like the FBI when you piss [us] off." Dkt. 92-4 at 3. The same day, she urged readers to "do something" about him. Dkt. 92-4 at 2. Gharavi did not consent, and the complaint pleads that she acted with the intent and knowledge the Act requires. TAC ¶¶ 98–100. On January 2, 2024, after

those posts, he was the subject of an attempted break-in at the address she had published. *Id.* ¶ 49. He was forced to vacate his home. *See id.* ¶ 50. The complaint pleads that stalking, harassment, and threats of physical harm followed. *Id.* ¶ 101.

Saylor and MatScouts published Gharavi's name with his state and the name of his channel, a social media account. TAC ¶¶ 36, 95; Dkt. 92-2 at 3. The complaint pleads the remaining elements against them as it does against the others. TAC ¶¶ 98–102. MatScouts is an entity, and the Act reaches an entity that "directs one or more persons to violate this Act" and "knowingly benefits" from a venture involving the violation. 740 ILCS 195/15(a). The complaint pleads that MatScouts acted through Saylor, encouraged others to violate the Act, and knowingly benefited. TAC ¶¶ 36, 103–104.

**D. <u>The Court Should Decide Liability Now and Hear Damages Once.</u>**

Plaintiffs ask the Court to decide liability now and to hear damages once, after it rules on the pending motions for summary judgment. They do not ask the Court to enter judgment now. "A judgment that doesn't resolve the issue of remedies isn't a thing." *Love v. Travelers Mgmt. Grp., LLC*, No. 25-CV-10220, 2026 WL 2086043, at *1 (N.D. Ill. July 20, 2026).

The liability of defaulted defendants may be decided while claims against another defendant remain pending, unless the results could conflict. The question is "whether a default judgment against a defendant could be inconsistent with a (later) judgment on the merits in favor of the other defendants." *Id.* at *15. "If there is a potential for inconsistency on the horizon, then a district court must hold off." *Id.* In *Love v. Travelers*, the defaulted defendant was alleged to be the agent of the defendant still litigating, and the principal's liability depended on the agent's. *Id.* at *1–2. Here, each defaulted defendant is sued for that defendant's own publications, and Mineo is sued for his. The Seventh Circuit confines the rule that bars a default judgment against one of

several defendants "to cases where all the defendants were claimed to be jointly, not severally, liable." *Douglas v. Metro Rental Servs., Inc.*, 827 F.2d 252, 255 (7th Cir. 1987); *see In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1258 (7th Cir. 1980); *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 951 (7th Cir. 2020). A finding that Presley published Gharavi's home address, or that Kolankowski published his photograph, cannot conflict with any ruling on what Mineo published. Judgment would follow the damages hearing, and that hearing would follow the ruling on the pending motions for summary judgment. The Court will therefore know, before any judgment is entered, whether that ruling bears on any of the four. That includes Kolankowski's display of Mineo's post.

Damages are different because the harms overlap. The complaint pleads injuries that followed the defendants' posts together: threats, cancelled contracts, lost access to events, and harm to reputation. TAC ¶¶ 46–60. In that setting, "a damages hearing may not be held until the liability of each defendant has been resolved." *Uranium*, 617 F.2d at 1262; *accord Dundee*, 722 F.2d at 1324. One hearing after Mineo's liability is resolved avoids inconsistent awards. At that hearing, Plaintiffs will also present the injunction requests in Counts V and VI. The Doxing Act permits such an order only "following a full evidentiary hearing." 740 ILCS 195/20(a).

**E. <u>The Other Requirements for a Default Judgment Are Satisfied.</u>**

Rule 55(b)(2) requires written notice of the application, at least seven days before the hearing, to a party who "has appeared personally or by a representative." Saylor and MatScouts appeared by filing an answer, Dkt. 14, and Plaintiffs are serving these papers on all four by mail. No individual defendant is a minor or an incompetent person. Declaration of Olivia Duggins, Attached as **Exhibit A**, ¶ 6. Further, pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. § 3931(a), (b)(1), none of the defaulted defendants are in military service. Ex. A, ¶¶ 2-4; Ex A-1.

## CONCLUSION

The Court should grant this motion and find that Presley, Kolankowski, Saylor, and MatScouts are each liable to Plaintiffs on Counts I, III, IV, V, and VI of the Third Amended Complaint, and on Count II in the alternative to Count I. Second, it should set one hearing under Rule 55(b)(2)(B), after it rules on the pending motions for summary judgment, to determine damages, attorneys' fees, and the other relief requested. Third, it should enter judgment after that hearing.

Respectfully Submitted,

**NIMA GHARAVI and RIGHT CALL OFFICIALS, INC.**

Dated: November 20, 2026

By: */s/ Olivia E. Duggins*
Jeffrey S. Becker (ARDC #6282492)
William D. Patterson (ARDC #6294533)
Olivia E. Duggins (#6349003)
SWANSON, MARTIN & BELL, LLP
330 N. Wabash Avenue, Suite 3300
Chicago, Illinois 60611
Phone: (312) 321-9100
jbecker@smbtrials.com
wpatterson@smbtrials.com
oduggins@smbtrials.com