**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | |
|---|---|
| NIMA GHARAVI, an individual, and RIGHT CALL OFFICIALS, INC., an Illinois corporation,<br><br>Plaintiffs,<br><br>v.<br><br>JESSICA PRESLEY, MATSCOUTS, LLC, WILLIE SAYLOR, PATRICK MINEO, STEPHEN KOLANKOWSKI, JOSEPH CORSINI, IAN JAGGER, JOHN DAVIDSON, and JOHN DOES 4-25.<br><br>Defendants. | Case No. 1:24-cv-1969<br><br>**Judge:**<br>Honorable Steven C. Seeger<br><br>**Magistrate Judge:**<br>Honorable Beth W. Jantz |

**NIMA GHARAVI AND RIGHT CALL OFFICIALS, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT PATRICK MINEO'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Nima Gharavi and Right Call Officials, Inc. ("RCO"), by their counsel, Swanson, Martin & Bell, LLP, submit this Response in Opposition to Defendant Patrick Mineo's Motion for Summary Judgment against Plaintiffs. In support thereof, Plaintiffs state as follows:

## INTRODUCTION

Mineo repeatedly accused Plaintiffs of peddling child pornography by posting wrestling videos on adult websites. These statements constitute actionable defamation, and are not protected by the First Amendment. Furthermore, these statements about a wrestling official caused real and identifiable economic losses, and therefore even if there was not defamation *per se*, defamation *per quod* would remain. Given that there was absolutely no basis for the claim that Mr. Gharavi peddles in child pornography, the evidence supports Mr. Gharavi's false light and intentional infliction of emotional distress claims. And despite Mr. Mineo's suggestion otherwise, the

evidence shows his misconduct directly led to damages for Plaintiffs. Mr. Mineo did not simply join a controversy already in progress as he contends: he revived one that was subsiding, added accusations of his own, and directed them, with specific calls to action, to the very community on which Plaintiffs' business depends. Therefore, this Court should deny Mr. Mineo's motion for summary judgment.

## ARGUMENT

### I. Mr. Mineo's Defamatory Statements Are Not Opinion.

Whether or not someone peddles pornography, and specifically child pornography, is a verifiable fact, which here has been proven false. SOF Dkt. 198 ¶¶ 20-21. Illinois courts have repeatedly found that similar statements about improper behavior toward minors are actionable defamation *per se*. In *Hadley v. Doe*, the Illinois Supreme Court recognized that the accusation that a politician was "a Sandusky waiting to be exposed" is actionable as defamation *per se*. 34 N.E.3d 549, 552, 558-59 (Ill. 2015). Similarly, in *Dobias v. Oak Park & River Forest High School Dist. 200*, the Illinois appellate court recognized that statements suggesting a teacher and coach was "rolling around on a bed in a hotel alone with an athlete" were defamation *per se*. 57 N.E.3d 551, 564-68 (Ill. App. Ct. 1st Dist. 2016). Similarly here, Mr. Mineo stated that Mr. Gharavi was "uploading [the videos] in evil places" and "posting them in chat rooms and porn sites," and asked rhetorically, "you don't think this is perverted to upload the videos to pornographic sites?" SOF Dkt. 198 ¶¶ 44, 46-47. As the evidence shows, these statements are false, Mr. Gharavi does not engage in this conduct, and thus as in *Hadley* and *Dobias*, the statements at issue are fact statements.

Indeed, Mr. Mineo makes no argument that these statements are not fact statements; instead, he argues that parts of his commentary might be considered opinion. Importantly, that is

not the test. The test to determine whether a defamatory statement is constitutionally protected under the First Amendment is restrictive. *Bryson v. News Am. Publications, Inc.*, 174 Ill. 2d 77, 100, 672 N.E.2d 1207, 1220 (1996). In *Bryson*, the Illinois Supreme Court held that if the statement can be determined to be true or false by a jury, then it is not protected by the First Amendment. *Id.* (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). In *Bryson,* the Illinois Supreme Court held "as a matter of law, that the allegation of sexual promiscuity" was a provably false assertion, and thus not protected by the First Amendment. *Id.* at 100-01. If an allegation of being sexually promiscuous is sufficiently factual, then there is no doubt that an allegation that Mr. Gharavi took a specific action, uploading his videos to pornography websites, is a factual statement.

## II. Mr. Gharavi Is Not A Limited Purpose Public Figure.

Mr. Mineo has no legal or factual support for his conclusion that Mr. Gharavi is a public figure. To determine whether a plaintiff is a limited-purpose public figure, Illinois courts follow the three-part test that the D.C. Circuit articulated in *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980). *Jacobson v. CBS Broad., Inc.*, 19 N.E.3d 1165, 1176 (Ill. App. Ct. 2014). First, a public controversy must exist, involving active public debate about an issue, "the outcome of which impacts the general public or some portion of it in an appreciable way." *Id.* (citing *Waldbaum*, 627 F.2d at 1296). A matter of "general public interest or concern" does not suffice. *Id*. Second, the plaintiff must have "undertaken some voluntary act seeking to influence the resolution of the issues involved" in the public controversy. *Id*. at 1177 (citing *Waldbaum*, 627 F.2d at 1297). Finally, the alleged defamation must relate to the plaintiff's participation in the public controversy. *Id*. (citing *Waldbaum*, 627 F.2d at 1298).

Limited-purpose public figures "thrust themselves to the forefront of particular public controversies." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). Participating in a public controversy in a "trivial or tangential" way does not suffice; a plaintiff must have purposely tried to influence the outcome of a controversy or "expected, because of his position in the controversy, to have an impact on its resolution." *Waldbaum*, 627 F.2d at 1297.

Here, there is no evidence to support Mr. Mineo's assertions. First, there is no evidence of a public controversy about peddling wrestling videos on pornography websites. Everyone agrees such conduct would be bad. While protecting the public against child pornography certainly is a matter of general public concern, that is precisely the sort of general concern that does not suffice. Next, Mr. Gharavi has not taken any steps to influence any issues involved with such a controversy. Mr. Gharavi is a wrestling official, who takes high-quality videos, and if anything, was too quietly working to remove any of his videos that may have appeared on inappropriate websites. SOF Dkt. 198 ¶¶ 17, 19. Nothing suggests he inserted himself into any particular controversy. *Id.* ¶ 29. Finally, nothing about the defamation relates to any issues Mr. Gharavi publicly inserted himself into. Nor does the size of Mr. Gharavi's online following make him a public figure. Being "well known in some circles" does not confer general public-figure status, *Gertz*, 418 U.S. at 351-52, and "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979).

Because Plaintiffs are private figures, they need show only negligence to recover actual damages for defamation. *Troman v. Wood*, 62 Ill. 2d 184, 198 (1975). Mr. Mineo's admitted failure to investigate before accusing Mr. Gharavi meets that standard. SOF Dkt. 198 ¶¶ 56-57. And even if somehow Mr. Gharavi and RCO were public figures, there is still ample evidence of actual malice from Mr. Mineo. A plaintiff "may establish actual malice by proving either that the

defendant published the defamatory statement with knowledge of its falsity or with reckless disregard for whether it was false." *Woods v. Evansville Press Co*., 791 F.2d 480, 484 (7th Cir. 1986). Probative evidence of recklessness includes a publisher's knowledge of serious factual inconsistencies, as well as the failure to investigate or independently verify disputed or questionable factual assertions. *Id*. at 485.

Here, the undisputed evidence shows that Mr. Mineo failed to investigate or attempt to independently verify the defamatory statements. In his deposition, Mr. Mineo admitted that he never personally saw Mr. Gharavi post videos in any chat room, that he possessed no evidence that Mr. Gharavi was distributing videos to pornographic websites, and that he could not identify any evidence linking Mr. Gharavi to those websites. SOF Dkt. 198 ¶¶ 30, 56-65. Indeed, he made no investigation into the veracity of the statements he made. *Id*. A failure to investigate, by itself, does not establish actual malice, *Woods*, 791 F.2d at 485, but the record here goes further: Mr. Mineo admits he had no evidence at all for his accusations. *Id.* ¶ 62. Where a speaker had no personal knowledge or documentary evidence of the wrongdoing he alleged and made no inquiry, the Illinois Supreme Court affirmed summary judgment for the plaintiffs, holding that his statement, "if not indeed a 'calculated falsehood,' was, at the least, made with reckless disregard of whether it was true." *Catalano v. Pechous*, 83 Ill. 2d 146, 165-66 (1980). So too here. At a minimum, a jury could find actual malice.

Mr. Mineo's own testimony also shows that he posted at least one claim he did not believe. He warned of a "sinister network" that he admits he had no evidence of and did not believe existed. SOF Dkt. 198 ¶¶ 52-53. So he knew there was no basis for his statements and knowingly made false statements anyway, this is actual malice.

## III. Mr. Mineo's Statements to His Audience Damaged Mr. Gharavi.

Mr. Mineo next contends that this matter should be dismissed because others also defamed Mr. Gharavi, and therefore any harm cannot be attributed to his particular statements. To make this argument, Mr. Mineo relies entirely upon an Illinois Supreme Court case that does not say what he claims. In *Tuite v. Corbitt*, the Illinois Supreme Court evaluated the innocent construction rule applied to plaintiff's defamation *per se* and false light claims. And what *Tuite* does say about damages cuts against him: a statement is defamatory *per se* when "injury to the plaintiff's reputation may be presumed," and only in a *per quod* action must the plaintiff "plead and prove special damages." *Tuite v. Corbitt*, 224 Ill. 2d 490, 501 (2006).

Moreover, Mr. Mineo's reliance on the copyright-related disputes dating back to 2021 is misplaced. Those disputes reflect Mr. Gharavi's efforts to remove unauthorized copies of his videos, through 366 takedown notices since May 2021, not any decline in his business. SOF Dkt. 198 ¶ 17. Mr. Gharavi continued to officiate and to receive assignments until Mr. Mineo's January 2024 statements. Then Mr. Gharavi lost that work. *Id.* ¶¶ 66–71. These are the damages that Mr. Gharavi seeks to recover and because these losses followed, and indeed were the intended effect of, Mr. Mineo's defamatory statements, they are precisely the sorts of damages that are recoverable under a defamation *per quod* claim. *See, e.g.*, *Becker v. Zellner*, 292 Ill. App. 3d 116, 127 (1997); *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶ 60.

Nor does earlier online criticism insulate Mr. Mineo. He did not simply pick up a controversy already in progress and carry it forward. He revived a controversy that was subsiding, added accusations of his own, directed them, with specific calls to action, to the very community on which Plaintiffs' business depends, and Plaintiffs suffered damages as a result. Mr. Mineo merely repeat others. He turned a post about thumbnails into accusations that Mr. Gharavi himself uploaded the videos to pornographic sites, for which he admits he has no evidence, and announced

that "The FBI will be handling this matter" despite having "zero contact with the FBI." SOF Dkt. 198 ¶ 49. He sent those accusations to his approximately 40,000 X followers and the 40,000-member group he runs, telling parents to get the videos removed and the IHSA to look into revoking Mr. Gharavi's license. *Id.* ¶¶ 23, 25–26, 40. That is what followed: the channel's first-ever privacy complaint that same day, and a coach's refusal to "put my kids in a gym with this man." *Id.* ¶¶ 72, 76.

## IV. Mr. Mineo Put Mr. Gharavi in a False Light

Mr. Mineo argues, again, that Mr. Gharavi cannot prevail on his false light claim because of constitutional barriers, but as noted above, those barriers are inapplicable because whether or not someone posts videos of children wrestling on pornography websites is a verifiable (and in this case provably false) statement. (See Section I). As noted in Plaintiffs' own motion, there are no genuine issues of material fact that Mr. Mineo did commit the tort of false light. Dkt. 196.

Mr. Mineo broadcast his false and defamatory statements that Plaintiffs were vile and engaged in uploading videos of children wrestling to pornography websites; those statements were highly offensive; and he made them with no evidence and no investigation, from which a jury could find actual malice. These facts match the elements of false light, which require public statements placing the plaintiff in a false light that are highly offensive to a reasonable person, and done with actual malice. *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 209-10 (Ill. 1992). Indeed, Mr. Mineo admits that he made no investigation, never tried to verify the posts he relied on, and never checked public records for a conviction. SOF Dkt. 198 ¶¶ 30, 56-58. On similar evidence, a jury could find actual malice. *See Duncan v. Peterson*, 408 Ill. App. 3d 911, 921 (2d Dist. 2010) (defendant did not investigate the charges, check the public record or question the accusers). Therefore, Mr. Mineo's motion for summary judgment should be denied.

## V. Mr. Mineo Intentionally Inflicted Emotional Distress

As discussed in greater detail in Plaintiffs' motion for summary judgment, Plaintiffs are entitled to summary judgment on their intentional infliction of emotional distress claim, not dismissal. (Dkt. 197). Once again, Mr. Mineo misquotes the cited case and adds words that do not exist in the referenced case law. To the extent *McGreal v. Vill. of Orland Park* discusses intentional infliction of emotional distress, it is not to redefine the tort under Illinois law, but instead to lay out the elements and hold that emotional distress that the plaintiff conceded was "probably of the garden variety" does not satisfy the tort. 850 F.3d 308, 314-15 (7th Cir. 2017). Being accused of peddling child pornography does not cause "garden variety" emotional distress. Indeed, this is defamation *per se*, and it resulted in considerable fear for Mr. Gharavi's safety which caused him to move out of his home for a period of time. SOF Dkt. 198 ¶¶ 74-80.

Under Illinois law, "[a] pattern, course, and accumulation of acts can make an individual's conduct 'sufficiently extreme to be actionable, whereas one instance of such behavior might not be.'" *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 274 (2003) (quoting *Pavlik v. Kornhaber*, 326 Ill. App. 3d 731, 746 (2001)); *see also Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605-07 (7th Cir. 2006). As in *Naeem*, Mr. Gharavi suffered anxiety, nightmares, humiliation and the deterioration of personal relationships. *Compare Naeem*, 444 F.3d at 606-07, *with* Dkt. SOF 198 ¶¶ 74-80. Being falsely accused of peddling wrestling videos of children to pornography websites would cause severe stress to anyone. Garden-variety criticism of Mr. Gharavi related to his officiating may be one thing, but this Court should recognize that there is a large gap between criticizing a match official and accusing them of exploiting the participants. *See, e.g.*, *Dobias*, 57 N.E.3d at 564-68.

## VI. Mr. Mineo Tortiously Interfered with Mr. Gharavi's Prospective Business

Finally, Mr. Mineo is not entitled to summary judgment on the tortious interference claim. As noted in Plaintiffs' motion for summary judgment, the uncontroverted evidence supports the claim. (Dkt. 197). Mr. Mineo argues that Plaintiffs cannot establish that any of his misconduct caused Plaintiffs actual damages, but they do.

Mr. Mineo was well aware at the time that Mr. Gharavi was a wrestling referee and that Plaintiffs had access to wrestling events. SOF Dkt. 198 ¶¶ 8-13, 32, 40-41. He then targeted Plaintiffs' working relationships with his comments that Plaintiffs "cannot be allowed in a gym...on a mat...next to these kids," and urged his followers that Plaintiffs should be "exiled far away from the sport of wrestling and any tournament, practice room, school and children in general." *Id.* ¶¶ 32, 40. Further affirming that Mr. Mineo was well aware that he was disrupting ongoing business for Mr. Gharavi, he called upon the IHSA to revoke his referee credentials. *Id.* As a result of these statements, Plaintiffs lost numerous business opportunities, and Mr. Mineo's efforts to tortiously interfere with Plaintiffs' prospective business were, unfortunately, successful. *Id.* ¶¶ 66-71, 76.

Mr. Mineo blames the 2023 USA Wrestling decision and referrals instead. Dkt. 192 at 5. But that decision concerned media credentials, which he concedes are "distinct from on-mat referee assignments." *Id.* And up to December 30, 2023, Mr. Gharavi was officiating more than in the same part of the prior season, 23 events against 18, and he was on the IHSA's postseason lists. SOF Dkt. 198 ¶¶ 12, 69. In the days after Mr. Mineo's posts, ArbiterSports notified him that he had been removed from thirteen high-school matches. *Id.* ¶ 66. That same week, the IHSA assistant executive director who administers wrestling told him that, because of feedback about the online accusations, his presence would be a distraction. *Id.* ¶ 67. He had been told in December 2023 that he would be assigned to officiate in the IHSA's 2024 postseason, but that assignment never came.

*Id.* ¶ 68. He was also removed from both IESA postseason events to which he had been assigned. *Id.* As a result, summary judgment for Mr. Mineo is inappropriate, and the motion should be denied.

**CONCLUSION**

For the foregoing reasons, Patrick Mineo's Motion for Summary Judgment should be denied.

Respectfully Submitted,

**NIMA GHARAVI and RIGHT CALL OFFICIALS, INC.**

Dated: November 23, 2026

By: /s/ *Olivia E. Duggins*
William D. Patterson (ARDC #6294533)
Jeffrey S. Becker (ARDC #6282492)
Nicole O'Toole Peterson (ARDC #6330227)
Olivia E. Duggins (ARDC #6349003)
SWANSON, MARTIN & BELL, LLP
330 N. Wabash Avenue, Suite 3300
Chicago, Illinois 60611
Phone: (312) 321-9100
wpatterson@smbtrials.com
jbecker@smbtrials.com
npeterson@smbtrials.com
oduggins@smbtrials.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on November 23, 2026, a copy of the foregoing Response to Defendant Patrick Mineo's Motion for Summary Judgment, with Plaintiffs' Response to Defendant Patrick Mineo's Rule 56 Statement of Facts, was served upon the following by the means stated:

Patrick Mineo, *pro se*
By the Court's CM/ECF system and electronic mail.

Respectfully Submitted,

**NIMA GHARAVI and RIGHT CALL OFFICIALS, INC.**

Dated: November 23, 2026

By: */s/ Olivia E. Duggins*
Jeffrey S. Becker (ARDC #6282492)
William D. Patterson (ARDC #6294533)
Olivia E. Duggins (#6349003)
SWANSON, MARTIN & BELL, LLP
330 N. Wabash Avenue, Suite 3300
Chicago, Illinois 60611
Phone: (312) 321-9100
jbecker@smbtrials.com
wpatterson@smbtrials.com
oduggins@smbtrials.com